# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

**WARREN SMITH,**

    **Plaintiff,**

v.                                  **Case No. 3:12cv172/RV/CJK**

**R. TIFFT, et al.,**

    **Defendants.**

_____/

## **REPORT AND RECOMMENDATION**

This prisoner civil rights case is before the Court upon defendants Martelliano, Wallace, Hall, Shaner[1], Gielow[2], Kolodziej and Barnes' motion to sever and motion to dismiss (doc. 66), and defendants Tifft, Pugh and McMacklin's motion to sever and motion to dismiss (doc. 78). Plaintiff has responded in opposition to the motions. (Docs. 80, 82). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After careful consideration, the Court concludes that defendants' motions to sever should be denied and their motions to dismiss granted in part and denied in part.

---

[1] Plaintiff misspells this defendant's name "Shana". The correct spelling is "Shaner". (Doc. 58).

[2] Plaintiff misspells this defendant's name "Geilow". The correct spelling is "Gielow". (Doc. 56).

# BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Gulf Correctional Institution. (Doc. 47). Plaintiff was confined at Santa Rosa Correctional Institution ("Santa Rosa CI") at the time of the events giving rise to this lawsuit. On September 3, 2013, plaintiff filed an amended complaint under 42 U.S.C. § 1983, naming as defendants ten prison officials at Santa Rosa CI: Warden R. Tifft, Colonel J. Kolodziej, Lieutenant Gielow, Lieutenant Shaner, Sergeant McMacklin, Officer Hall, Officer Wallace, Officer Pugh, Officer Martelliano and Officer Barnes. (Doc. 23, pp. 1-3). Plaintiff sues the defendants in their individual and official capacities. (*Id.*, p. 1). Plaintiff claims defendants Gielow, Shaner, McMacklin, Barnes, Hall, Wallace, Pugh and Martelliano violated his rights under the First and Eighth Amendments by "participating in a terror campaign against Plaintiff, as a reaction to him filing grievances." (*Id.*, p. 11). Plaintiff claims defendants Kolodziej and Tifft violated his rights under the Eighth Amendment, because they were aware of, and defendant Kolodziej participated in, the "terror campaign." (*Id.*). As relief, plaintiff seeks monetary damages. (*Id.*).

All of the defendants seek to sever particular claims and defendants from this cause of action on the grounds that plaintiff is attempting to improperly join parties and unrelated claims. (Docs. 66, 78). All defendants further seek to dismiss plaintiff's official capacity claims against them on the basis of sovereign immunity. (*Id.*). In addition, defendants Martelliano, Kolodziej and Tifft seek dismissal of plaintiff's individual capacity claims against them for failure to state a claim upon which relief can be granted. (*Id.*). Plaintiff responds that the three incidents in question are connected by defendant Kolodziej's "interactions" in all three incidents, and that his amended complaint sufficiently pleads constitutional claims against

Martelliano, Kolodziej and Tifft. (Docs. 80, 82).

## LEGAL STANDARDS

### A. Standards for Joinder of Claims and Parties

The Federal Rules of Civil Procedure provide that a party asserting a claim may join as many claims as it has against an opposing party. Fed. R. Civ. P. 18(a). The Rules further provide that persons may be joined in one action as defendants if the claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Joinder under Rule 20 is "strongly encouraged", and the rules are construed toward "entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). When assessing whether the requirements of Rule 20(a)(2) are satisfied, the factual allegations of the complaint are accepted as true. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 159 (S.D. N.Y. 2009).

To determine whether claims arise from the same "series of transactions or occurrences," courts in the Eleventh Circuit apply the "logical relationship" test. *See Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (*citing Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985). "[T]here is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health*, 755 F.2d at 1455 (*quoting Plant v. Blazer Fin. Servs., Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979)). *See also Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 n. 1 (11th Cir. 1991) ("[O]nly claims that do not arise from common operative facts are not logically related.").

B. Standard on Motion to Dismiss for Failure to State A Claim

Federal Rule of Civil Procedure12(b)(6) provides for a motion to dismiss a complaint where the complaint fails "to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the Court reads plaintiff's *pro se* allegations in a liberal fashion, *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the Court can take judicial notice. 5B CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2008). Further, only <u>well pleaded</u> factual allegations are taken as true and only <u>reasonable</u> inferences are drawn in favor of the plaintiff. *See Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992); *Marrero v. City of Hialeah*, 625 F.2d 499, 502 (5th Cir. 1980);[3] *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true"). Mere "labels and conclusions" are not accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (*citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009)

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

(explaining that conclusory allegations are not entitled to a presumption of truth); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009) (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit . . . conclusory allegations as true").

As the Supreme Court reiterated in *Iqbal, supra*, although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint or counterclaim must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility that the defendant acted unlawfully is insufficient to survive dismissal for failure to state a claim. *Id.* The complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, that is, "across the line from conceivable to plausible." *Id.*, 550 U.S. at 570, 127 S. Ct. at 1974.

## DISCUSSION

A.  Allegations of Plaintiff's Amended Complaint

Plaintiff is a close management inmate of the Florida Department of Corrections. Plaintiff alleges that on May 11, 2011, he was transferred to Santa Rosa CI from another close management facility. (Doc. 23, p. 6 ¶ 2). Plaintiff had been previously confined at Santa Rosa CI and, during that time, had filed grievances against defendant Gielow. (*Id.* ¶ 1). Upon plaintiff's return to Santa Rosa CI in May of 2011, plaintiff was placed in B-dormitory, a dormitory under defendant Gielow's command. (*Id.* ¶ 2). Defendant Gielow was not present at Santa Rosa CI at the time,

because he was training elsewhere. (*Id*. ¶ 3). Plaintiff states he was "constantly threatened" by unidentified correctional officers that upon Gielow's return, he (plaintiff) would "be placed on strip, gassed and issued numerous disciplinary reports." (*Id*. ¶ 3). Plaintiff filed grievances "expressing fear for his safety in [B-dormitory]", and personally informed defendant Kolodziej (the head of security) of the threats and of his fear of Gielow. (*Id*.,¶¶ 2, 3). Defendant Kolodziej responded to plaintiff that he should "stop writing grievances or deal with the consequences." (*Id*. ¶ 3).

Defendant Gielow returned from training on August 11, 2011, and immediately had plaintiff "put on strip". (*Id*. ¶ 4). Plaintiff was issued a charging disciplinary report each day from August 11, 2011, through August 15, 2011. (*Id*.). On August 15, 2011, defendant Gielow came to plaintiff's cell and told him he was going to gas plaintiff that day. (*Id*., p. 7). Plaintiff declared a psychological emergency and informed the "psych nurse" that he would kill himself if he was not relocated to another dormitory. (*Id*.). Defendant Gielow moved plaintiff to F-dormitory. (*Id*. ¶ 6).

On August 16, 2011, the day after plaintiff was moved, defendant Gielow went to F-dormitory and informed plaintiff that he was going to "return with the camera to initiate the gassing process." (*Id*. ¶ 7; *see also* Ex. D (alleging that Gielow stated, "Time for your spankin' Smith. I can't leave my problem in this dorm to start writing grievances again. I'll be back with the camera soon so get ready. Honestly Smith, I like you, but you done really pissed the Colonel and Major off with your grievances. Gotta follow orders.")). When Gielow returned with the camera, plaintiff hung himself. (*Id*.). Plaintiff was extracted from the cell and placed in a shower for decontamination. (*Id*. ¶ 8). While showering, plaintiff expressed on the handheld

audio/videocamera that he feared for his life and safety at Santa Rosa CI based on "continued attacks and threats of physical harm"; that he wanted to be placed on protective management; and that he would commit suicide "if subjected to further torture by staff." (*Id*.). Without warning, defendant Gielow deployed a chemical agent directly into plaintiff's face at point blank range. (*Id*. ¶ 9). As a result of the gassing, plaintiff "lost most of his eyesight in his left eye and was sent to an outside hospital." (*Id*. ¶ 10). Plaintiff grieved the incident to defendants Tifft and Kolodziej, and requested an investigation of the August 16, 2011 incident. (*Id*., p. 8 ¶ 11).

Upon plaintiff's return from the hospital plaintiff was assigned to G-dormitory. (*Id*. ¶ 12). Plaintiff was immediately confronted by defendant Shaner, who threatened plaintiff that he was "going to finish what Lt. Geilow [sic] started." (*Id*.). Plaintiff filed grievances concerning the threat, voicing that he was in fear for his life and safety in G-dormitory, and requesting relocation. (*Id*. ¶ 12).

On February 4, 2012, defendant Barnes placed plaintiff "on strip", explaining that defendant Gielow "said that this is for black history month in hopes that you would want to go to Africa after freezing your ass off niggerboy." (*Id*. ¶ 13). Plaintiff was left naked in an empty cold cell for four days with the window locked open. (*Id*.). Defendant Barnes falsified a disciplinary report "to justify his actions in stripping plaintiff". (*Id*. ¶ 14). The disciplinary report was dismissed because the dormitory camera conclusively refuted the allegations of the charge. (*Id*.).

On February 23, 2012, plaintiff stopped defendant Kolodziej "to explain what was happening to him and to ask to be relocated." (*Id*. ¶ 15). Kolodziej told plaintiff that he was very familiar with plaintiff's situation and would not move plaintiff until he suffered the consequences for filing grievances. (*Id*.). Kolodziej then told defendant McMacklin to "put Plaintiff back on strip and to gas him at his earliest

convenience." (*Id*.). On February 24, 2012, defendant McMacklin put plaintiff back "on strip". (*Id*., p. 9 ¶ 16).

On February 28, 2012, defendant Shaner told plaintiff "to get ready, because he wanted to gas him [plaintiff] while he was still naked on strip." (*Id*. ¶ 17). Before Shaner could return, plaintiff stopped a nurse (Ms. Adams) and declared a psychological emergency. Plaintiff explained "what's been going on and his intentions to commit suicide." (*Id*.). After the interview, plaintiff was taken off "stip" and provided his clothing. (*Id*.).

On February 29, 2012, defendant Shaner returned to plaintiff's cell and stated, "there's no psych nurse to save you today, Smith, so get ready. If you let me gas you twice in the face I'll let you keep your property, but if you don't I'll take all of your s?!t and gas you all week." (*Id*. ¶ 18). Shaner left and returned with a handheld audio/videocamera. (*Id*.). Plaintiff alleges that because he "was psychologically drained," he "did what he promised he would do if attacked again and hung himself." While hanging, defendant McMacklin sprayed plaintiff with a large amount of a chemical agent and plaintiff lost consciousness. (*Id*. ¶ 19). Plaintiff awoke on the cement floor just as defendant Hall was "land[ing] a heavy knee on [plaintiff's] left eye socket." Hall then jumped again and landed another knee on plaintiff's head so hard that defendant Shaner whispered to Hall, "stop it, Hall, or you'll kill him." (*Id*., p. 10 ¶ 20). As this was going on, defendant Pugh was twisting plaintiff's leg, defendant Wallace was squeezing plaintiff's testicles, and defendant McMacklin was punching plaintiff in the face and head with a closed fist. (*Id*.). Another prison official (Captain Smith) ran into the cell and began pulling the officers off plaintiff. (*Id*.). Plaintiff was escorted to a shower to decontaminate, where he made statements to the camera. (*Id*. ¶ 21). As a result of the assault, plaintiff states he: (1) had several

"huge knots" on his head, (2) both of his eyes were swollen shut and bleeding, (3) his nose was bleeding, (4) several teeth were loose and bleeding, (5) plaintiff's lower spine "felt severly [sic] damaged", (6) plaintiff's left knee was swollen, (7) plaintiff had "several huge gashes" on his left ankle, and (8) plaintiff's vision in his right eye was blurred and plaintiff's had double vision in his left eye. (*Id*. ¶ 22).

    B.    Defendants' Motion to Sever

Defendants assert that plaintiff seeks recovery for essentially three separate incidents: the August 16, 2011 use of force, the February 4, 2012 placement in a strip cell, and the February 29, 2012 use of force. Defendants argue that these incidents do not arise out of the same transaction or occurrence, because: (1) the events are separated by approximately six months and occurred in separate dormitories and (2) there is no single defendant who was involved in the August 16 use of chemical agents, the February 4 denial of clothing, and the February 29 use of force. (Doc. 66, pp. 3-4; Doc. 78, p. 1). Defendants argue that plaintiff's bald assertion that the events are part of an "ongoing terror campaign against him" is insufficient to bring the incidents within the same transaction or occurrence, because plaintiff's assertion is belied by the long gap between the incidents. Defendants further argue that plaintiff's inclusion of defendant Kolodziej in the description of the incidents does not transform the disparate actions into a single action, because Kolodziej, by his rank as "head of security", is necessarily involved in some way in all security matters. Defendants further maintain that no question of law or fact common to all defendants exists, and that allowing plaintiff to litigate in one action the three separate incidents involving different prison officials will allow plaintiff to improperly avoid paying separate filings fees for each action as compelled by the Prison Litigation Reform Act. (Doc. 66, p. 4; Doc. 78, p. 1).

Plaintiff responds that the "link" connecting all three incidents is apparent from the "long efficient paper tr[ai]l of grievances to support his claims that a pattern of abuse did exist to punish Plaintiff for filing grievances." (Doc. 82, pp. 1-4; *see also* Doc. 80, pp. 1-2). Plaintiff references the fifty-four pages of exhibits attached to his amended compliant in which plaintiff presents a "Reinactment of Terror Campaigne". (Doc. 23, Attach.). Plaintiff further asserts that "J. Kolodziej's interactions in all three (3) incidents" provides the connection necessary to join all his claims against the various defendants into one cause of action. (Doc. 80, p. 2).

Although a conclusory allegation that all of the incidents were part of a "terror campaign" is, by itself, insufficient to establish the prerequisites for joinder, plaintiff has supported this assertion with specific allegations that, taken as true, support an inference that the threats, gassings, placements on strip and uses of excessive force shared the same core of retaliation. For example, plaintiff provides alleged statements of the defendants (particularly Gielow, Kolodziej and Shaner) forewarning a use of force with specific reference to either plaintiff's grievances, or another defendant's retaliation. Plaintiff also alleges factual similarity between the August 2011 and February 2012 acts of retaliation, as well as facts supporting a reasonable inference that the various acts of retaliation were a response (or "consequence" as one defendant put it) to plaintiff's ongoing grievances. The Court is aware that the alleged incidents occurred at different times, in different dormitories and by different defendants; nevertheless, the totality of plaintiff's allegations, most significantly the specific statements of one or more of the defendants themselves interrelating the incidents, lead the undersigned to conclude that plaintiff has established that his claims against the various defendants are logically related. Defendants' request for severance will be denied.

C.  Defendants' Motion to Dismiss

Defendants seek dismissal of plaintiff's official capacity claims against them on the basis of sovereign immunity. Defendants Martelliano, Kolodziej and Tifft further seek dismissal of plaintiff's individual capacity claims against them for failure to state a claim.

  i.  Official Capacity Claims

Plaintiff sues the defendants in both their individual and official capacities for damages. A suit against a state employee in his official capacity is deemed to be a suit against the State for Eleventh Amendment purposes. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). "Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued [neither of which is present here], the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court." *Gamble v. Fla. Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986); *id.* at 1512 (holding that sovereign immunity "will bar damage awards against state officers sued in their official capacities in suits brought in federal court pursuant to 42 U.S.C.A. § 1983."); *Will*, 491 U.S. at 66, 109 S. Ct. 2309-10 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." (citations omitted)); *Stroud v. McIntosh*, 722 F.3d 1294, 1297 (11th Cir. 2013) ("Put in its broadest form, the concept of sovereign immunity bars private citizens from suing states for damages). As plaintiff's official capacity claims are barred by sovereign

immunity, the claims must be dismissed.

    ii.    Individual Capacity Claims Against Martelliano, Kolodziej and Tifft

    a.    Elements of a First Amendment Retaliation Claim

"For an inmate to prevail on a retaliat[ion] claim, he must establish that (1) he engaged in constitutionally protected conduct; (2) the defendant's retaliatory act adversely affected the protected conduct; and (3) there is a causal connection between the retaliatory act and the adverse effect on the conduct." *Smith v. Fla. Dep't of Corr.*, 713 F.3d 1059, 1063 (11th Cir. 2013) (*citing Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

    b.    Elements of an Eighth Amendment Deliberate Indifference Claim

The Supreme Court has recognized that a prisoner may challenge the conditions of his confinement. *See Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981). A conditions-of-confinement claim requires a two-prong showing: "an objective showing of a deprivation or injury that is 'sufficiently serious' to constitute a denial of the 'minimal civilized measure of life's necessities' and a subjective showing that the official had a 'sufficiently culpable state of mind.'" *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994)).

The Supreme Court has set a high bar for the objective component of a claim challenging a condition of confinement. The Court has observed that "the Constitution does not mandate comfortable prisons." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (*quoting Rhodes*, 452 U.S. at 349, 101 S. Ct. at 2400). "If prison conditions are merely 'restrictive and even harsh, they are part of the

penalty that criminal offenders pay for their offenses against society.'" *Id.* (*quoting Rhodes*, 452 U.S. at 347, 101 S. Ct. at 2399). "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required." *Thomas*, 614 F.3d at 1304 (*quoting Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992)). A prison condition is unconstitutional only if it deprives the plaintiff of a human need, *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994) (*citing Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1994)), or otherwise "'pose[s] an unreasonable risk of serious damage to his future health' or safety," *Chandler*, 379 F.3d at 1289 (*quoting Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)).

The subjective component of a conditions-of-confinement claim requires that "the official had a 'sufficiently culpable state of mind.'" *Thomas*, 614 F.3d at 1304 (*quoting Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977). "[T]he relevant state of mind is deliberate indifference." *Id.* (*citing Wilson*, 501 U.S. at 303, 111 S. Ct. at 2327). Deliberate indifference has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow*, 320 F.3d at 1245 (quotations omitted). For an official to have subjective knowledge of the risk of harm, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. *Farmer*, 511 U.S. at 842-43, 114 S. Ct. at 1981. A mere negligent failure to protect an inmate does not state a claim under § 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986).

A viable complaint must also show that the prison official responded to the risk in an objectively unreasonable manner. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (*citing Farmer*, 511 U.S. at 834, 844-45); *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1027 (11th Cir. 2001) ("[O]fficials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk."). The officer must have a realistic opportunity to prevent the illegal conduct. *See Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844, 114 S. Ct. at 1982-83. Finally, a plaintiff must show that the constitutional violation caused the injury. *Cottone*, 326 F.3d at 1359 (*citing Marsh*, 268 F.3d at 1028).

   c. Application of the Law to Plaintiff's Allegations

Plaintiff asserts First and Eighth Amendment claims against defendant Martelliano, yet defendant Martelliano is mentioned nowhere in the body of plaintiff's amended complaint. (Doc. 23). Martelliano is not mentioned at all outside of the amended complaint's caption. Plaintiff's response to Martelliano's motion to dismiss argues that Martelliano "did, in fact, participate in the beating, however, where, Plaintiff could not specifically point out his point of attack. Ofc. Martelliano is still liable for failing to stop the beating." (Doc. 80, p. 2). The problem with plaintiff's argument is that the amended complaint does not allege Martelliano's presence at any beating or other allegedly unconstitutional act. The Court will not consider plaintiff's allegation, made for the first time in his response to the motion to dismiss, as the allegation is not part of plaintiff's amended complaint and is unsworn.

Plaintiff's claims against defendant Martelliano should be dismissed for failure to state a claim. *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (affirming dismissal of prisoner-plaintiff's Eighth Amendment claims against two prison officials because prisoner's complaint alleged no facts describing how either was deliberately indifferent to plaintiff's health or safety (*citing Farrow v. West*, 320 F.3d 1235, 1245-46 (11th Cir. 2003)); *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (affirming dismissal with prejudice of plaintiff's claims against prison officials where plaintiff-prisoner's complaint failed to allege facts associating those officials with the alleged constitutional violation); *see also Pamel Corp. v. P.R. Highway Auth.*, 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong."); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1234, at 381-85 (3d ed. 2004) ("[A] complaint will be held defective . . . if [it] fails to connect the defendant with the alleged wrong.").

     Plaintiff claims defendant Kolodziej violated his rights under the First and Eighth Amendments when Kolodziej: (1) ignored plaintiff's reports that B-dormitory staff were threatening him with retaliation and, in response to plaintiff's plea for a transfer, told plaintiff to stop writing grievances or deal with the consequences (doc. 23, p. 6 ¶ 3); (2) denied plaintiff's grievances seeking an investigation of Gielow's August 16, 2011 use of chemical agents (doc. 23, p. 8 ¶ 11); and (3) responded to plaintiff's reports of retaliation by G-dormitory staff by informing plaintiff that he would not transfer plaintiff until he suffered the consequences for filing grievances, and directed McMacklin to put plaintiff back on strip and to gas him at McMacklin's earliest convenience (doc. 23, pp. 8-9 ¶ 15). Defendant Kolodziej argues that to the

extent plaintiff seeks to hold him liable for defendant Gielow's August 2011 use of force simply because Kolodziej denied plaintiff's grievances about the incident, plaintiff fails to state a claim upon which relief can be granted. (Doc. 66, pp. 7-8).

Defendant Kolodziej is correct that merely denying a grievance, without personally participating in the unconstitutional conduct brought to light by the grievance, is insufficient to establish § 1983 liability. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("[D]enial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory official who denied administrative grievance and otherwise failed to act based on information contained in the grievance); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (holding that prisoner failed to state § 1983 claim against supervisory officials, where prisoner merely alleged the officials denied his grievance and did not allege they were personally involved in the alleged misconduct), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct."). In fact, however, plaintiff's claim concerning Gielow's August 2011 use of force goes beyond Kolodziej's denial of a grievance. Plaintiff also alleges that Gielow justified his use of force by indicating he was following orders from "the Colonel" (presumably Colonel Kolodziej). (*See* Doc. 23, p. 7 and Ex. D). Construed liberally, the allegations of and attachments to plaintiff's amended complaint state a plausible claim for relief against defendant Kolodziej.

Plaintiff seeks to hold defendant Warden Tifft liable under the Eighth Amendment for his subordinates' "terror campaign" against plaintiff, arguing that Tifft was aware of the campaign through plaintiff's grievances, and failed to act. (Doc. 23, p. 11). In support of this claim, plaintiff's amended complaint alleges that plaintiff "filed numerous grievances" to defendant Tifft requesting an investigation of Gielow's use of force on August 16, 2011, and Tifft denied the grievances. (*Id*., p. 8 ¶ 11). Plaintiff attached fifty-four pages of grievances to his amended complaint.

Defendant Tifft seeks dismissal of this claim on the grounds that to the extent plaintiff seeks to hold him liable for a civil rights violation based simply on his denial of grievances, plaintiff fails to state a claim upon which relief can be granted. Tifft argues further that even if a constitutional violation is deemed to have occurred, he is entitled to qualified immunity because he was not on notice that merely receiving a grievance from an inmate could create constitutional liability. (Doc. 78, pp. 1-2). Plaintiff responds that he filed over fifty grievances to defendant Tifft from May 11, 2011, to February 29, 2012, and Tifft denied them all without an investigation. (Doc. 82, p. 4). Plaintiff's response also alleges that Tifft "gave his approval to have plaintiff gassed and placed in strip cells several times." (*Id*.).

Taking the allegations of plaintiff's amended complaint as true and construing them in the light most favorable to plaintiff, plaintiff fails to state a plausible Eighth Amendment claim against Tifft. Plaintiff's grievances attached to his amended complaint indicate that although plaintiff addressed several grievances to Tifft, Warden Tifft's name appears on only three responses, one dated June 1, 2011, and two dated September 8, 2011. (Doc. 23, Exs. A, B:1, B:3). Each of these three responses was actually prepared by another employee – R. Burch, who reviewed plaintiff's allegations, investigated the incident and denied the grievance after

concluding it lacked merit. Defendant Tifft approved the response. As discussed earlier, defendant Tifft cannot be held liable for his subordinates' allegedly unconstitutional conduct simply because he denied plaintiff's grievances. (*See* discussion *supra* pp. 16-17). Even if Tifft could be held liable, the grievances attached to plaintiff's amended complaint establish that Tifft's denial was based on his reasonable reliance on the responding employee's investigation and evaluation of the grievance. Under these circumstances, plaintiff cannot establish that defendant Tifft was deliberately indifferent to the alleged abuse by his staff.[4] Plaintiff's amended complaint fails to state a plausible Eighth Amendment claim against defendant Tifft.

Accordingly, it is respectfully RECOMMENDED:

1. That defendants' motions to sever and motions to dismiss (docs. 66, 78) be GRANTED IN PART AND DENIED IN PART as follows:

    a. Defendants' motions to sever (docs. 66, 78) be DENIED.

    b. Defendants' motions to dismiss plaintiff's official capacity claims (doc. 66, 78) be GRANTED and plaintiff's official capacity claims for damages be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(iii) as barred by sovereign immunity.

    c. Defendant Martelliano's motion to dismiss the individual capacity claims against him (doc. 66) be GRANTED and plaintiff's individual capacity claims against Martelliano be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief can be granted.

---

[4]The Court will not consider plaintiff's allegation, made for the first time in his response to the motion to dismiss, that defendant Tifft approved the use of chemical agents and strip cells against plaintiff. (*See* Doc. 82, p. 4). The allegation is not part of plaintiff's amended complaint and is unsworn.

    d.     Defendant Kolodziej's motion to dismiss the individual capacity claims against him (doc. 66) be DENIED.

    e.     Defendant Tifft's motion to dismiss the individual capacity claims against him (doc. 78) be GRANTED and plaintiff's individual capacity claims against Tifft be DISMISSED WITH PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii) for plaintiff's failure to state a claim upon which relief can be granted.

2. That this case be remanded to the undersigned for further proceedings on plaintiff's individual capacity claims for damages against defendants Kolodziej, Gielow, Shaner, McMacklin, Hall, Wallace, Pugh and Barnes for their alleged violation of plaintiff's First and Eighth Amendment rights.

At Pensacola, Florida this 30th day of September, 2013.

                *s/ Charles J. Kahn, Jr.*
                **CHARLES J. KAHN, JR.**
                **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).