**Use of Force#** 2011-08-10317

**2011-119-0399**

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**(INSTITUTIONS)**
**REPORT OF FORCE USED**

Institution/Office: Santa Rosa Correctional Institution Date: August 16, 2011
Inmate Name: Smith, Warren Number: T20346

**I. REPORT OF PERSON (S) USING FORCE**

Statement of Facts (State fully the exact circumstances leading to use of force):

On August 16, 2011, I was assigned to Santa Rosa Main Unit as the F-Dormitory Housing Sergeant. At approximately 11:19am, I heard yelling and kicking coming from wing one of F-Dormitory. I entered wing one of F-Dormitory, and observed Inmate Smith, Warren DC# T20346, who is housed alone in F1221L, yelling obscenities into the wing and kicking on his cell door. I attempted to counsel with Inmate Smith and issued him several verbal orders to cease his disruptive behavior. Inmate Smith refused to comply with my orders and continued to yell obscenities into the wing and kick the cell door, creating a disturbance in the housing unit. At approximately 11:21am, I notified Second Shift Assistant Supervisor Lieutenant Walter Gielow and advised him of the disturbance Inmate Smith was creating in the dormitory. At approximately 11:23am, Lieutenant Gielow and I entered wing one and Lieutenant Gielow and I attempted to counsel with Inmate Smith but were met with negative results. Lieutenant Gielow issued Inmate Smith several verbal orders to cease his disruptive behavior, but Inmate Smith refused to comply with all orders issued to him. At approximately 11:24am, Lieutenant Gielow reviewed Inmate Smith's DC4-650B (Chemical Agent Risk Assessment form) and it stated that at the time of his pre-confinement health appraisal, based on a review of the medical record, this inmate has no known medical conditions that would be exacerbated by the use of chemical restraint agents. At approximately 11:25am, medical was contacted and Senior Registered Nurse Sherry Derrick advised that this inmate has no known medical conditions that would be exacerbated by the use of chemical restraint agents. At approximately 11:30am, Duty Warden, Colonel James Peters was contacted and advised of the situation and he authorized the use of chemical agent OC if necessary to quell the disturbance Inmate Smith was creating. At approximately 11:33am, Officer Andrew Kauffman retrieved B-dormitory's digital video recorder. At approximately 11:34am, Officer Kauffman began video recording procedures. (Continued)

**Type and amount of force used:**

At approximately 11:36am, I administered one, one second bursts of chemical agent Oleoresin Capsicum from my assigned MK-4 C#734, Defense Technology Oleoresin Capsicum, canister number 734, serial number 020578, at Inmate Smith through the opened handcuffing portal of cell F1221, my assigned MK-4 malfunctioned during the application of chemical agents totaling (28 grams).

At approximately 11:38am, I returned to cell front F1221 and administered three one-second bursts of Chemical agent (OC), from an MK4 canister# 780, serial# 023591 at Inmate Smith through the opened handcuffing portal of cell F1221 totaling ( 87 grams).

At approximately 11:43am, I grasped Inmate Smith's right arm and placed it behind his back and applied wrist restraints to Inmate Smith.

Date: August 16, 2011 Signature: [signature] Daniel Larson Sergeant
Officer Using Force Title

**II. WARDEN'S SUMMARY**

I have reviewed the fixed camera digital recording, the handheld video recording, and all documents pertaining to the Report of Force Used. All officers involved indicated that Section I of the report is true and accurate. All statements pertaining to this report are attached. This use of force appears to comply with FAC 33-602.210. An additional Mins submitted due to allegations by inmate on video.

Date: 10-3-11 Signature: [signature]
Warden

**III. INSTITUTIONAL INSPECTOR'S REVIEW**

The Report of Force Used, with attachments, was reviewed and all required documentation appears to be complete.

Date: 10-7-11 Signature: [signature]
Inspector Inspector R. Castle

**IV. INSPECTOR GENERAL'S REVIEW**

☑ Approved ☐ Disapproved

(Reason for Disapproval) -

Date: 10/12/2011 Signature: [signature]
Inspector General's Office
ILSA HAYES

If additional space is needed for any section, attach supplemental sheets.
**Distribution**: Listed on back.
DC6-23H09967 (Revised 8/H099673)

Exh D-002

**State of Florida**
**Department of Corrections**

**REPORT OF FORCE USED**
**Continuation**

Institution: Santa Rosa Correctional Institution Date: August 16, 2011
Inmate Name: Smith, Warren DC#: T20346

**REPORTOFFORCECONTINUATION:**
At approximately 11:34am, Lieutenant Gielow gave a brief opening statement regarding the housing unit staff present and a description of our attempts to resolve the situation prior to the supervisor's arrival and a statement of his intent to resolve the disturbance by counseling with Inmate Smith. Lieutenant Gielow further stated his intent was to only utilize chemical agents if necessary to quell the disturbance Inmate Smith was creating after all reasonable non-force intervention efforts have failed. At approximately 11:35am, Lieutenant Gielow and I entered wing one and approached cell F1221. At approximately 11:35am, Lieutenant Gielow ordered Inmate Smith to cease his disruptive behavior. Lieutenant Gielow then advised Inmate Smith that this was his final order and that if he did not cease his disruptive behavior chemical agents would be administered. Lieutenant Gielow further advised Inmate Smith that if he did cease his disruptive behavior, this warning would not be repeated prior to the application of chemical agents should he become disruptive after Lieutenant Gielow and the camera operator left the wing. At approximately 11:36am, Inmate Smith declared a psychological emergency and then stated that he was going to kill himself and began tying a makeshift noose around his neck with a torn piece of his state issued blanket and then tied the other end of the makeshift noose to his upper cell bunk and attempted to hang himself. At approximately 11:36am, Lieutenant Gielow ordered Inmate Smith several verbal orders to cease his actions of self harm, but was met with negative results, as Inmate Smith continued trying to hang himself with the makeshift noose. At approximately 11:36am, I administered one, one second bursts of chemical agent Oleoresin Capsicum from my assigned MK-4 C#734, Defense Technology Oleoresin Capsicum, canister number 734, serial number 020578 at Inmate Smith through the opened handcuffing portal of cell F1221, my assigned MK-4 malfunctioned during the application of chemical agents totaling (28grams). At approximately 11:37am, I retrieved an MK-4 Chemical Agent, canister# 780, serial# 023591 which was assigned to F-dormitory Programs Officer Fredrick Hetherington. At approximately 11:37am, Lieutenant Gielow again ordered Inmate Smith to cease his actions of self harm, but was again met with negative results as Inmate Smith continued to try and hang himself with the makeshift noose. At approximately 11:38am, I returned to cell front F1221 and administered three one-second bursts of Chemical agent (OC), from an MK4 canister# 780, serial# 023591 at Inmate Smith through the opened handcuffing portal of cell F1221 totaling ( 87grams). At approximately 11:38am, Inmate Smith was ordered to come to the door, to be escorted for a cold water decontamination shower. At approximately 11:38am, Lieutenant Gielow issued Inmate Smith several verbal orders to submit to come to the door, but was met with negative results as Inmate Smith made a makeshift curtain using his state issued blanket and became unresponsive to Lieutenant Gielow's orders. At approximately 11:39am, Lieutenant Gielow summoned for the assistance of more staff members into wing one of F-dormitory. At approximately 11:39am, Lieutenant Gielow made a brief statement on camera regarding that Inmate Smith was lying on the lower cell bunk unresponsive behind the makeshift curtain. At approximately 11:40am, F-dormitory Officer Hetherington and Officer Mark De Lavega arrived at cell front F1221 with the non-electric concave plexiglass shield. At approximately 11:40am, Lieutenant Gielow again ordered Inmate Smith to come to the door, but was again met with negative results as Inmate Smith continued to be unresponsive behind his makeshift curtain. At approximately 11:40am, Officer De Lavega, Officer Hetherington, Lieutenant Gielow, and I lined up at the cell door F1221 in preparation to enter the cell for a life safety check of Inmate Smith. Lieutenant Gielow remained outside the cell door to supervise. At approximately 11:40am, the cell door of cell F1221was breached and Officer De Lavega, Officer Hetherington, and I entered the cell. Officer De Lavega used the non electric concaved Plexiglas shield in an attempt to protect staff, and also attempt to pin Inmate Smith to the cell bunk. Inmate Smith became combative by attempting to kick and grabbed the Plexiglas shield holding it to prevent the officers from untying the noose around his neck. Sergeant Larson attempted to deliver a knee spike to Inmate Smith to free the non electric concave plexiglass shield. Sergeant Larson struck the plexiglass shield with his knee freeing it, Lieutenant Gielow then retrieved it from the cell floor. Inmate Smith began to resist against staff while I and Officer Hetherington were attempting to untie the makeshift noose from Inmate Smith's neck and the upper cell bunk. Inmate Smith continued to resist against Officer Hetherington, Officer De Lavega, and me, as I attempted to apply the wrist restraints and Officer Hetherington attempted to apply the leg restraints to Inmate Smith. At approximately 11:41am, Lieutenant Gielow began to assist staff by trying to remove the makeshift noose from Inmate Smith's neck and the upper cell bunk, but was also unsuccessful as Inmate Smith continued to resist against staff. At approximately 11:41am, Lieutenant Gielow summoned for more assistance into wing one. At approximately 11:42am, Lieutenant Michael DeLapp arrived and entered cell F1221 to assist with removing the noose and applying restraints to Inmate Smith as he continued to resist against staff. Lieutenant DeLapp applied a downward pressure on Inmate Smith's upper body area securing his movement, preventing him from resisting against staff. At approximately 11:43am, I grasped Inmate Smith's right arm and placed it behind his back and Officer De Lavega grasped Inmate Smith's left arm and placed it behind his back and I applied wrist restraints to Inmate Smith. At approximately 11:44am, Officer Hetherington applied leg restraints to Inmate Smith. At approximately 11:45am, Inmate Smith was escorted out of cell F1221 Lieutenant De Lapp and Officer De Lavega to cool water shower cell F2125. During the escort Inmate Smith became disorderly by yelling at staff, he was counseled with by (continued)

**DATE:** August 16, 2011

**SIGNATURE:** Sergeant Daniel Larson

**State of Florida**
**Department of Corrections**

**REPORT OF FORCE USED**
**Continuation**

Institution: Santa Rosa Correctional Institution Date: August 16, 2011
Inmate Name: Smith, Warren DC#: T20346

**REPORTOFFORCECONTINUATION:**

Lieutenant Gielow and ordered to cease his behavior. At approximately 11:47am, Lieutenant Gielow notified the Duty Warden, Colonel James Peters and advised him of the situation with Inmate Smith. Duty Warden Peters again authorized the use of chemical agent (OC) to quell the disturbance Inmate Smith was creating in the dormitory. At approximately 11:48am, Lieutenant DeLapp utilized the F-dormitory ligature cutter to remove the makeshift noose from around Inmate Smith's neck. At approximately 11:48am, I removed the leg restraints from Inmate Smith and he was secured in cold water decontamination shower F2125. At approximately 11:48am, I removed the wrist restraints and Inmate Smith received a cool water shower. At approximately 11:49am, Inmate Smith began creating a disturbance by yelling into the wing. At approximately 11:49pm, Lieutenant Gielow issued Inmate Smith a final verbal order to cease yelling into the wing disrupting the normal operations of the dormitory. Lieutenant Gielow then advised Inmate Smith that this was his final order and that if he did not cease his disruptive behavior chemical agents would be administered. Lieutenant Gielow further advised Inmate Smith that if he did cease his disruptive behavior, this warning would not be repeated prior to the application of chemical agents. At approximately 11:49am, Inmate Smith made several threats to kill himself and stated that he was in fear for his life. At approximately 11:50am, Inmate Smith continued his disruptive behavior of yelling into the wing disrupting the normal operations of the dormitory. At approximately 11:50am, Inmate Smith declared a psychological emergency. At approximately 11:51am, Lieutenant Gielow notified Behavioral Specialist Jeffrey Arney and advised him of the situation with Inmate Smith. Inmate Smith continued to cause a disturbance in the housing unit by yelling into the wing as he decontaminated in cold water shower cell F2125. At approximately 11:53am, Lieutenant Gielow again counseled with Inmate Smith regarding his disruptive behavior again warning him that if he did not cease chemical agents would be administered. Inmate Smith continued yelling into the wing disrupting the normal operations in the housing unit as he decontaminated in cold water shower cell F2125. At approximately 11:54am, Lieutenant De Lapp again counseled with Inmate Smith regarding his disruptive behavior of yelling into the wing. At approximately 11:59am, Inmate Smith was issued clean boxers. At approximately 12:00pm, Behavioral Specialist Jeffrey Arney arrived at shower cell F2125 and interviewed Inmate Smith regarding his psychological emergency. At approximately 12:02pm, Inmate Smith was returned to security. At approximately 12:02pm, Inmate Smith continued creating a disturbance by yelling into the wing. At approximately 12:02pm, Lieutenant Gielow withdrew and weighed a Def Tech MK-9 HVF chemical agent OC, canister number #814, serial number #07522 from the F-Dormitory secure storage area. At approximately 12:03pm, Lieutenant Gielow, Lieutenant De Lapp and I entered wing two. At approximately 12:03pm, Lieutenant Gielow administered three one-second bursts of chemical agent OC from a Def Tech MK-9 HVF canister number OC #814, serial number #07522, at Inmate Smith through the shower cell door of shower cell F2125 (totaling 158 grams). At approximately 12:04pm, Inmate Smith complied with orders and ceased his disruptive behavior. At approximately 12:08pm, Lieutenant Gielow ordered Inmate Smith to take a cool water decontamination shower and he complied. At approximately 12:08pm, Inmate Smith received a cool water decontamination shower. At approximately 12:20pm, Inmate Smith was issued a shroud due to his previous acts of self harm. At approximately 12:22pm, I applied wrist restraints and leg restraints to Inmate Smith. At approximately 12:22pm, Lieutenant De Lapp and I escorted Inmate Smith to the F dormitory medical triage room. At approximately 12:24pm, Senior Licensed Practical Nurse Doreen Von Oven conducted a post use of force medical examination. Nurse Von Oven completed a DC4-701C: Emergency Room Record and a DC4-708: Diagram of Injury with no injuries noted. At approximately 12:29pm, Lieutenant DeLapp and I escorted Inmate Smith to his decontaminated cell F1221. At approximately 12:31pm, I removed the leg restraints and wrist restraints from Inmate Smith and he was secured in his assigned decontaminated cell F1221. Inmate Smith was not issued a mattress, linens or personal property due to his previous acts of self harm with his state issued blanket. At approximately 12:32pm, Lieutenant Gielow gave a brief closing statement and video recording ceased. Officer Kauffman monitored Inmate Smith for approximately sixty minutes for signs of respiratory distress with none noted. Lieutenant Gielow, Lieutenant DeLapp, Officer Hetherington, Officer De Lavega and I received a post use of force medical examination by Nurse Von Oven and she completed a DC4-701C: Emergency Room Record and a DC4-708: Diagram of Injury forms for each of us with no injuries noted. This incident was notated on Inmate Smith's DC6-229: Daily Record of Special Housing. Officer Kauffman monitored Inmate Smith for approximately sixty minutes for signs of respiratory distress with none noted. At approximately 1:31pm, Lieutenant Gielow contacted the Emergency Action Center, Duty Officer Kristina Miller who issued use of force reference number 2011-08-10317 for this incident. Officer Kauffman completed a DC1-801: Chain of Custody form for the digital video disc, and the required documentation was placed in the locked box in the security hallway. Inmate Smith received a disciplinary report for 2-3: Creating a Minor Disturbance. I am certified in the use of chemical agents and my certification expires September 2011. Lieutenant Gielow is certified in the use of chemical agents and his certification expires August of 2012.

DATE: August 16, 2011 SIGNATURE: Sergeant Daniel Larson

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECT**

**(INSTITUTIONS)**
**REPORT OF FORCE USED**

**STAFF SUPPLEMENT**

**Institution:** Santa Rosa Correctional InstitutionMain Unit **Date:** August 16, 2011
**Inmate's Name:** Smith, Warren **DC#:** T20346

1. **TYPE AND AMOUNT OF FORCE USED:**
At approximately 11:43am, I applied a downward pressure on Inmate Smith's upper body area securing his movement as he was resisting staff while all restraints were applied to Inmate Smith.

Date: August 16, 2011 Signature: Michael DeLapp [signature] Lieutenant
Officer Using Force Title

2. **TYPE AND AMOUNT OF FORCE USED:**
At approximately 11:40am, I utilized the concave non-electric plexiglass shield to ensure staff safety while entering cell F1221 for a life safety check of Inmate Smith, I attempted to pin Inmate Smith to the cell bunk so that restraints could be applied to Inmate Smith. I also grasped Inmate Smith's left arm and assisted Sergeant Daniel Larson in applying the wrist restraints to Inmate Smith.

Date: August 16, 2011 Signature: Mark De Lavega [signature] Officer
Officer Using Force Title

At approximately 11: 44am, I grasped Inmate Smith's left and right lower legs and applied the leg restraints to Inmate Smith.

Date: August 16, 2011 Signature: Fredrick Hetherington [signature] Officer
Officer Using Force Title

3. **TYPE AND AMOUNT OF FORCE USED:**

Date: Signature:
Officer Using Force Title

4. **TYPE AND AMOUNT OF FORCE USED:**

Date: Signature:
Officer Using Force Title

DC6-231 (Revised 8/03) Incorporated by Reference in Rule 33-602.210, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORREC'. .S**

**(INSTITUTIONS)**
**REPORT OF FORCE USED**

**STAFF SUPPLEMENT**

**Institution:** Santa Rosa Correctional InstitutionMain Unit **Date:** August 16, 2011
**Inmate's Name:** Smith, Warren **DC#:** T20346

1. **TYPE AND AMOUNT OF FORCE USED:**
At approximately 12:03pm, I administered three one-second bursts of chemical agent OC from a Def Tech MK-9 HVF canister number OC #814, serial number #07522, at Inmate Smith through the shower cell door of shower cell F2125 (totaling 158 grams).

Date: August 16, 2011 Signature: Walter Gielow Lieutenant
Officer Using Force Title

2. **TYPE AND AMOUNT OF FORCE USED:**

Date: ____________ Signature: ____________
Officer Using Force Title

Date: ____________ Signature: ____________
Officer Using Force Title

3. **TYPE AND AMOUNT OF FORCE USED:**

Date: ____________ Signature: ____________
Officer Using Force Title

4. **TYPE AND AMOUNT OF FORCE USED:**

Date: ____________ Signature: ____________
Officer Using Force Title

DC6-231 (Revised 8/03) Incorporated by Reference in Rule 33-602.210, F.A.C.

Exh D 005

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**SANTA ROSA CORRECTIONAL INSTITUTION**
REPORT OF FORCE USED WORKSHEET

Inmate Name: Smith, Warren DC# T20346

**I. REPORT OF PERSON(S) USING FORCE:**

On 8-16-11, I was assigned to Santa Rosa Main Unit as the F-dorm Housing Sgt. At approx 11[19] I heard yelling and kicking
coming from wing 1 of F dormitory. I entered wing 1 of F dorm and observed I/M Smith, Warren T20346 who is housed
alone in F1221, yelling obscenities into the wing and kicking on his cell door. I attempted to counsel
with I/M Smith and issued him several verbal orders to cease his disruptive behavior. I/M Smith
refused to comply with my orders and continued to yell obscenities into the wing and kick the cell door,
creating a disturbance in the housing unit. At approx 11[21] I notified 2nd shift Assistant Supervisor Lt.
Walter Gielow and advised him of the disturbance I/M Smith was creating in the dorm. At approx 11[23]
Lt. Gielow and I entered wing 1 and Lt. Gielow and I attempted to counsel with I/M Smith but were met
with negative results. Lt. Gielow issued I/M Smith several verbal orders to cease his disruptive behavior
but I/M Smith refused to comply with all orders issued to him. At approx 11[24] Lt. Gielow reviewed
I/M Smith DC4-650B and it stated that at the time of his pre-confinement health appraisal, based on a
review of the medical record, this I/M has no known medical condition that would be exacerbated
by the use of chemical agents. At approx 11[25] medical was contacted and SRN Sherry Dennis advised that
this I/M has no known medical condition that would be exacerbated by the use of chemical restraint
agents. At approx 11[30] Duty Warden, Col. [illegible] Peters was contacted and advised of the situation and he
authorized the use of chemical agent OC if necessary to quell the disturbance I/M Smith was creating. At
approx 11[33] Ofc. Andrew Baffin retrieved B-dorm digital video recorder. At approx 11[34] Ofc. Baffin began
video recording procedures. At approx 11[34], Lt. Gielow gave a brief opening statement regarding the housing unit,
staff present and a description of our attempts to resolve the situation prior to the supervisor's arrival and
a statement of his intent to resolve the disturbance by counseling with I/M Smith. Lt. Gielow further
stated his intent was to only utilize chemical agents if necessary to quell the disturbance I/M Smith
was creating after all reasonable non-force intervention efforts have failed. At approx 11[35] Lt. Gielow and I entered
wing 1 and approached cell F1221. At approx 11[35] Lt. Gielow ordered I/M Smith to cease his disruptive behavior. Lt.
Gielow then advised I/M Smith that this was his final order and that if he did not cease his disruptive

**II. TYPE AND AMOUNT OF FORCED USED:**

At approx 11[36], I administered 1-1 second burst of chemical agent OC from my assigned MK-4C #734, Def Tech
OC, canister #734, serial #020578 at I/M Smith through the opened handcuffing portal of cell F1221,
my chemical agent MK4 malfunctioned during the application of chemical agent totaling (28 grams).
At approx 11[38], I returned to cell front F1221 and administered 3-one second bursts of chemical agents (OC)
from an MK4-canister #780, serial #023591, at I/M Smith through the portal of cell F1221 totaling
(87 grams). At approx 11[43], I grasped I/M Smith right arm and placed it behind his back and
applied wrist restraints to I/M Smith

DATE REPORT WRITTEN 8/16/11 AT 300 AM/PM (PM circled)

SIGNATURE OF REPORTING OFFICER: [signature]

NAME AND POSITION (PRINT) D.J. Lane Sgt

**SHIFT SUPERVISORS REVIEW**

☒ APPROVED ☐ INCIDENT REPORT ☐ DC4-701C'S

☐ DC6-232 ☐ PICTURES TAKEN

SUPERVISORS SIGNATURE: [signature]

DATE REVIEWED: 8-16-11 AT 330 pm AM/PM

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**SANTA ROSA CORRECTIONAL INSTITUTION**
REPORT OF FORCE USED WORKSHEET

Inmate Name: Smith, Warren DC# T20376

**I. REPORT OF PERSON(S) USING FORCE: (Continued)**

be have chemical agent would be administered. Lt Bailey further advised I/M Smith that if he did cease his disruptive behavior this warning would not be repeated prior to the application of chemical agents should he become disruptive after Lt Bailey and the camera operator left the wing. At approx 11^36 I/M Smith declared a psychological emergency and then stated that he was going to kill himself and began tying a makeshift noose around his neck with a torn piece of his state issued blanket. He tied the other end of the makeshift noose to his upper cell bunk and attempted to hang himself. At approx 11^36 Lt Bailey gave I/M Smith several verbal orders to cease his actions of self harm, but was met with neg. results as I/M Smith continued trying to hang himself with the makeshift noose. At approx 11^36 I administered 1-1 second burst of chemical agent OC from my assigned MK-4 OC, Def Tech OC canister # 734, serial # 026578 at I/M Smith through the opened handcuffing portal of cell F1221, my assigned MK-4 malfunctioned during the application of chemical agents totaling (28 grams). At approx 11^37, I retrieved a MK-4 Chemical agent canister 780, serial 023571 which was assigned to F dorm Program Officer Frederick Hethington. At approx 11^37 Lt Bailey again gave I/M Smith several verbal orders to cease his actions of self harm, but was again met with negative results as I/M Smith continued to try and hang himself with the makeshift noose. At approx 11^38 I returned to cell front 1221 and administered 3-one second bursts of chemical agent OC from a MK-4 canister # 780 serial # 023571 at I/M Smith through the opened handcuffing portal of cell F1221 totaling (87 grams). At approx 11^38, I/M Smith was ordered to submit to wrist restraints to be escorted for a cold water decontamination shower. At approx 11^38 Lt Bailey issued I/M Smith several verbal orders to submit to wrist restraints to be escorted to a cold water shower but was met with negative results as I/M Smith made a makeshift curtain using his state issued blanket and became unresponsive to Lt Bailey's orders. At approx 11^37 Lt Bailey summoned for the assistance of more staff members to wing 1 of F dorm. At approx 11^39 Lt Bailey made a brief statement on camera regarding that I/M Smith was lying on the lower cell bunk unresponsive behind the makeshift curtain. At approx 11^40 F dorm ofc Hethington and ofc Mark Delavega arrived at cell F1221 with the non-electric concave plexiglass shield. At approx 11^40, Lt Bailey again ordered I/M Smith to submit to wrist restraints to be escorted for a cold water decontamination shower, but was again met with neg. results as I/M Smith continued to be unresponsive behind his makeshift curtain. At approx 11^40 Ofc Delavega, ofc Hethington, Lt Bailey and I lined up at cell door F1221 in preparation to enter the cell for a life safety check of I/M Smith. At approx 11^40 the cell door of cell F1221 was breached and ofc Delavega, ofc Hethington, Lt Bailey and I entered the cell. Ofc Delavega used the non-electric concave plexiglass shield in an attempt to protect staff, catching it between the cell bunks. I then freed the non electric concave plexiglass shield and Lt Bailey then retrieved it from the cell floor. I/M Smith began to resist against staff while myself, Ofc Hethington were attempting to untie the makeshift noose from I/M Smith's neck and the upper cell bunk. I/M Smith continued to resist against ofc Hethington, ofc Delavega and I as I attempted to apply the wrist restraints and ofc Hethington attempted to apply the leg restraints to inmate Smith. At approx 11^41 Lt Bailey began to assist staff by trying to remove the makeshift noose from I/M Smith's neck and the upper cell bunk, Lt was also unsuccessful as I/M Smith continued to resist against staff. At approx 11^41 Lt Bailey summoned for more assistance via radio 1. At approx 11^42 Lt Michael DeLapp arrived and entered cell F1221 to assist with removing the noose and applying restraints to I/M Smith who continued to resist against staff.

**II. TYPE AND AMOUNT OF FORCED USED:**

SIGNATURE OF REPORTING OFFICER: [signature]

NAME AND POSITION (PRINT) D.J. [illegible] Sgt

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
SANTA ROSA CORRECTIONAL INSTITUTION
REPORT OF FORCE USED WORKSHEET

Inmate Name: Smith, Warren DC# T20346

I. REPORT OF PERSON(S) USING FORCE: (Continued)

Lt Delapp applied downward pressure on I/M Smith's upper body [illegible] his movement, preventing him from resisting against staff. At approx 11:43, I grasped I/M Smith's right arm and placed it behind his back and Ofc DeLange grasped I/M Smith's left arm and placed it behind his back and I applied wrist restraints to I/M Smith. At approx 11:44 Ofc Hetherington applied leg restraints to I/M Smith. At approx 11:45 Inmate Smith was escorted out of cell F1221 by myself and Lt Delapp to cell with shower cell F2125. At approx 11:48, Lt Delapp utilized the F-dorm ligature cutter to remove the makeshift noose from around I/M Smith's neck. At approx 11:48 I removed the leg restraints and wrist restraints from I/M Smith and he was secured in cell with decontamination shower 2125. At approx 11:49 I/M Smith began creating a disturbance by yelling into the wing. At approx 11:49, Lt Bisler issued I/M Smith a final verbal order to cease yelling into the wing disrupting the normal operation of the dorm. Lt Bisler then advised I/M Smith that this was his final order and that if he did not cease his disruptive behavior chemical agents would be administered. Lt Bisler further advised I/M Smith that if he did cease his disruptive behavior, this warning would not be repeated prior to the application of chemical agents. At 11:50 I/M Smith declared a psychological emergency. At approx 11:51 Lt Bisler notified Behavior Specialist [illegible] Arny and advised him of the situation with I/M Smith. I/M Smith continued to create a disturbance by yelling into the wing and was decontaminated in cell with shower cell F2125. At approx 11:53 Lt Bisler again counseled I/M Smith regarding his disruptive behavior. I/M Smith continued yelling into the wing disrupting the normal operation of the wing until he was decontaminated in cold water shower cell F2125. At approx 12:00, Behavior Specialist [illegible] Arny arrived at shower cell F2125 and interviewed I/M Smith regarding his psychological emergency. At approx 12:02 I/M Smith was returned to security. At approx 12:02 I/M Smith continued creating a disturbance by yelling into the wing. At approx 12:02, Lt Bisler with [illegible] weighed and [illegible] tech MK9-HVF chemical agent OC 414, 07522 from the F-dorm secure storage area. At approx 12:03 Lt Bisler administered 3-1 second bursts of chemical agent OC from a defogger tech MK9 HVF 817.5 [illegible] 07522 at I/M Smith through the shower cell door of shower F2125 (totaling 156 grams). At approx 12:04 I/M Smith complied with orders and ceased his disruptive behavior. At approx 12:06 Lt Delapp ordered I/M Smith to take a cold water decontamination shower and he complied. At approx 12:07 I/M Smith received a cool water decontamination shower and was issued a shroud due to his previous acts of self harm. At approx 12:22 I applied wrist restraints and leg restraints to I/M Smith. At approx 12:22 Lt Delapp and I escorted I/M Smith to the F-dorm medical triage room and SLPN Donna VanOvern performed a post use of force medical examination. Nurse VanOvern completed a DC4-701C and a DC4-708 with no injuries noted. At approx 12:29 Lt Delapp and I escorted I/M Smith to his decontaminated cell F1221. At approx 12:31 I removed the leg restraints and wrist restraints from I/M Smith and he was secured in decontaminated cell F1221. At approx 12:32 Lt Bisler gave a brief closing statement and video recording was secured. Ofc [illegible] monitored I/M Smith for approx 60 minutes for signs of respiratory distress with none noted. I/M Smith was not issued a mattress, linens or personal property due to his previous acts of self harm with his state issued blanket. I received a post use of force medical examination by Nurse VanOvern and she completed a DC4-701C and a DC4-708 with no injuries noted. Lt Bisler received a post VOF exam by Nurse VanOvern and she completed a DC4-701 and a DC4-708 with no injuries noted. Ofc DeLange received a post VOF exam by Nurse VanOvern and she completed a DC4-701C and

II. TYPE AND AMOUNT OF FORCED USED:

SIGNATURE OF REPORTING OFFICER: [signature]

NAME AND POSITION (PRINT) D. J. Lee - Sgt

Exh. D-009

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**
**SANTA ROSA CORRECTIONAL INSTITUTION**
REPORT OF FORCE USED WORKSHEET

Inmate Name: Smith, W[illegible] DC# T20346

I. **REPORT OF PERSON(S) USING FORCE: (Continued)**

a DC4-708 with a small laceration to the left third small finger and complaints of dizziness and pain in the chest. Ofc [illegible] a post UOF medical exam by Nurse [illegible] and sh[illegible] a DC4-701 and a DC4-708 with no injuries noted. This incident was notated on the Smith's DC6-229. At approx [illegible] [illegible] Ofc. Miller who assigned # 2011-08-1037. Ofc [illegible] completed a DC1-801 chain of custody form for the digital video disc, and the required documentation was placed in the locked box in the security building. I/M Smith received a diagnosis [illegible] Rx 2-3. I am certified in the use of chemical agents and [illegible] expire Sept 2011. [illegible] is certified in the use of chemical agents and [illegible] expiring 2012

II. **TYPE AND AMOUNT OF FORCED USED:**

SIGNATURE OF REPORTING OFFICER: [signature]

NAME AND POSITION (PRINT) D. J. [illegible] Sgt.

Exh. D 010

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTI ;**

**(INSTITUTIONS)**
**REPORT OF FORCE USED**

**STAFF SUPPLEMENT**

**Institution:** Santa Rosa **Date:** 8/16/11
**Inmate's Name:** Smith, Warren **DC#:** T20346

1. **TYPE AND AMOUNT OF FORCE USED:**

At approximately 11:43am, I applied a downward pressure on Inmate Smith's upper body area securing his movement as he was resisting staff while all restraints were applied to Inmate Smith.

Date: 8/16/11 Signature: Lt. Michael DeLepp
Officer Using Force Title

2. **TYPE AND AMOUNT OF FORCE USED:**

~~at approximately 11:48AM I grasped Inmate Smith's right arm and placed it behind his back and applied wrist restraints to Inmate Smith.~~

Date: 8-16-11 Signature: Sergeant Daniel Larson
Officer Using Force Title

3. **TYPE AND AMOUNT OF FORCE USED:** document how shield used on I/M.

AT APPROX 11:40AM, I UTILIZED the CONCAVE NON-ELECTRIC PLEXIGLASS SHIELD to ENSURE STAFF SAFETY WHILE ENTERING CELL F1221 FOR A LIFE SAFETY CHECK ON INMATE SMITH. I ALSO GRASPED INMATE SMITH LEFT ARM AND ASSISTED Sgt. LARSON IN APPLYING the WRIST RESTRAINTS ON INMATE SMITH. I also attempted to pin Inmate Smith to the cell bunk so that restraints could be applied.

Date: 8-16-11 Signature: Ofc Mark DeLawega
Officer Using Force Title

4. **TYPE AND AMOUNT OF FORCE USED:**

At approx 11:44am, I grasped Inmate Smith's left and right lower legs and applied the leg restraints to Inmate Smith.

Date: 8-16-11 Signature: Ofc Fredrick Hetherington
Officer Using Force Title

**Distribution:** Listed on back.

DC6-231 (Revised 8/03)

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS

(INSTITUTIONS)
REPORT OF FORCE USED

STAFF SUPPLEMENT

**Institution:** Santa Rosa Correctional Institution **Date:** August 16, 2011
**Inmate's Name:** SMITH, WARREN **DC#:** T20346

1. **TYPE AND AMOUNT OF FORCE USED:**
at approximately 12:03pm, I administered 3-1 second bursts of Chemical agent OC from Def Tech MK-9 HVP canister # 814, serial # 07522 at Inmate Smith through the slot in cell door F 2125 (totaling 158 grams)

Date: 8.17.11 Signature: W Cyelon [signature] LT
Officer Using Force Title

2. **TYPE AND AMOUNT OF FORCE USED:**

Date: Signature:
Officer Using Force Title

3. **TYPE AND AMOUNT OF FORCE USED:**

Date: Signature:
Officer Using Force Title

4. **TYPE AND AMOUNT OF FORCE USED:**

Date: Signature:
Officer Using Force Title

**Distribution:** Listed on back.

DC6-231 (Revised 8/03) Incorporated by Reference in Rule 33-602.210, F.A.C.

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

**AUTHORIZATION FOR USE OF FORCE**

Institution/Facility: Santa Rosa Correctional Institution

Inmate Name: Smith, Warren Inmate Number: T20346

**Justification for Use of Force:**

On August 16, 2011, at approximately 11:30am, I was contacted by Lieutenant Walter Gielow concerning Inmate Smith, Warren DC# T20346, housed alone in cell F1221L. Lieutenant Gielow informed me that Inmate Smith was creating a disturbance on the wing by yelling obscenities and kicking his cell door. Inmate Smith's dormitory file was reviewed and the DC4-650B: Chemical Agent Risk Assessment form stated based on a review of the medical record, at the time of his pre-confinement health appraisal, this inmate has no known medical conditions that would be exacerbated by the use of chemical restraint agents. Medical was notified and Senior Registered Nurse Sherry Derrick stated that Inmate Smith did not have known medical conditions that would be exacerbated by the use of chemical restraint agents. I authorized the use of chemical agent Oleoresin Capsicum (OC), if necessary, to quell the disturbance that Inmate Smith was creating.

At approximately 11:47am, Lieutenant Gielow again notified me that Inmate Smith was continuing to create a disturbance in the housing unit by yelling into the wing and I authorized the use of chemical agent Oleoresin Capsicum (OC), if necessary, to quell the disturbance that Inmate Smith was creating.

Individual Authorizing Use of Force: Colonel James Peters (Print or Type Full Name)

Title of Authorizing Individual: Duty Warden

Signature: [signature]

Date Force Was Authorized: August 16, 2011

Date Force Was Used: August 16, 2011

Individual Receiving Use of Force Authorization: Walter Gielow (Print or Type Full Name)

Title of Individual Receiving Authorization: Lieutenant

Signature: [signature]

Individual Using Force: Sergeant Daniel Larson (Print or Type Full Name)

Individual Using Force: Lieutenant Walter Gielow (Print or Type Full Name)

Individual Using Force: ____________ (Print or Type Full Name)

(Use additional sheets if necessary)

DC6-232 (Revised 9-99)

.ORIDA DEPARTMENT OF CORRECT S
OFFICE OF HEALTH SERVICES

# RISK ASSESSMENT FOR THE USE OF CHEMICAL RESTRAINT AGENTS AND ELECTRONIC IMMOBILIZATION DEVICES

**DC4-650B** ***Risk Assessment for the Use of Chemical Restraint Agents and Electronic Immobilization Devices*** **must be completed when a preconfinement health assessment is conducted in conjunction with DC4-769** ***Pre-Special Housing Health Assessment.*** DC4-650B will be reviewed at the time of all practitioner health care encounters. If any changes in an inmate's medical condition are identified (e.g., new diagnosis) that would affect the use of chemical restraint agents or electronic immobilization devices, a new DC4-650B must be completed and provided to security staff, replacing the previous DC4-650B. The results of this assessment should not be interpreted as approval or disapproval of the intended use of such agents/devices but rather an assessment of any risk factors.

**Chemical Restraint Agents Assessment:**

- [x] At the time of this preconfinement health assessment, based on a review of the medical record, this inmate has no known medical conditions* that would be exacerbated by the use of chemical restraint agents.

- [ ] At the time of this preconfinement health assessment, based on a review of the medical record, this inmate **has** been identified as having a medical condition* that may be exacerbated by the use of chemical restraint agents.

*Condition that may be exacerbated by the use of chemical agents include, but are not limited to, the following: asthma, chronic obstructive pulmonary disease, emphysema, congestive heart failure, angina, pregnancy, and **unstable** hypertension. (Inmate is considered stable if B/P has been < 160/110 at last CC visit.)

**FSP AND UCI ONLY: Mental Health Alert Re: Chemical Restraint Agents Assessment**

- [ ] At the time of this preconfinement assessment, based on a review of the mental health record, this inmate was discharged on the date of __________ from an inpatient mental health treatment unit (CSU, TCU, or CMHI), within the ninety day period immediately prior to this placement in close management at Florida State Prison or Union Correctional Institution, indicating the need for the use of Crisis Intervention Team intervention techniques by the appropriate security staff prior to application of chemical agents, for the first ninety days following the above-references discharge date.

- [ ] The inmate was referred by mental health staff to inpatient care (CSU, TCU, or CMHI) on the date of __________ while in close management at Florida State Prison or Union Correctional Institution, indicating the need for the use of Crisis Intervention Team intervention techniques by the appropriate security staff while the inmate is housed in an outpatient setting and is awaiting transport to the inpatient unit as a result of such referral.

**Electronic Immobilization Device Assessment:**

- [x] At the time of this preconfinement health assessment, based on a review of the medical record, this inmate has no known medical condition* that may be exacerbated by the use of electronic immobilization devices.

- [ ] At the time of this preconfinement health assessment, based on a review of the medical record, this inmate **has** been identified as having a medical condition* that may be exacerbated by the use of electronic immobilization devices.

*Condition that may be exacerbated by the use of electronic immobilization devices include, but are not limited to, the following: seizure disorder, multiple sclerosis, muscular dystrophy, pacemaker, and pregnancy.

A Torino, LPN — A. TORINO SLPN SARCI
Staff Signature/Stamp (Person Completing Form)

5/11/11
Date

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

Inmate Name: Smith, Warren
DC#: 120346 Race/Sex: ______
Date of Birth: [redacted]
Institution: SARCI

Distribution: Original—medical record—file under DC4-730 *Problem List*
White copy—to be maintained with DC6-229 in the housing unit

**This form is not to be amended, revised, or altered without approval by the Office of Health Services - Administration**

**DC4-650B (Revised 8/4/08)** **Incorporated by Reference in Rule 33-602.210, F.A.C.**

Exh. D 013

FLORIDA DEPARTMENT OF CORRECTIONS

# EMERGENCY ROOM RECORD

**Check all that apply:** ☐ **Inmate** ☑ **Employee** ☐ **Visitor**
☑ **Post-Use-of-Force Exam** ☐ **Injury** ☐ **Physical Altercation**

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: 1150 Time of exam: 1244

Description of occurrence: use of Force c̄ chemical agent

Inmate showered without soap (if post-use of chemical agent)? ☐ Yes ☐ Refused ☑ N/A

Vital Signs: Temperature 97.9 Pulse 68 Respiration 16 Blood Pressure 118 / 72

Arrived via: ☑ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other:

Condition on arrival (check all that apply): ☑ Alert ☑ Oriented x 4 (person, place, time, situation) ☑ Responding to questions verbally
☐ Other (requires description in examinations summary)
☐ C/O pain? If checked, where?

Examination summary: No respiratory distress noted. Lung sounds clear. Skin intact. No injuries noted. No c/o injuries voiced.

Physician notified? ☑ No ☐ Yes Name: Time:

Treatment provided? ☑ No ☐ Yes If yes, describe:

Response to Treatment: tolerated exam

Disposition: ☐ Population ☐ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☑ Other (explain): return to post

Discharge Instructions and Education: F/U c̄ Personnell PRN

Health Care Provider's Signature and Stamp: [signature] SLPN J. EYKYN, SLPN SANTA ROSA CI Date/Time: 8/16/11

Reviewing Physician's Signature and Stamp: Date/Time:

**Name** Lt. Walter Gielow
**DC#** employee **Race/Sex** W/M
**Date of Birth** [redacted]
**Institution** SARCI

**Inmate Distribution:** White—Health Record; Canary—Inspector General; Pink—Local Requirements

**Employee Distribution:** White—Safety Officer/Designee; Canary—Employee Copy; Pink—DESTROY

DC4-701C (Effective 3/22/11)

Incorporated by Reference in Rule 33-602.210, F.A.C.

Exh. D 014

FL[illegible]DA DEPARTMENT OF C[illegible]RRE[illegible]ONS
OFFICE OF HEALTH SERVICES
DIAGRAM OF INJURY

Date of occurrence 8/16/11 Time of occurrence 1150

☑ No injury identified

Description of injury no injury noted. no c/o injury voiced

J. EYKYN, SLPN
SANTA ROSA CI

Staff Signature

Inmate Name Lt. Walter Gielow
DC# employee Race/Sex W/M
Date of Birth [redacted]
Institution SRCI

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary of Health Services Administration

Exh. D 015

FLORIDA DEPARTMENT OF CORRECTIONS

# EMERGENCY ROOM RECORD

**Check all that apply:** ☐ Inmate ☑ Employee ☐ Visitor
☑ Post-Use-of-Force Exam ☐ Injury ☐ Physical Altercation

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: 1150 Time of exam: 1230

Description of occurrence:

Restrained inmates legs & applied restraint
S/P Physical Use of Force

Inmate showered without soap (if post-use of chemical agent)? ☐ Yes ☐ Refused ☒ N/A

Vital Signs: Temperature 984 Pulse 84 Respiration 20 Blood Pressure 128/82

Arrived via: ☒ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other:

Condition on arrival (check all that apply): ☒ Alert ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☐ C/O pain? If checked, where?

Examination summary: No C/O Injury but C/O soreness in (L) Shoulder. No deformity noted. no respiratory distress.

Physician notified? ☒ No ☐ Yes Name: Time:

Treatment provided? ☒ No ☐ Yes If yes, describe:

Response to Treatment: N/A

Disposition: ☐ Population ☐ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☒ Other (explain): Personnel

Discharge Instructions and Education: No Soaps or lotions x24° to any affected areas. Seek medical if needed

Health Care Provider's Signature and Stamp: [signature] Date/Time: 8/16/11

Reviewing Physician's Signature and Stamp: Date/Time:

| | | | |
|---|---|---|---|
| **Name** | Hetherington, F. C/O | **Inmate Distribution:** | White—Health Record<br>Canary—Inspector General<br>Pink—Local Requirements |
| ~~**DC#**~~ | Emp. Race/Sex (W)/M | | |
| **Date of Birth** | [redacted] | | |
| **Institution** | JACI | **Employee Distribution:** | White—Safety Officer/Designee<br>Canary—Employee Copy<br>Pink—DESTROY |

DC4-701C (Effective 3/22/11)

Incorporated by Reference in Rule 33-602.210, F.A.C.

Exh. D 016

FL 'DA DEPARTMENT OF C RRE 'ONS
OFFICE OF HEALTH SERVICES
# DIAGRAM OF INJURY

Date of occurrence 8/16/11 Time of occurrence 1150

☒ No injury identified

Description of injury Ø

D. Von Oven SLPN
D.Von Oven SLPN
SARCI

Staff Signature

Inmate Name Hetherington, F 40
~~DC#~~ Emp. Race/Sex W/M
Date of Birth [redacted]
Institution SARCI

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 3/06)

Exh. D 017

Exh. D 018

# FLORIDA DEPARTMENT OF CORRECTIONS
## EMERGENCY ROOM RECORD

**Check all that apply:**  ☒ Inmate  ☐ Visitor  ☐ Employee  ☐ Injury  ☑ Post-Use-of-Force Exam  ☐ Physical Alteration

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DCA-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Description of occurrence:
Time of occurrence: _____
Time of exam: _1232_

Held Immate Neck while applying
S/p Physical Use of Force

| | | | |
|---|---|---|---|
| Inmate showered without soap (if post-use of chemical agent)? | ☐ Yes | ☐ Refused | ☒ N/A |
| Vital Signs: | Temperature: 97.4 | Pulse 80 | Respiration 18 | Blood Pressure 132 / 88 |

Arrived via: ☒ Ambulatory  ☐ Stretcher  ☐ Wheelchair  ☐ Other: _____

Condition on arrival (check all that apply): ☒ Alert  ☒ Oriented x 4 (person, place, time, situation)  ☒ Responding to questions verbally
☐ C/O pain?  If checked, where? _____
☐ Other (requires description in examination summary)

Examination Summary: No signs of Injury or None Noted

Physician notified?  ☒ No  ☐ Yes     Name: _____     Time: _____

Treatment provided?  ☒ No  ☐ Yes     If yes, describe: _____

Response to Treatment: N/A

Disposition: ☐ Population  ☐ Confinement  ☐ Infirmary  ☐ Hospital  ☐ Rescue  ☒ Other (explain): ___Prison___

Discharge Instructions and Education: _____

Health Care Provider's Signature and Stamp: _(signature)_   Date/Time: 8/16/11

Reviewing Physician's Signature and Stamp: _____   Date/Time: _____

| | |
|---|---|
| Name  Delopp, M. Lt | |
| DC#  _____ | Inmate Distribution: White—Health Record |
| Date of Birth  _____ | Canary—Inspector General |
| Institution  SANTA | Pink—Local Requirements |
| | Employee Distribution: White—Safety Officer/Designee |
| | Canary—Employee Copy |
| | Pink—DESTROY |

DC4-701C (Effective 3/22/11)

Incorporated by Reference in Rule 33-602.210, F.A.C.

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
# DIAGRAM OF INJURY

Date of occurrence 8/16/11 Time of occurrence 1150

☑ No injury identified

Description of injury Ø

Dom Oven SLPN
D. Von Oven SLPN SARCI
Staff Signature

Inmate Name Delapp, M. Lt.
DC# Emp. Race/Sex W/M
Date of Birth [redacted]
Institution JAN[redacted]

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 3/06)

FLORIDA DEPARTMENT OF CORRECTIONS

# EMERGENCY ROOM RECORD

**Check all that apply:** ☐ **Inmate** ☑ **Employee** ☐ **Visitor**
☑ **Post-Use-of-Force Exam** ☐ **Injury** ☐ **Physical Altercation**

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: 1150 Time of exam: 1222

Description of occurrence:

Restrained inmates (L) arm

S/P Physical Use of Force

Inmate showered without soap (if post use of chemical agent)? ☐ Yes ☐ Refused ☒ N/A

Vital Signs: Temperature 98.4 Pulse 114 Respiration 20 Blood Pressure 138/94

Arrived via: ☒ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other:

Condition on arrival (check all that apply): ☒ Alert ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☐ C/O pain? If checked, where?

Examination summary: Ambulated to medical s̄ assist. Ø respiratory Distress. C/O dizziness & pain in Chest. Skin Intact.

Physician notified? ☒ No ☐ Yes Name: Time:

Treatment provided? ☐ No ☒ Yes If yes, describe: VS + Exam

Response to Treatment: OK

Disposition: ☐ Population ☐ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☒ Other (explain): Personnel

Discharge Instructions and Education: Advised to seek further medical attention if symptoms continue

Health Care Provider's Signature and Stamp: [signature] SLP Date/Time: 8/16/11 1222

Reviewing Physician's Signature and Stamp: Date/Time:

**Name** DeLavega, M C/O
**DC#** Emp [redacted] Race/Sex W/M
**Date of Birth**
**Institution** S

**Inmate Distribution:** White—Health Record; Canary—Inspector General; Pink—Local Requirements

**Employee Distribution:** White—Safety Officer/Designee; Canary—Employee Copy; Pink—DESTROY

DC4-701C (Effective 3/22/11)

Incorporated by Reference in Rule 33-602.210, F.A.C.

FL DA DEPARTMENT OF C RRE ONS
OFFICE OF HEALTH SERVICES
DIAGRAM OF INJURY

Date of occurrence 8/16/11 Time of occurrence 1150

☑ No injury identified

Description of injury Ø

Dvm Vonoven SLPN D.Von Oven SLPN SARCI
Staff Signature

Inmate Name Delavega, M 40
DC# Emp. Race/Sex w/m
Date of Birth [redacted]
Institution SARCI

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 3/06)

FLORIDA DEPARTMENT OF CORRECTIONS

# EMERGENCY ROOM RECORD

**Check all that apply:** ☐ **Inmate** ☑ **Employee** ☐ **Visitor**
☑ **Post-Use-of-Force Exam** ☐ **Injury** ☐ **Physical Altercation**

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: ______ Time of exam: 1220

Description of occurrence:

Chemical Agent applied

S/P Chemical Use of Force

Inmate showered without soap (if post-use of chemical agent)? ☐ Yes ☐ Refused ☒ N/A

Vital Signs: Temperature 98.2 Pulse 76 Respiration 18 Blood Pressure 126 / 76

Arrived via: ☒ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other: ______

Condition on arrival (check all that apply): ☒ Alert ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☐ C/O pain? If checked, where? ______

Examination summary: No C/o Injury + None Noted. Ø respiratory Distress

Physician notified? ☒ No ☐ Yes Name: ______ Time: ______

Treatment provided? ☒ No ☐ Yes If yes, describe: ______

Response to Treatment: N/A

Disposition: ☐ Population ☐ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☒ Other (explain): Personnel

Discharge Instructions and Education: No Soaps or lotions x 24°

Health Care Provider's Signature and Stamp: [signature] D. Von Ohlen SLPN SARCI Date/Time: 8/16/11 1220

Reviewing Physician's Signature and Stamp: ______ Date/Time: ______

**Name** Larson, Daniel Sgt.
**DC#** Emp. [redacted] /M
**Date of Birth** [redacted]
**Institution** SARCI

**Inmate Distribution:** White—Health Record; Canary—Inspector General; Pink—Local Requirements

**Employee Distribution:** White—Safety Officer/Designee; Canary—Employee Copy; Pink—DESTROY

DC4-701C (Effective 3/22/11)

Incorporated by Reference in Rule 33-602.210, F.A.C.

Exh. D 022

FL 'DA DEPARTMENT OF C RRE 'ONS
OFFICE OF HEALTH SERVICES
DIAGRAM OF INJURY

Date of occurrence 8/16/11 Time of occurrence 11 50

☒ No injury identified

Description of injury Ø

Dum Ohen SPN Von Oven SLPN SARCI
Staff Signature

Inmate Name Larson, Daniel
~~DC#~~ Emp. [redacted]ce/Sex B/M
Date of Birth
Institution JA[redacted]

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 3/06)

FLORIDA DEPARTMENT OF CORRECTIONS

# EMERGENCY ROOM RECORD

**Check all that apply:** ☑ **Inmate** ☐ **Employee** ☐ **Visitor**
☑ **Post-Use-of-Force Exam** ☐ **Injury** ☐ **Physical Altercation**

All inmates must be examined by medical personnel following a use of force. This includes a visual inspection of the entire body to identify any sign of injury. This exam shall be performed in the medical unit except under unusual circumstance. Injuries shall be documented on the DC4-708, *Diagram of Injury*. If a physician/CA is not present at the time of the exam, a physician/CA **must** review this form and sign it on the next working day.

Time of occurrence: 1150 Time of exam: 1216

Description of occurrence:

Chemical Agent applied

S/P Physical UOF

S/P Chemical Use of Force.

Inmate showered without soap (if post-use of chemical agent)? ☒ Yes ☐ Refused ☒ N/A wt. 175

Vital Signs: Temperature 984 Pulse 120 Respiration 18 Blood Pressure 126/84

5-1

Arrived via: ☒ Ambulatory ☐ Stretcher ☐ Wheelchair ☐ Other:

Condition on arrival (check all that apply): ☒ Alert ☒ Oriented x 4 (person, place, time, situation) ☒ Responding to questions verbally
☐ Other (requires description in examinations summary)
☐ C/O pain? If checked, where?

Examination summary:
Ambulated to medical s̄ assist. Ø respiratory Distress Lungs Clear x4. Skin clear. C/o Injury to R Elbow, wrist & ankle. no injury noted. Ø Swelling, deformity & Skin Intact.

Physician notified? ☒ No ☐ Yes Name: Time:

Treatment provided? ☐ No ☒ Yes If yes, describe: Eyewash OU

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

Response to Treatment:
OK

Disposition: ☐ Population ☐ Confinement ☐ Infirmary ☐ Hospital ☐ Rescue ☐ Other (explain):
CM

Discharge Instructions and Education:
No Soaps or Lotions x 24° - F/u via S/C if needed

Health Care Provider's Signature and Stamp: [signature] SLPN D.Von Oven SLPN SARCI Date/Time 8/16/11 1216

Reviewing Physician's Signature and Stamp: [signature] Date/Time: 8/16/11 1140

**Name** Smith, Warren
**DC#** T20346 Race/Sex B/M
**Date of Birth** [redacted]
**Institution** SARCI

**Inmate Distribution:** White—Health Record; Canary—Inspector General; Pink—Local Requirements

**Employee Distribution:** White—Safety Officer/Designee; Canary—Employee Copy; Pink—DESTROY

**DC4-701C (Effective 3/22/11)**

Incorporated by Reference in Rule 33-602.210, F.A.C.

Exh. D 024

FL DA DEPARTMENT OF C RRE ONS
OFFICE OF HEALTH SERVICES
DIAGRAM OF INJURY

Date of occurrence 8/16/11 Time of occurrence 1150

☑ No injury identified

Description of injury Ø

Staff Signature D Von Oven SLPN (D Von Oven SLPN, SARCI)

Inmate Name Smith, Warren
DC# T20346 Race/Sex B/M
Date of Birth [redacted]
Institution SARCI

CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW

This form is not to be amended, revised, or altered without approval of the Deputy Assistant Secretary of Health Services Administration

DC4-708 (Revised 3/06)

FLORIDA DEPARTMENT OF CORRECTIONS

INCIDENT REPORT

| | | | |
|---|---|---|---|
| **Reporting Institution:** | Santa Rosa Correctional Institution | **Incident Report Number:** | |
| **Reporting Employee:** | Sergeant Daniel Larson | **PREA Number:** | |
| **Employee ID Number:** | 26878 | **Date of incident:** | August 16, 2011 |
| **Person(s) Involved:** | Inmate Smith, Warren DC# T20346 | **Time of incident:** | Approximately 11:20am |
| | | **Witness(es):** | |

| | | | |
|---|---|---|---|
| Control Room Log Entry Made: | ☒ Yes ☐ No | Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Inmate Placed in Confinement: | ☐ Yes ☒ No | Work Order Initiated: | ☐ Yes ☒ No |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 11:30am | MINS Initiated: | ☒ Yes ☐ No |
| EAC Notified: | ☒ Yes ☐ No Time: 1:31pm | Duty Officer Name: | Miller 2011-08-10317 |
| Supporting Documents Attached | Yes | | |

**DETAILS OF INCIDENT:** On August 16, 2011, I was assigned to Santa Rosa Main Unit as the F-Dormitory Housing Sergeant. At approximately 11:19am, I heard yelling and kicking coming from wing one of F-Dormitory. I entered wing one of F-Dormitory, and observed Inmate Smith, Warren DC# T20346, who is housed alone in F1221L, yelling obscenities into the wing and kicking on his cell door. I attempted to counsel with Inmate Smith and issued him several verbal orders to cease his disruptive behavior. Inmate Smith refused to comply with my orders and continued to yell obscenities into the wing and kick the cell door, creating a disturbance in the housing unit. At approximately 11:21am, I notified Second Shift Assistant Supervisor Lieutenant Walter Gielow and advised him of the disturbance Inmate Smith was creating in the dormitory. At approximately 11:23am, Lieutenant Gielow and I entered wing one and Lieutenant Gielow and I attempted to counsel with Inmate Smith but were met with negative results. Lieutenant Gielow issued Inmate Smith several verbal orders to cease his disruptive behavior, but Inmate Smith refused to comply with all orders issued to him. At approximately 11:24am, Lieutenant Gielow reviewed Inmate Smith's DC4-650B (Chemical Agent Risk Assessment form) and it stated that at the time of his pre-confinement health appraisal, based on a review of the medical record, this inmate has no known medical conditions that would be exacerbated by the use of chemical restraint agents. At approximately 11:25am, medical was contacted and Senior Registered Nurse Sherry Derrick advised that this inmate has no known medical conditions that would be exacerbated by the use of chemical restraint agents. At approximately 11:30am, Duty Warden, Colonel James Peters was contacted and advised of the situation and he authorized the use of chemical agent OC if necessary to quell the disturbance Inmate Smith was creating. At approximately 11:33am, Officer Andrew Kauffman retrieved B-dormitory's digital video recorder. At approximately 11:34am, Officer Kauffman began video recording procedures. (Continued)

Daniel Larson — [signature] — August 16, 2011
**Reporting Employee's Name (Print)** — **Reporting Employee's Signature** — **Date**

**Shift Supervisor**
**COMMENT:** This use of force was necessary to quell the disturbance that Inmate Smith was creating. Every reasonable effort to counsel with Inmate Smith was exhausted prior to the application of chemical agents. Only the minimum amount of force was used to quell the disturbance. Proper chemical agent use of force procedures were followed. No injuries were noted on Inmate Smith as a result of this use of force. Inmate Smith was not issued a mattress, linens, or retain his personal property due to him attempting to use his state issued blanket in attempts to hang himself. At approximately 1:31pm, the Emergency Action Center, Duty Officer Jackson was notified and issued reference number 2011-08-10317. Inmate Smith received a disciplinary report for 2-3, creating a minor disturbance.

Lieutenant Walter Gielow — W Gielow — August 16, 2011
**Shift Supervisor's/ Department Head's Name (Print)** — **Shift Supervisor's Signature** — **Date**

**REVIEW:** Complete Mins report 27E. This use of force appears to be in compliance with FAC 33-602.210. Complete an additional Mins 10H for allegations by inmate on video.

Major John F. Kolodziej — [signature] — August 17, 2011
**Correctional Officer Chief's Name (Print)** — **Correctional Officer Chief's Signature** — **Date**

**REVIEW:** Mins. This use of force appears to comply with FAC 33-602.210. An additional Mins submitted due to allegations by inmate on video.

27E 400738 15A 400741 10H 401682

R. P. Tifft — [signature] — 8/17/11
**Warden's Name (Print)** — **Warden's Signature** — **Date**

**DETAILS OF INCIDENT (cont'd):** At approximately 11:34am, Lieutenant Gielow gave a brief opening statement regarding the housing unit staff present and a description of our attempts to resolve the situation prior to the supervisor's arrival and a statement of his intent to resolve the disturbance by counseling with Inmate Smith. Lieutenant Gielow further stated his intent was to only utilize chemical agents if necessary to quell the disturbance Inmate Smith was creating after all reasonable non-force intervention efforts have failed. At approximately 11:35am, Lieutenant Gielow and I entered wing one and approached cell F1221. At approximately 11:35am, Lieutenant Gielow ordered Inmate Smith to cease his disruptive behavior. Lieutenant Gielow then advised Inmate Smith that this was his final order and that if he did not cease his disruptive behavior chemical agents would be administered. Lieutenant Gielow further advised Inmate Smith that if he did cease his disruptive behavior, this warning would not be repeated prior to the application of chemical agents should he become disruptive after Lieutenant Gielow and the camera operator left the wing. At approximately 11:36am, Inmate Smith declared a psychological emergency and then stated that he was going to kill himself and began tying a makeshift noose around his neck with a torn piece of his state issued blanket and then tied the other end of the makeshift noose to his upper cell bunk and attempted to hang himself. At approximately 11:36am, Lieutenant Gielow ordered Inmate Smith several verbal orders to cease his actions of self harm, but was met with negative results, as Inmate Smith continued trying to hang himself with the makeshift noose. At approximately 11:36am, I administered one, one second bursts of chemical agent Oleoresin Capsicum from my assigned MK-4 C#734, Defense Technology Oleoresin Capsicum, canister number 734, serial number 020578 at Inmate Smith through the opened handcuffing portal of cell F1221, my assigned MK-4 malfunctioned during the application of chemical agents totaling (28grams). At approximately 11:37am, I retrieved an MK-4 Chemical Agent, canister# 780, serial# 023591 which was assigned to F-dormitory Programs Officer Fredrick Hetherington. At approximately 11:37am, Lieutenant Gielow again ordered Inmate Smith to cease his actions of self harm, but was again met with negative results as Inmate Smith continued to try and hang himself with the makeshift noose. At approximately 11:38am, I returned to cell front F1221 and administered three one-second bursts of Chemical agent (OC), from an MK4 canister# 780, serial# 023591 at Inmate Smith through the opened handcuffing portal of cell F1221 totaling ( 87grams). At approximately 11:38am, Inmate Smith was ordered to come to the door, to be escorted for a cold water decontamination shower. At approximately 11:38am, Lieutenant Gielow issued Inmate Smith several verbal orders to submit to come to the door, but was met with negative results as Inmate Smith made a makeshift curtain using his state issued blanket and became unresponsive to Lieutenant Gielow's orders. At approximately 11:39am, Lieutenant Gielow summoned for the assistance of more staff members into wing one of F-dormitory. At approximately 11:39am, Lieutenant Gielow made a brief statement on camera regarding that Inmate Smith was lying on the lower cell bunk unresponsive behind the makeshift curtain. At approximately 11:40am, F-dormitory Officer Hetherington and Officer Mark De Lavega arrived at cell front F1221 with the non-electric concave plexiglass shield. At approximately 11:40am, Lieutenant Gielow again ordered Inmate Smith to come to the door, but was again met with negative results as Inmate Smith continued to be unresponsive behind his makeshift curtain. At approximately 11:40am, Officer De Lavega, Officer Hetherington, Lieutenant Gielow, and I lined up at the cell door F1221 in preparation to enter the cell for a life safety check of Inmate Smith. Lieutenant Gielow remained outside the cell door to supervise. At approximately 11:40am, the cell door of cell F1221was breached and Officer De Lavega, Officer Hetherington, and I entered the cell. Officer De Lavega used the non electric concaved Plexiglas shield in an attempt to protect staff, and also attempt to pin Inmate Smith to the cell bunk. Inmate Smith became combative by attempting to kick and grabbed the Plexiglas shield holding it to prevent the officers from untying the noose around his neck. Sergeant Larson attempted to deliver a knee spike to Inmate Smith to free the non electric concave plexiglass shield. Sergeant Larson struck the plexiglass shield with his knee freeing it, Lieutenant Gielow then retrieved it from the cell floor. Inmate Smith began to resist against staff while I and Officer Hetherington were attempting to untie the makeshift noose from Inmate Smith's neck and the upper cell bunk. Inmate Smith continued to resist against Officer Hetherington, Officer De Lavega, and me, as I attempted to apply the wrist restraints and Officer Hetherington attempted to apply the leg restraints to Inmate Smith. At approximately 11:41am, Lieutenant Gielow began to assist staff by trying to remove the makeshift noose from Inmate Smith's neck and the upper cell bunk, but was also unsuccessful as Inmate Smith continued to resist against staff. At approximately 11:41am, Lieutenant Gielow summoned for more assistance into wing one. At approximately 11:42am, Lieutenant Michael DeLapp arrived and entered cell F1221 to assist with removing the noose and applying restraints to Inmate Smith as he continued to resist against staff. Lieutenant DeLapp applied a downward pressure on Inmate Smith's upper body area securing his movement, preventing him from resisting against staff. At approximately 11:43am, I grasped Inmate Smith's right arm and placed it behind his back and Officer De Lavega grasped Inmate Smith's left arm and placed it behind his back and I applied wrist restraints to Inmate Smith. At approximately 11:44am, Officer Hetherington applied leg restraints to Inmate Smith. At approximately 11:45am, Inmate Smith was escorted out of cell F1221 Lieutenant De Lapp and Officer De Lavega to cool water shower cell F2125. During the escort Inmate Smith became disorderly by yelling at staff, he was counseled with by Lieutenant Gielow and ordered to cease his behavior. At approximately 11:47am, Lieutenant Gielow notified the Duty Warden, Colonel James Peters and advised him of the situation with Inmate Smith. Duty Warden Peters again authorized the use of chemical agent (OC) to quell the disturbance Inmate Smith was creating in the dormitory. At approximately 11:48am, Lieutenant DeLapp utilized the F-dormitory ligature cutter to remove the makeshift noose from around Inmate Smith's neck. At approximately 11:48am, I removed the leg restraints from Inmate Smith and he was secured in cold water decontamination shower F2125. At approximately 11:48am, I removed the wrist restraints and Inmate Smith received a cool water shower. At approximately 11:49am, Inmate Smith began creating a disturbance by yelling into the wing. At approximately 11:49pm, Lieutenant Gielow issued Inmate Smith a final verbal order to cease yelling into the wing disrupting the normal operations of the dormitory. Lieutenant Gielow then advised Inmate Smith that this was his final order and that if he did not cease his disruptive behavior chemical agents would be administered. Lieutenant Gielow further advised Inmate Smith that if he did cease his disruptive behavior, this warning would not be repeated prior to the application of chemical agents. At approximately 11:49am, Inmate Smith made several threats to kill himself and stated that he was in fear for his life. At approximately 11:50am, Inmate Smith continued his disruptive behavior of yelling into the wing disrupting the normal operations of the dormitory. At approximately 11:50am, Inmate Smith declared a psychological emergency. At approximately 11:51am, Lieutenant Gielow notified Behavioral Specialist Jeffrey Arney and advised him of the situation with Inmate Smith. Inmate Smith continued to cause a disturbance in the housing unit by yelling into the wing as he decontaminated in cold water shower cell F2125. At approximately 11:53am, Lieutenant Gielow again counseled with Inmate Smith regarding his disruptive behavior again warning him that if he did not cease chemical agents would be administered. Inmate Smith continued yelling into the wing disrupting the normal operations in the housing unit as he decontaminated in cold water shower cell F2125. At approximately 11:54am, Lieutenant De Lapp again counseled with Inmate Smith regarding his disruptive behavior of yelling into the wing. At approximately 11:59am, Inmate Smith was issued clean boxers. At approximately 12:00pm, Behavioral Specialist Jeffrey Arney arrived at shower cell F2125 and interviewed Inmate Smith regarding his psychological emergency. At approximately 12:02pm, Inmate Smith was returned to security. At approximately 12:02pm, Inmate Smith continued creating a disturbance by yelling into the wing. At approximately 12:02pm, Lieutenant Gielow withdrew and weighed a Def Tech MK-9 HVF chemical agent OC, canister number #814, serial number #07522 from the F-Dormitory secure storage area. At approximately 12:03pm, Lieutenant Gielow, Lieutenant De Lapp and I entered wing two. (Continued)

**DETAILS OF INCIDENT (cont'd):** approximately 12:03pm, Lieutenant Gielow administered three one-second bursts of chemical agent OC from a Def Tech MK-9 HVF canister number OC #814, serial number #07522, at Inmate Smith through the shower cell door of shower cell F2125 (totaling 158 grams). At approximately 12:04pm, Inmate Smith complied with orders and ceased his disruptive behavior. At approximately 12:08pm, Lieutenant Gielow ordered Inmate Smith to take a cool water decontamination shower and he complied. At approximately 12:08pm, Inmate Smith received a cool water decontamination shower. At approximately 12:20pm, Inmate Smith was issued a shroud due to his previous acts of self harm. At approximately 12:22pm, I applied wrist restraints and leg restraints to Inmate Smith. At approximately 12:22pm, Lieutenant De Lapp and I escorted Inmate Smith to the F dormitory medical triage room. At approximately 12:24pm, Senior Licensed Practical Nurse Doreen Von Oven conducted a post use of force medical examination. Nurse Von Oven completed a DC4-701C: Emergency Room Record and a DC4-708: Diagram of Injury with no injuries noted. At approximately 12:29pm, Lieutenant DeLapp and I escorted Inmate Smith to his decontaminated cell F1221. At approximately 12:31pm, I removed the leg restraints and wrist restraints from Inmate Smith and he was secured in his assigned decontaminated cell F1221. Inmate Smith was not issued a mattress, linens or personal property due to his previous acts of self harm with his state issued blanket. At approximately 12:32pm, Lieutenant Gielow gave a brief closing statement and video recording ceased. Officer Kauffman monitored Inmate Smith for approximately sixty minutes for signs of respiratory distress with none noted. Lieutenant Gielow, Lieutenant DeLapp, Officer Hetherington, Officer De Lavega and I received a post use of force medical examination by Nurse Von Oven and she completed a DC4-701C: Emergency Room Record and a DC4-708: Diagram of Injury forms for each of us with no injuries noted. This incident was notated on Inmate Smith's DC6-229: Daily Record of Special Housing. Officer Kauffman monitored Inmate Smith for approximately sixty minutes for signs of respiratory distress with none noted. At approximately 1:31pm, Lieutenant Gielow contacted the Emergency Action Center, Duty Officer Kristina Miller who issued use of force reference number 2011-08-10317 for this incident. Officer Kauffman completed a DC1-801: Chain of Custody form for the digital video disc, and the required documentation was placed in the locked box in the security hallway. Inmate Smith received a disciplinary report for 2-3: Creating a Minor Disturbance. I am certified in the use of chemical agents and my certification expires September 2011. Lieutenant Gielow is certified in the use of chemical agents and his certification expires August of 2012.

**REVIEW (cont'd):**

**REVIEW (cont'd):**

Supporting Documents Attached

FLORIDA DEPARTMENT OF COR ECTIONS

INCIDENT REPORT

**Reporting Institution:** Santa Rosa Correctional Institution
**Incident Report Number:**

**Reporting Employee:** Lieutenant Walter Gielow
**PREA Number:**

**Employee ID Number:** 7650
**Date of incident:** August 16, 2011

**Person(s) Involved:** Inmate Smith, Warren DC# T20346
**Time of incident:** Approximately 11:20am

**Witness(es):**

Control Room Log Entry Made: ☒ Yes ☐ No
Inmate Placed in Confinement: ☐ Yes ☒ No
Duty Warden Notified: ☒ Yes ☐ No Time: 11:30am
EAC Notified: ☒ Yes ☐ No Time: 1:31pm
Supporting Documents Attached Yes

Disciplinary Report Initiated: ☒ Yes ☐ No
Work Order Initiated: ☐ Yes ☒ No
MINS Initiated: ☒ Yes ☐ No
Duty Officer Name: Miller 2011-08-10317

**DETAILS OF INCIDENT**: On August 16, 2011, I was assigned to Santa Rosa Main Unit as the Second Shift Assistant Supervisor. At approximately 11:19am, Sergeant Larson heard yelling and kicking coming from wing one of F-Dormitory. He entered wing one of F-Dormitory, and observed Inmate Smith, Warren DC# T20346, who is housed alone in F1221L, yelling obscenities into the wing and kicking on his cell door. He attempted to counsel with Inmate Smith and issued him several verbal orders to cease his disruptive behavior. Inmate Smith refused to comply with his orders and continued to yell obscenities into the wing and kick the cell door, creating a disturbance in the housing unit. At approximately 11:21am, Sergeant Larson notified me of the disturbance Inmate Smith was creating in the dormitory. At approximately 11:23am, Sergeant Larson and I entered wing one and I attempted to counsel with Inmate Smith but was met with negative results. I issued Inmate Smith several verbal orders to cease his disruptive behavior, but Inmate Smith refused to comply with all orders issued to him. At approximately 11:24am, I reviewed Inmate Smith's DC4-650B and it stated that at the time of his pre-confinement health appraisal, based on a review of the medical record, this inmate has no known medical conditions that would be exacerbated by the use of chemical restraint agents. At approximately 11:25am, medical was contacted and Senior Registered Nurse Sherry Derrick advised that this inmate has no known medical conditions that would be exacerbated by the use of chemical restraint agents. At approximately 11:30am, Duty Warden, Colonel James Peters was contacted and advised of the situation and he authorized the use of chemical agent OC if necessary to quell the disturbance Inmate Smith was creating. At approximately 11:33am, Officer Andrew Kauffman retrieved B-dormitory's digital video recorder. At approximately 11:34am, Officer Kauffman began video recording procedures. At approximately 11:34am, I gave a brief opening statement regarding the housing unit staff present and a description of our attempts to resolve the situation prior to the supervisor's arrival and a statement of his intent to resolve the disturbance by counseling with Inmate Smith. I further stated my intent was to only utilize chemical agents if necessary to quell the disturbance Inmate Smith was creating after all reasonable non-force intervention efforts have failed. At approximately 11:35am, Sergeant Larson and I entered wing one and approached cell F1221. At approximately 11:35am, I ordered Inmate Smith to cease his disruptive behavior. I then advised Inmate Smith that this was his final order and that if he did not cease his disruptive behavior chemical agents would be administered. I further advised Inmate Smith that if he did cease his disruptive behavior, this warning would not be repeated prior to the application of chemical agents should he become disruptive after I and the camera operator left the wing. At approximately 11:36am, Inmate Smith declared a psychological emergency and then stated that he was going to kill himself and began tying a makeshift noose around his neck with a torn piece of his state issued blanket and then tied the other end of the makeshift noose to his upper cell bunk and attempted to hang himself. At approximately 11:36am, I ordered Inmate Smith several verbal orders to cease his actions of self harm, but was met with negative results, as Inmate Smith continued trying to hang himself with the makeshift noose. At approximately 11:36am, Sergeant Larson administered one, one second bursts of chemical agent Oleoresin Capsicum from his assigned MK-4 C#734, Defense Technology Oleoresin Capsicum, canister number 734, serial number 020578 at Inmate Smith through the opened handcuffing portal of cell F1221, his assigned MK-4 malfunctioned during the application of chemical agents totaling (28 grams). (Continued)

Lieutenant Walter Gielow
**Reporting Employee's Name (Print)**

[signature]
**Reporting Employee's Signature**

August 16, 2011
**Date**

**Shift Supervisor**
**COMMENT:** Use of force Documentation. See Sergeant Daniel Larson's Use of Force report.

Lieutenant Walter Gielow
**Shift Supervisor's/ Department Head's Name (Print)**

[signature]
**Shift Supervisor's Signature**

August 16, 2011
**Date**

**REVIEW:** Mins.

Major John F. Kolodziej
**Correctional Officer Chief's Name (Print)**

[signature]
**Correctional Officer Chief's Signature**

August 17, 2011
**Date**

**REVIEW:** Mins.

R. P. Tifft
**Warden's Name (Print)**

[signature]
**Warden's Signature**

8/17/11
**Date**

**DETAILS OF INCIDENT (cont'd)**

At approximately 11:37am, Sergeant Larson retrieved an MK-4 Chemical Agent, canister# 780, serial# 023591 which was assigned to F-dormitory Programs Officer Fredrick Hetherington. At approximately 11:37am, I again ordered Inmate Smith to cease his actions of self harm, but was again met with negative results as Inmate Smith continued to try and hang himself with the makeshift noose. At approximately 11:38am, Sergeant Larson returned to cell front F1221 and administered three one-second bursts of Chemical agent (OC), from an MK4 canister# 780, serial# 023591 at Inmate Smith through the opened handcuffing portal of cell F1221 totaling ( 87 grams). At approximately 11:38am, Inmate Smith was ordered to submit to wrist restraints to be escorted for a cold water decontamination shower. At approximately 11:38am, I issued Inmate Smith several verbal orders to come to the door, but was met with negative results as Inmate Smith made a makeshift curtain using his state issued blanket and became unresponsive to my orders. At approximately 11:39am, I summoned for the assistance of more staff members into wing one of F-dormitory. At approximately 11:39am, I made a brief statement on camera regarding that Inmate Smith was lying on the lower cell bunk unresponsive behind the makeshift curtain. At approximately 11:40am, F-dormitory Officer Hetherington and Officer Mark De Lavega arrived at cell front F1221 with the non-electric concave plexiglass shield. At approximately 11:40am, I again ordered Inmate Smith to come to the door, but was again met with negative results as Inmate Smith continued to be unresponsive behind his makeshift curtain. At approximately 11:40am, Officer De Lavega, Officer Hetherington, Sergeant Larson, and I lined up at the cell door F1221 in preparation to enter the cell for a life safety check of Inmate Smith. I remained outside the cell door to supervise. At approximately 11:40am, the cell door of cell F1221was breached and Officer De Lavega, Officer Hetherington, and Sergeant Larson entered the cell. Officer De Lavega used the non electric concaved plexiglass shield in an attempt to protect staff, and also attempt to pin Inmate Smith to the cell bunk. Inmate Smith became combative by attempting to kick and grabbed the plexiglass shield holding it to prevent the officers from untying the noose around his neck. Sergeant Larson attempted to deliver a knee spike to Inmate Smith to free the non electric concave plexiglass shield. Sergeant Larson struck the plexiglass shield with his knee freeing it, I then retrieved it from the cell floor. Inmate Smith began to resist against staff while Sergeant Larson and Officer Hetherington were attempting to untie the makeshift noose from Inmate Smith's neck and the upper cell bunk. Inmate Smith continued to resist against Officer Hetherington, Officer De Lavega, and Sergeant Larson, as Sergeant Larson attempted to apply the wrist restraints and Officer Hetherington attempted to apply the leg restraints to Inmate Smith. At approximately 11:41am, I began to assist staff by trying to remove the makeshift noose from Inmate Smith's neck and the upper cell bunk, but was also unsuccessful as Inmate Smith continued to resist against staff. At approximately 11:41am, I summoned for more assistance into wing one. At approximately 11:42am, Lieutenant Michael DeLapp arrived and entered cell F1221 to assist with removing the noose and applying restraints to Inmate Smith as he continued to resist against staff. Lieutenant DeLapp applied a downward pressure on Inmate Smith's upper body area securing his movement, preventing him from resisting against staff. At approximately 11:43am, Sergeant Larson grasped Inmate Smith's right arm and placed it behind his back and Officer De Lavega grasped Inmate Smith's left arm and placed it behind his back and Sergeant Larson applied wrist restraints to Inmate Smith. At approximately 11:44am, Officer Hetherington applied leg restraints to Inmate Smith. At approximately 11:45am, Inmate Smith was escorted out of cell F1221 by Lieutenant De Lapp and Officer De Lavega to cool water shower cell F2125. During the escort Inmate Smith became disorderly by yelling at staff, he was counseled with by me and ordered to cease his behavior. At approximately 11:47am, I notified Duty Warden Colonel James Peters and advised him of the situation with Inmate Smith, Colonel Peters again authorized the use of chemical agent (OC) to quell the disturbance Inmate Smith was creating in the dormitory. At approximately 11:48am, Lieutenant DeLapp utilized the F-dormitory ligature cutter to remove the makeshift noose from around Inmate Smith's neck. At approximately 11:48am, Sergeant Larson removed the leg restraints from Inmate Smith and he was secured in cold water decontamination shower F2125 and I removed the wrist restraints. At approximately 11:49am, Inmate Smith began creating a disturbance by yelling into the wing. At approximately 11:49pm, I issued Inmate Smith a final verbal order to cease yelling into the wing disrupting the normal operations of the dormitory. I then advised Inmate Smith that this was his final order and that if he did not cease his disruptive behavior chemical agents would be administered. I further advised Inmate Smith that if he did cease his disruptive behavior, this warning would not be repeated prior to the application of chemical agents. At approximately 11:49am, Inmate Smith made several threats to kill himself and stated that he was in fear for his life. At approximately 11:50am, Inmate Smith continued his disruptive behavior of yelling into the wing disrupting the normal operations of the dormitory. At approximately 11:50am, Inmate Smith declared a psychological emergency. At approximately 11:51am, I notified Behavioral Specialist Jeffrey Arney and advised him of the situation with Inmate Smith. Inmate Smith continued to cause a disturbance in the housing unit by yelling into the wing as he decontaminated in cold water shower cell F2125. At approximately 11:53am, I again counseled with Inmate Smith regarding his disruptive behavior again warning him that if he did not cease chemical agents would be administered. Inmate Smith continued yelling into the wing disrupting the normal operations in the housing unit as he decontaminated in cold water shower cell F2125. At approximately 11:54am, Lieutenant De Lapp again counseled with Inmate Smith regarding his disruptive behavior of yelling into the wing. At approximately 12:00pm, Behavioral Specialist Jeffrey Arney arrived at shower cell F2125 and interviewed Inmate Smith regarding his psychological emergency. At approximately 12:02pm, Inmate Smith was returned to security. At approximately 12:02pm, Inmate Smith continued creating a disturbance by yelling into the wing. At approximately 12:02pm, I withdrew and weighed a Def Tech MK-9 HVF chemical agent OC, Canister number #814, serial number #07522 from the F-Dormitory secure storage area. At approximately 12:03pm, Sergeant Larson, Lieutenant De Lapp and I entered wing two. At approximately 12:03pm, I administered three one-second bursts of chemical agent OC from a Def Tech MK-9 HVF canister number OC #814, serial number #07522, at Inmate Smith through the shower cell door of shower cell F2125 (totaling 158 grams). At approximately 12:04pm, Inmate Smith complied with orders and ceased his disruptive behavior. At approximately 12:06pm, Lieutenant DeLapp ordered Inmate Smith to take a cold water decontamination shower and he complied. At approximately 12:07pm, Inmate Smith received a cold water decontamination shower and was issued a shroud due to his previous acts of self harm. At approximately 12:22pm, I applied wrist restraints and leg restraints to Inmate Smith. At approximately 12:22pm, Lieutenant De Lapp and Sergeant Larson escorted Inmate Smith to the F dormitory medical triage room and Senior Licensed Practical Nurse Doreen Von Oven performed a post use of force medical examination. Nurse Von Oven completed a DC4-701C: Emergency Room Record and a DC4-708: Diagram of Injury with no injuries noted. At approximately 12:29pm, Lieutenant DeLapp and Sergeant Larson escorted Inmate Smith to his decontaminated cell F1221. At approximately 12:31pm, Sergeant Larson removed the leg restraints and wrist restraints from Inmate Smith and he was secured in decontaminated cell F1221. At approximately 12:32pm, I gave a brief closing statement and video recording ceased. Sergeant Larson, Lieutenant DeLapp, Officer Hetherington and I received a post use of force medical examination by Nurse Von Oven and she completed a DC4-701C: Emergency Room Record and a DC4-708: Diagram of Injury forms for each of us with no injuries noted. Officer De Lavega received a post use of force medical examination by Nurse Von Oven and she completed a DC4-701C: Emergency Room Record and a DC4-708: Diagram of Injury with a small laceration to the left hand small finger and complaints of dizziness and pain in the chest. I am certified in the use of chemical agents and my certification expires August of 2012.

**FLORIDA DEPARTMENT OF CO[illegible]TIONS**

**INCIDENT REPORT**

**Reporting Institution:** Santa Rosa Correctional Institution
**Incident Report Number:**
**Reporting Employee:** Officer Fredrick Hetherington
**PREA Number:**
**Employee ID Number:** 27677
**Date of incident:** August 16, 2011
**Person(s) Involved:** Inmate Smith, Warren DC# T20346
**Time of incident:** Approximately 11:40am
**Witness(es):**

Control Room Log Entry Made: ☒ Yes ☐ No
Inmate Placed in Confinement: ☐ Yes ☒ No
Duty Warden Notified: ☒ Yes ☐ No Time: 11:30am
EAC Notified: ☒ Yes ☐ No Time: 1:31pm
Supporting Documents Attached: Yes

Disciplinary Report Initiated: ☒ Yes ☐ No
Work Order Initiated: ☐ Yes ☒ No
MINS Initiated: ☒ Yes ☐ No
Duty Officer Name: Jackson 2011-08-10317

**DETAILS OF INCIDENT:** On August 16, 2011, I was assigned to Santa Rosa Correctional Institution Main Unit as a Close Management Programs Officer in F-dormitory. At approximately 11:40am, I was summoned to wing one of F-dormitory by Lieutenant Walter Gielow after a spontaneous Use of Force had occurred on Inmate Smith, Warren DC#T20346. At approximately 11:40am, I entered cell B1221 which houses Inmate Smith, Warren DC#T20346 for a life safety check who was unresponsive behind a makeshift curtain on his lower cell bunk while attempting to hang himself with a makeshift noose. I grasped Inmate Smith's left and right lower legs and applied the leg restraints to Inmate Smith. I did witness and participate in this use of force. I did not witness nor participate in the chemical agent use of force.

Officer Fredrick Hetherington — [signature] — August 16, 2011
**Reporting Employee's Name (Print)** — **Reporting Employee's Signature** — **Date**

**Shift Supervisor**
**COMMENT:** Use of force Documentation. See Sergeant Daniel Larson's Use of Force Report.

Lieutenant Walter Gielow — [signature] — August 16, 2011
**Shift Supervisor's/ Department Head's Name (Print)** — **Shift Supervisor's Signature** — **Date**

**REVIEW:** Mins.

Major John F. Kolodziej — [signature] — August 16, 2011
**Correctional Officer Chief's Name (Print)** — **Correctional Officer Chief's Signature** — **Date**

**REVIEW:** Mins.

Warden R. P. Tifft — [signature] — 8/17/11
**Warden's Name (Print)** — **Warden's Signature** — **Date**

FLORIDA DEPARTMENT OF CO… …CTIONS

INCIDENT REPORT

**Reporting Institution:** Santa Rosa Correctional Institution

**Incident Report Number:**

**Reporting Employee:** Lieutenant Michael DeLapp

**PREA Number:**

**Employee ID Number:** 5409

**Date of incident:** August 16, 2011

**Person(s) Involved:** Inmate Smith, Warren DC# T20346

**Time of incident:** Approximately 11:42am

**Witness(es):**

Control Room Log Entry Made: ☒ Yes ☐ No
Inmate Placed in Confinement: ☐ Yes ☒ No
Duty Warden Notified: ☒ Yes ☐ No Time: 11:30am
EAC Notified: ☒ Yes ☐ No Time: 1:31pm
Supporting Documents Attached Yes

Disciplinary Report Initiated: ☒ Yes ☐ No
Work Order Initiated: ☐ Yes ☒ No
MINS Initiated: ☒ Yes ☐ No
Duty Officer Name: Miller 2011-08-10317

**DETAILS OF INCIDENT:** On August 16, 2011, I was assigned to Santa Rosa Correctional Institution Main Unit as the Close Management Housing Lieutenant in F-Dormitory. At approximately 11:42am, I responded to wing one of F-dormitory after a spontaneous use of force had occurred on Inmate Smith, Warren DC#T20346 after he attempted to hang himself from his cell bunk with a makeshift noose. At approximately 11:43am, I removed the makeshift noose from the upper cell bunk. At approximately 11:43am, I applied a downward pressure on Inmate Smith's upper body area securing his movement while all restraints were applied to Inmate Smith. I also assisted in escorts to the cold water decontamination shower and to the medical triage room. I did witness and participate in this use of force. I did not participate in the chemical agent use of force. I utilized the ligature cutter to remove the makeshift noose from Inmate Smith's neck.

Lieutenant Michael DeLapp
**Reporting Employee's Name (Print)** — **Reporting Employee's Signature** [signature] — August 16, 2011 **Date**

**Shift Supervisor**
**COMMENT:** Use of force Documentation. See Sergeant Daniel Larson's Use of Force Report.

Lieutenant Michael Delap
**Shift Supervisor's/ Department Head's Name (Print)** — **Shift Supervisor's Signature** [signature] — August 16, 2011 **Date**

**REVIEW:** Mins.

Major John F. Kolodziej
**Correctional Officer Chief's Name (Print)** — **Correctional Officer Chief's Signature** [signature] — August 17, 2011 **Date**

**REVIEW:** Mins.

Warden R. P. Tifft
**Warden's Name (Print)** — **Warden's Signature** [signature] — 8/17/11 **Date**

FLORIDA DEPARTMENT OF CORRECTIONS

**INCIDENT REPORT**

**Reporting Institution:** Santa Rosa Correctional Institution
**Incident Report Number:**

**Reporting Employee:** Officer Mark De Lavega
**PREA Number:**

**Employee ID Number:** 40793
**Date of incident:** August 16, 2011

**Person(s) Involved:** Inmate Smith, Warren DC# T20346
**Time of incident:** Approximately 11:40am

**Witness(es):**

Control Room Log Entry Made: ☒ Yes ☐ No
Inmate Placed in Confinement: ☐ Yes ☒ No
Duty Warden Notified: ☒ Yes ☐ No Time: 11:30am
EAC Notified: ☒ Yes ☐ No Time: 1:31pm
Supporting Documents Attached: Yes

Disciplinary Report Initiated: ☒ Yes ☐ No
Work Order Initiated: ☐ Yes ☒ No
MINS Initiated: ☒ Yes ☐ No
Duty Officer Name: Miller 2011-08-10317

**DETAILS OF INCIDENT:** On August 16, 2011, I was assigned to Santa Rosa Correctional Institution Main Unit as a Housing Officer in F-dormitory. At approximately 11:40am, I was summoned to wing one of F-dormitory by Lieutenant Walter Gielow after a spontaneous Use of Force had occurred on Inmate Smith, Warren DC#T20346. At approximately 11:40am, I utilized the concave non-electric plexiglass shield to ensure staff safety while entering cell B1221 for a life safety check of Inmate Smith, who was unresponsive behind a makeshift curtain on his lower cell bunk, I then utilized the shield in attempts to pin Inmate Smith to the cell bunk. I also grasped Inmate Smith's left arm and assisted Sergeant Daniel Larson in applying the wrist restraints to Inmate Smith. I did witness and participate in this use of force.

Officer Mark De Lavega — [signature] — August 16, 2011
**Reporting Employee's Name (Print)** — **Reporting Employee's Signature** — **Date**

**Shift Supervisor**
**COMMENT:** Use of force Documentation. See Sergeant Daniel Larson's Use of Force Report.

Lieutenant Walter Gielow — [signature] — August 16, 2011
**Shift Supervisor's/ Department Head's Name (Print)** — **Shift Supervisor's Signature** — **Date**

**REVIEW:** Mins.

Major John F. Kolodziej — [signature] — August 16, 2011
**Correctional Officer Chief's Name (Print)** — **Correctional Officer Chief's Signature** — **Date**

**REVIEW:** Mins.

Warden R. P. Tifft — [signature] — 8/17/11
**Warden's Name (Print)** — **Warden's Signature** — **Date**

# DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

**Reporting Institution:** Santa Rosa C.I.
**Incident Report Number:**

**Reporting Employee:** Behavioral Specialist Jeffrey Arney
**PREA Number:**

**Employee ID Number:** 52332
**Date of incident:** August 16, 2011

**Person(s) Involved:** Inmate Smith, Warren DC# T20346
**Time of incident:** 12:00pm

**Witness(es):**

Control Room Log Entry Made: ☒ Yes ☐ No
Inmate Placed in Confinement: ☒ Yes ☐ No
Duty Warden Notified: ☒ Yes ☐ No Time: 11:30a
EAC Notified: ☒ Yes ☐ No Time: 1:31p
Supporting Documents Attached: Yes

Disciplinary Report Initiated: ☐ Yes ☐ No
Work Order Initiated: ☐ Yes ☐ No
MINS Initiated: ☐ Yes ☐ No
Duty Officer Name: Miller 2011-08-10317

**DETAILS OF INCIDENT:**

On August 16, 2011, I was assigned as a Behavioral Specialist at Santa Rosa Correctional Institution Main Unit. At approximately 12:00pm, I interviewed Inmate Smith, Warren DC#T20346 at shower cell front F2125, due to him declaring a psychological emergency. At approximately 12:02pm, Inmate Smith was deemed a security issue and was released back to security. I did not witness, nor participate in this use of force.

**Behavioral Specialist Jeffrey Arney** — [signature] — **8/16/11**
**Reporting Employee's Name (Print)** — **Reporting Employee's Signature** — **Date**

**Shift Supervisor/ Department Head**

**COMMENT:**

Use of force documentation. See Sergeant Daniel Larson's Use of Force Report.

**Lieutenant Walter Gielow** — [signature] — **8/16/11**
**Shift Supervisor's/ Department Head's Name (Print)** — **Shift Supervisor's Signature** — **Date**

**REVIEW:**

Mins.

**Major John Kolodziej** — [signature] — **8/ 16/11**
**Correctional Officer Chief's Name (Print)** — **Correctional Officer Chief's Signature** — **Date**

**REVIEW:**

Mins.

**Warden R. P. Tifft** — [signature] — 8/17/11
**Warden's Name (Print)** — **Warden's Signature** — **Date**

# FLORIDA DEPARTMENT OF COR[illegible]TIONS

## INCIDENT REPORT

| | | | |
|---|---|---|---|
| **Reporting Institution:** | Santa Rosa Correctional Institution | **Incident Report Number:** | |
| **Reporting Employee:** | Officer Andrew Kauffman | **PREA Number:** | |
| **Employee ID Number:** | 40584 | **Date of incident:** | August 16, 2011 |
| **Person(s) Involved:** | Inmate Smith, Warren DC# T20346 | **Time of incident:** | Approximately 11:33am |
| | | **Witness(es):** | |

| | | | |
|---|---|---|---|
| Control Room Log Entry Made: | ☒ Yes ☐ No | Disciplinary Report Initiated: | ☒ Yes ☐ No |
| Inmate Placed in Confinement: | ☐ Yes ☒ No | Work Order Initiated: | ☐ Yes ☒ No |
| Duty Warden Notified: | ☒ Yes ☐ No Time: 11:30am | MINS Initiated: | ☒ Yes ☐ No |
| EAC Notified: | ☒ Yes ☐ No Time: 1:31pm | Duty Officer Name: | Miller 2011-08-10317 |
| Supporting Documents Attached | Yes | | |

**DETAILS OF INCIDENT**: On August 16, 2011, I was assigned to Santa Rosa Correctional Institution Main Unit as a Close Management Housing Officer in F- Dormitory. At approximately 11:33am, I was instructed by Lieutenant Walter Gielow to retrieve the hand held digital video camera for a possible chemical agent use of force on Inmate Smith, Warren DC# T20346, who is housed alone in F1221L, due to his causing a disturbance in the wing by yelling obscenities and kicking his cell door. At approximately 11:34am, I initiated video recording procedures as Lieutenant Gielow conducted a brief lead in statement. At approximately 11:35am, Lieutenant Walter Gielow, Sergeant Daniel Larson, and I entered wing one and approached cell B1221. At approximately 11:35am, Lieutenant Gielow counseled with Inmate Smith on camera and issued him a final verbal order to cease creating a disturbance on the wing. Lieutenant Gielow further advised Inmate Smith that this was his final order and if the order was not followed, chemical agents would be administered. At approximately 11:36am, Inmate Smith stated that he was going to kill himself and began tying a makeshift noose around his neck and his upper cell bunk and hanging himself. At approximately 11:36am, Inmate Smith tied a makeshift noose around his neck using a piece of state issued blanket and tied the other end of the noose around the upper cell bunk. At approximately 11:36am, Lieutenant Gielow ordered Inmate Smith several verbal orders to cease his actions of self harm, but was met with negative results. Force was utilized to prevent Inmate Smith from causing self harm. Camera recording ran continuously through Inmate Smith being escorted to the cool water shower, his cool water shower, the second application of chemical agents in shower cell F2125 to cease his disruptive behavior, his post use of force examination, and being secured in decontaminated cell F1221. I monitored Inmate Smith for approximately sixty minutes for signs of respiratory distress with none noted. I initiated a DC1-801: Chain of Custody form for the digital video disc utilized for this use of force. I witnessed but did not participate in this use of force.

Officer Andrew Kauffman — [signature] — August 16, 2011
**Reporting Employee's Name (Print)** — **Reporting Employee's Signature** — **Date**

**Shift Supervisor**
**COMMENT:** Use of force Documentation. See Sergeant Daniel Larson's Use of Force Report.

Lieutenant Walter Gielow — [signature] — August 16, 2011
**Shift Supervisor's/ Department Head's Name (Print)** — **Shift Supervisor's Signature** — **Date**

**REVIEW:** Mins.

Major John F. Kolodziej — [signature] — Aug. 17, 2011
**Correctional Officer Chief's Name (Print)** — **Correctional Officer Chief's Signature** — **Date**

**REVIEW:** Mins.

Warden R. P. Tifft — [signature] — 8/17/11
**Warden's Name (Print)** — **Warden's Signature** — **Date**

**State of Florida** **Witness Statement** **Department of Corrections**

**Log #**__________

**I. Identifying Inmate Information**

DC # T20346 Inmate Name Smith, Warren

Violation Code and Short Title Use of Force – Chemical / Physical

Use of Force # 2011 – 119 – 0399

Date Report Written 08/16/2011

**II. Witness**

☐ Staff Member: Name and Position__________

☐ Other Individual: Name__________

☒ Inmate: DC # T20346 Name Smith, Warren

**III. Voluntary Refusal**

*The witness voluntarily refused to provide a written statement to the Investigating Officer and the following signature(s) attests to that fact:*

Witness Signature __________ Date__________

Signature of Officer__________ Date__________

**IV. Statement**

Ref to Make a Statement.

Witness Signature [signature] Date 8-16-11

Signature of Officer__________ Date__________

DC6-112C (Revised 8/06) Original: Inmate File Copy: Central Office

Exh. D 037

Certification is valid for a period of one year following date of issue for those weapons indicated.

This identification card is issued for the official use only of the person named here on. This card is non-transferable and is void if altered or expired. It remains the property of the Florida Department of Corrections.

Employee Signature

DC6-277 (Revised 8/06)

STATE OF FLORIDA
DEPARTMENT OF CORRECTIONS
WEAPONS QUALIFICATION

| Name | LARSON, D.J. | | |
|---|---|---|---|
| Facility/Office | Santa Rosa C.I. | | |
| ☐ .38 CAL (5 SHOT) REVOLVER | ☒ .38 CAL (6 SHOT) REVOLVER | ☐ .223 CAL AR-15 | ☐ .9MM 5906 SEMI-AUTO |
| ☐ 9MM (M&P) SEMI-AUTO | ☒ 12 GAUGE SHOTGUN | ☒ CHEMICAL AGENTS | |
| ☒ Restraint Device(s) | ☐ SS III Holster | ☐ ERB | ☒ EID STINGER ☐ EID NOVA |
| DATE ISSUED | SEPTEMBER 10 | | |
| Certifying Officer Signature | | SEPTEMBER 11 Expiration Date | |
| Certified Training Center | | Authorizing Authority Signature | |

| LESS LETHAL WEAPON / DEVICE | ISSUE DATE |
|---|---|
| ☒ CHEMICAL AGENTS | 8/5/11 |
| ☐ EID NOVA - HANDHELD | |
| ☒ EID STINGER - HANDHELD | 4/3/98 |
| ☒ EID STINGER - SHIELD | 4/3/98 |
| ☐ EID STINGER - BELT/BAND | |
| ☒ RESTRAINT DEVICES | 8/5/11 |

- This card is the property of the Florida Department of Corrections.
- Certification is valid for a period of one year following date of issue only for those items indicated.
- This card is issued to the officer named and is non-transferable and void if altered or expired.

W Gielow

OFFICER SIGNATURE

M.K. [signature]

APPROVING AUTHORITY SIGNATURE

DC6-277 (Revised 8/9/10)

**FIREARMS QUALIFICATION**

| OFFICER NAME | GIELOW, W.L. |
|---|---|
| LOCATION | SARCI |

- ☐ REVOLVER .38 CAL (5 SHOT)
- ☒ REVOLVER .38 CAL (6 SHOT)
- ☐ REVOLVER .357 CAL
- ☐ 9MM (Model 5906)
- ☐ 9MM (Model M&P 9)
- ☐ 9MM (Other)
- ☒ SHOTGUN (12 GAUGE)
- ☒ RIFLE (AR-15)
- ☐ HOLSTER (SINGLE RETENTION)
- ☐ HOLSTER (DOUBLE RETENTION)

| ISSUE DATE | EXPIRATION DATE |
|---|---|
| 8/1/11 | 8/1/12 |

[signature]

RANGE MASTER SIGNATURE

Exh. D 038

Exh. D 039

# STATE OF FLORIDA
# DEPARTMENT OF CORRECTIONS
## Chemical Agent Accountability Log

87

| TYPE OF CHEMICAL AGENT ISSUED & DISPENSER NUMBER | DATE | TIME OUT | WEIGHT OUT | TIME IN | WEIGHT IN | SIGNATURE OF SHIFT SUPERVISOR ISSUING AGENT | SIGNATURE OF SHIFT SUPERVISOR RETURNING AGENT | CHIEF OF SECURITY INITIALS |
|---|---|---|---|---|---|---|---|---|
| Rec#10 MK4 First Defense #780 023591 | 8-16-11 | 7:00am | 129g | 12:00pm | 42g | [signature] | [signature] | [initials] |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

This log shall be maintained in each area where chemical agents are stored and shall be utilized any time that chemical agents are issued from any secure storage location.

DC6-216 (Revised 7-02)

Incorporated by Reference in Rule 33-602.210, F.A.C.

# STATE OF FLORIDA
# DEPARTMENT OF CORRECTIONS
## Chemical Agent Accountability Log

28

| TYPE OF CHEMICAL AGENT ISSUED & DISPENSER NUMBER | DATE | TIME OUT | WEIGHT OUT | TIME IN | WEIGHT IN | SIGNATURE OF SHIFT SUPERVISOR ISSUING AGENT | SIGNATURE OF SHIFT SUPERVISOR RETURNING AGENT | CHIEF OF SECURITY INITIALS |
|---|---|---|---|---|---|---|---|---|
| Rec#9 MK4 First Defense #734 020578 | 8-16-11 | 7:00am | 124g | 12:00pm | 96g | [signature] | [signature] | [signature] |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

This log shall be maintained in each area where chemical agents are stored and shall be utilized any time that chemical agents are issued from any secure storage location.

DC6-216 (Revised 7-02)

Incorporated by Reference in Rule 33-602.210, F.A.C.

Exh. D 041

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS
### Chemical Agent Accountability Log

Canister# OC 814 Defense Technology P/N: 07522

| TYPE OF CHEMICAL AGENT ISSUED & DISPENSER NUMBER | DATE | TIME OUT | WEIGHT OUT | TIME IN | WEIGHT IN | SIGNATURE OF SHIFT SUPERVISOR ISSUING AGENT | SIGNATURE OF SHIFT SUPERVISOR RETURNING AGENT | CHIEF OF SECURITY INITIALS |
|---|---|---|---|---|---|---|---|---|
| MK9 Defense Technology HVF canister #814 serial# 07522 | 8-16-11 | 12:02pm | 562g | 12:05pm | 404g | [signature] | [signature] | [initials] |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

58

This log shall be maintained in each area where chemical agents are stored and shall be utilized any time that chemical agents are issued from any secure storage location.

DC6-216 (Revised 7-02)

Incorporated by Reference in Rule 33-602.210, F.A.C.

# Bureau of State Investigations
## Use Of Force
## Case Number: 2011-119-0399

**Incident Number:** 2011-119-0399 **Facility:** SANTA ROSA C.I.
**Class Code:** Quell a Disturbance
**Housing:** **Location:** Confinement **Dorm:** B **Cell:** 21

---

**Reported Date:** 8/17/11 **Incident Date:** 8/16/11 11:19:00 AM
**Referred for Investigation:** **Investigation Received:**
**Region Code:** 1 **Case Type:** RM
**Force Type:** **Physical:** Yes **Chemical:** Yes **Medical Restraint:** N/A
**IG Number:** 11-1-6392

---

**Received at Force Unit Date:** 10/12/11 **by:** DINSTNI **Approval Date:** 10/12/11 **by:** DINSTNI
**Disapproval Date:** **Disapproval Reason:**

---

**EID:** No **Discrepancy Memo:** No
**Video:** Yes **None:** N/A **Hand:** Yes **Wing:** Yes **Injuries:** No
**Spontaneous:** Yes **Upgraded from RM:** N/A
**CIT Involved?:** N/A
**Chemical Agents:** **None:** N/A **CS:** No **OC:** Yes **Unknown:** No
**Description of Injuries:**

**Narrative:**
ON AUGUST 16, 2011, SGT. LARSON REPORTED THAT HE ADMINISTERED ONE SPONTANEOUS APPLICATION OF CHEMICAL AGENT OC FROM AN MK4 THAT MALFUNCTIONED, ONE SPONTANEOUS APPLICATION FROM AN MK4, AND THAT LT. GIELOW ADMINISTERED ONE AUTHORIZED APPLICATION OF CHEMICAL AGENT OC FROM AN MK9, AND THAT SPONTANEOUS PHYSICAL FORCE WAS UTILIZED ON INMATE SMITH. INMATE SMITH WAS IN HIS ASSIGNED CELL B1221 CREATING A DISTURBANCE IN THE UNIT. THE INMATE WAS ISSUED A FINAL ORDER TO WHICH HE ATTEMPTED TO HANG HIMSELF WITH A TORN BLANKET AND SPONTANEOUS CHEMICAL AGENTS WERE ADMINISTERED. THE INMATE BECAME UNRESPONSIVE AND OFFICERS ENTERED AND UTILIZED SPONTANEOUS PHYSICAL FORCE TO RESTRAIN THE INMATE. THE INMATE DECLARED A PSYCHOLOGICAL EMERGENCY AND WAS RETURNED TO THE CUSTODY OF SECURITY. HE RESUMED HIS DISRUPTIVE BEHAVIOR AND ONE AUTHORIZED APPLICATION OF CHEMICAL AGENT OC WAS ADMINISTERED. THE WARDEN AND EAC WERE NOTIFIED.

---

**Subject(s)**

SMITH, WARREN (Active) - T20346

**Participant(s)**

GIELOW, WALTER (CORRECTION) -
HETHERINGTON, FRED (CORRECTION) -
DELAPP, MICHAEL (CORRECTION) -
DE LAVEGA, MARK (CORRECTION) -
LARSON, DANIEL (CORRECTION) -

**Witness(es)**

KAUFFMAN, ANDREW (CORRECTION) -

**Complainant(s)**