Westlaw.

524 Fed.Appx. 511
**(Cite as: 524 Fed.Appx. 511)**

**C**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
Walter Nathaniel SMITH, Plaintiff–Appellant,
v.
SECRETARY, DEPARTMENT OF CORRECTIONS, et al., Defendants,
Alto Daniels, Correctional Officer,
Defendant–Appellee.

No. 12–14237
Non–Argument Calendar.
July 26, 2013.

**Background:** Prisoner proceeding pro se filed § 1983 action against prison officials for alleged use of excessive force in violation of Eighth Amendment. The United States District Court for the Middle District of Florida granted officials summary judgment. Prisoner appealed pro se.

**Holding:** The Court of Appeals held that official used only de minimis force against prisoner.
    Affirmed.

West Headnotes

**Prisons 310 ⬅124**

310 Prisons
    310II Prisoners and Inmates
        310II(B) Care, Custody, Confinement, and Control
            310k124 k. Use of force. Most Cited Cases

**Sentencing and Punishment 350H ⬅1548**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1548 k. Use of force. Most Cited Cases
    Prison official's use of force by pressing prisoner against wall and twisting his arm was de minimis, rather than excessive force in violation of Eighth Amendment, where prisoner suffered only minor injury of facial swelling, and type of force used by official was not repugnant to conscience of mankind. U.S.C.A. Const.Amend. 8.

*512 Walter Nathaniel Smith, Mayo, FL, pro se.

Mayo CI Warden, Mayo CI–Inmate Trust Fund, Mayo, FL, for Plaintiff–Appellant.

Jamie Melissa Braun, Susan Adams Maher, Attorney General's Office, Tallahassee, FL, Pam Bondi, Attorney General's Office, Jacksonville, FL, for Defendant–Appellee.

Appeal from the United States District Court for the Middle District of Florida. D.C. Docket No. 3:09–cv–00659–TJC–JRK.

Before HULL, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:
    Walter Smith, a prisoner proceeding *pro se,* appeals the district court's grant of summary judgment to Correctional Officer Alto Daniels [FN1] on Smith's Eighth Amendment excessive force claim.[FN2] In his Amended Complaint, Smith alleged that Officer Daniels "twist[ed] [his] arms upwards in the cuffs, while he pressed [him] against the wall.... for some minutes" in an "unprovoked attack" away from surveillance cameras. Smith

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

524 Fed.Appx. 511
**(Cite as: 524 Fed.Appx. 511)**

further alleged that, as a **\*513** result of the attack, he suffered pain in "his shoulder and right hand with wrist injury as well; and minor bruises to his eye and a swollen face." The district court granted summary judgment to Officer Daniels because "the amount of force at issue ... was *de minimis* " and "no reasonable jury could find in favor of [Smith]."

> FN1. Smith's complaint also named as a defendant Walter A. McNeil, the former Secretary of the Florida Department of Corrections. The district court dismissed McNeil from this action before ruling on summary judgment. Smith does not challenge McNeil's dismissal on appeal, so any issues related to the district court's dismissal of McNeil have been abandoned. *Irwin v. Hawk,* 40 F.3d 347, 347 n. 1 (11th Cir.1994).

> FN2. Smith has raised several other arguments in his brief that are not properly before this Court. Although we liberally construe *pro se* pleadings, we nonetheless require *pro se* litigants to "conform to procedural rules." *Albra v. Advan, Inc.,* 490 F.3d 826, 829 (11th Cir.2007) (quotation marks omitted).

> First, Smith makes arguments regarding: (1) the denial of his requests to appoint counsel; (2) the denial of his discovery motions; and (3) the release of his medical records. These issues were raised below and, with the exception of one order addressing Smith's request for a temporary restraining order, were resolved by the Magistrate Judge. However, because Smith "fail[ed] to timely challenge [the] magistrate's nondispositive order [s] before the district court, [he] waived his right to appeal those orders in this Court." *See Smith v. Sch. Bd. of Orange Cnty.,* 487 F.3d 1361, 1365 (11th Cir.2007).

Second, Smith makes several arguments that were not raised in the district court. For example, he argues that if his wrist injury actually occurred prior to the assault at issue here, then the "physicians were deliberately indifferent to [his] serious medical needs." "It is well established in this circuit that, absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal." *Bryant v. Jones,* 575 F.3d 1281, 1308 (11th Cir.2009).

Third, Smith argues against Officer Daniels's Motion to Tax Costs. Because the district court deferred ruling on Daniels's motion until after this appeal, there is not a final decision on this issue for us to review. *See* 28 U.S.C. § 1291.

"We review *de novo* the district court's grant of summary judgment, applying the same standard as the district court." *Burton v. Tampa Hous. Auth.,* 271 F.3d 1274, 1276 (11th Cir.2001). Summary judgment is appropriate if the pleadings and other evidence demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law" Fed.R.Civ.P. 56(a). "The moving party bears the initial burden of showing ... that there are no genuine issues of material fact" and, if the moving party discharges its burden, "the non-moving party must ... go beyond the pleadings ... [to] designate specific facts showing that there is a genuine issue for trial." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1313–14 (11th Cir.2007) (quotation marks omitted). All evidence is viewed, and all reasonable inferences are drawn, in the light most favorable to the nonmoving party. *Burton,* 271 F.3d at 1277.

When prison officials are accused of using excessive physical force "the core judicial inquiry is ... whether force was applied in a good-faith

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

524 Fed.Appx. 511
**(Cite as: 524 Fed.Appx. 511)**

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 9, 112 S.Ct. at 1000. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9–10, 112 S.Ct. at 1000 (quotation marks omitted). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy,* 559 U.S. 34, 38, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010). While a lack of serious injury is relevant to the inquiry, "[i]njury and force ... are only imperfectly correlated and it is the latter that ultimately counts." *Id.*

Taking Smith's account as true, the attack was no more than a *de minimis* use of force. First, there was a lack of serious injury. The district court properly concluded that Smith's only injury was minimal swelling around the left eye. It is undisputed that Smith had "minimal swelling" when treated the day after the incident. Smith alleges that he also suffered facial bruising and a fractured wrist as a result of the incident. However, Officer Daniels has met his burden of showing that there is no genuine dispute about the existence of these injuries (no such injuries were caused by the incident), and Smith has not rebutted that showing by designating specific facts beyond the pleadings. *See Allen,* 495 F.3d at 1313–14. Notes from Smith's medical examination after the incident stated that there was no "discoloration" and did not reference wrist pain. Also, Smith's medical records show that he made inconsistent statements about when his wrist injury occurred. Finally, while later examinations indicated that Smith had fractured his wrist at some point, the Director of Medical Services for the Florida Department of Corrections explained that it was "highly unlikely, if not near impossible, that the incident as alleged by Mr. Smith ... led to" the type of fracture he suffered. Thus, the record **\*514** supports the finding that Smith suffered only the minor injury of facial swelling as a result of the incident.

Second, the type of force allegedly used by Officer Daniels (twisting Smith's arm and pressing him against the wall) was "not of a sort repugnant to the conscience of mankind." *See Hudson,* 503 U.S. at 10, 112 S.Ct. at 1000 (quotation marks omitted). Instead, it was similar to the "push or shove" referenced in *Wilkins,* which "almost certainly fails to state a valid excessive force claim." *Wilkins,* 130 S.Ct. at 1178 (quotation marks omitted).

Therefore, even taking Smith's version of the events as true, any use of force was *de minimis* and the district court did not err in concluding that no genuine issue of material fact existed about whether Officer Daniels used excessive force in violation of the Eighth Amendment.

**AFFIRMED.**

C.A.11 (Fla.),2013.
Smith v. Secretary, Dept. of Corrections
524 Fed.Appx. 511

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.)))**

▷
This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Eleventh Circuit Rules
36-2, 36-3. (Find CTA11 Rule 36-2 and Find
CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
Eric Raymond WILLIAMS, Plaintiff–Appellant,
v.
A. SLACK, Correctional Officer II, J. Carr,
Correctional Officer II, Sgt. Jackson, C.O. II
McCord, C.O. I Jones, Defendants–Appellees.

No. 10–13201
Non–Argument Calendar.
Aug. 23, 2011.

**Background:** Prisoner brought § 1983 action
against correctional officers, alleging that they used
excessive force. The United States District Court
for the Northern District of Georgia, 2010 WL
2545809, entered summary judgment for officers.
Prisoner appealed.

**Holdings:** The Court of Appeals held that:
(1) District Court did not abuse its discretion in
applying local rule to deem officers' statements of
material facts admitted, and
(2) officers did not act maliciously or sadistically to
harm prisoner, and thus did not use excessive force.

Affirmed.

West Headnotes

**[1] Federal Civil Procedure 170A ⟜2547.1**

170A Federal Civil Procedure
    170AXVII Judgment

170AXVII(C) Summary Judgment
    170AXVII(C)3 Proceedings
        170Ak2547 Hearing and Determination
            170Ak2547.1 k. In general. Most
Cited Cases

District court did not abuse its discretion in
applying local rule to deem correctional officers'
statements of material facts as admitted by prisoner
in § 1983 action, where prisoner's response to
officers' motions for summary judgment did not
contain individually numbered, concise, non-
argumentative responses corresponding to each of
officers' enumerated material facts, response did
not directly refute material facts set forth in
officers' statements of material facts with specific
citations to evidence, and response otherwise failed
to state valid objection to material facts. 42
U.S.C.A. § 1983; U.S.Dist.Ct.Rules N.D. Ga.,
Local Rule 56.1 .

**[2] Prisons 310 ⟜124**

310 Prisons
    310II Prisoners and Inmates
        310II(B) Care, Custody, Confinement, and
Control
            310k124 k. Use of force. Most Cited Cases

**Prisons 310 ⟜127**

310 Prisons
    310II Prisoners and Inmates
        310II(B) Care, Custody, Confinement, and
Control
            310k127 k. Shackles or other restraints.
Most Cited Cases

**Sentencing and Punishment 350H ⟜1548**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in
General
        350HVII(H) Conditions of Confinement

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.)))

350Hk1548 k. Use of force. Most Cited Cases

Correctional officers did not act maliciously or sadistically to harm prisoner, and thus did not use excessive force in violation of Eighth Amendment, where prisoner created disturbance by rushing at officer, force used including handcuffs was proportionate to need for that force, prisoner suffered relatively minor injuries consisting of abrasions and swelling, officers reasonably perceived that situation in dormitory where altercation took place was becoming dangerous and volatile, and officers acted to temper use of force. U.S.C.A. Const.Amend. 8.

*848 Valdosta SP Warden, Valdosta, GA, for Plaintiff–Appellant.

Eric Raymond Williams, Alamo, GA, pro se.

Matthew F. Boyer, Samuel Scott Olens, Devon Orland, Kathleen M. Pacious, Office of the Attorney General, *849Vincent A. Toreno , D. Michael Williams, Rutherford & Christie, LLP, Matthew Richard Lavallee, Daley Koster & Lavallee, LLC, Atlanta, GA, for Defendants–Appellees.

Appeal from the United States District Court for the Northern District of Georgia. D.C. Docket No. 1:08–cv–02920–TCB.

Before HULL, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

**1 Eric Raymond Williams appeals the district court's grants of summary judgment to Officers Arzialous Slack, Joseph Jones, Eric Jackson, Jeremiah Carr, and Joseph McCard on his 42 U.S.C. § 1983 complaint alleging that they used excessive force against him in violation of the Eighth Amendment. On appeal, Williams contends that the district court abused its discretion by deeming the defendants' statements of material facts admitted because he filed a response and objection to the defendants' motions for summary judgment. Williams also argues that the district court erred by then granting the officers' motions for summary judgment because there were genuine issues of material fact regarding the officers' alleged use of excessive force. We address each argument in turn.

I. *Northern District of Georgia Local Rule 56.1*

We review a district court's application of its local rules for an abuse of discretion, finding such abuse only when the plaintiff demonstrates that the district court made a clear error of judgment. *Mann v. Taser Int'l, Inc.,* 588 F.3d 1291, 1302 (11th Cir.2009).

Federal Rule of Civil Procedure 56 requires a party asserting that a fact is genuinely disputed to support his assertion by citing to specific materials in the record, and a failure to do so allows the district court to consider the facts as undisputed for purposes of the motion for summary judgment. Fed.R.Civ.P. 56(c)(1)(A), (e)(2). Similarly, Northern District of Georgia Local Rule 56.1 "demands that the non-movant's response [to a motion for summary judgment] contain individually numbered, concise, non-argumentative responses corresponding to each of the movant's enumerated material facts." *Mann,* 588 F.3d at 1302–03 (holding that plaintiffs' response failed to comply with local rule 56.1 because it was "convoluted, argumentative, and non-responsive"); *see also* N.D. Ga. R. 56.1(B)(2)(a).

Where the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1B(2), such fact is deemed admitted by the respondent.

*Mann,* 588 F.3d at 1302.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.)))

In applying Local Rule 56.1 at the summary judgment stage, the district court should "disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement." *Reese v. Herbert,* 527 F.3d 1253, 1268 (11th Cir.2008). A Local Rule 56.1 statement, however, "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record," and, therefore, we must still review the materials submitted by the movant "to determine if there is, indeed, no genuine issue of material fact." *Id.* at 1303 (quotation omitted).

Additionally, although the Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access *850 to counsel be liberally construed," the Court has "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993).

**2 [1] In this case, Williams has failed to demonstrate that the district court made a clear error of judgment in applying Local Rule 56.1 to deem the defendants' statements of material facts as admitted. Local Rule 56.1 is an ordinary procedural rule of civil litigation that we do not interpret "so as to excuse mistakes by those who proceed without counsel." *McNeil,* 508 U.S. at 113, 113 S.Ct. at 1984. Williams's response to the motions for summary judgment did not "contain individually numbered, concise, non-argumentative responses corresponding to each of the movant's enumerated material facts." *Mann,* 588 F.3d at 1302. Neither did the response directly refute the material facts set forth in the movants' statements of material facts with specific citations to evidence, and it otherwise failed to state a valid objection to the material facts.

II. *Motion for Summary Judgment*
We review a district court's grant of summary

judgment *de novo,* considering the facts and drawing reasonable inferences in the light most favorable to the non-moving party. *Mann,* 588 F.3d at 1303. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mann,* 588 F.3d at 1303 (quotation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Id.* (quotation omitted).

The use of force in a custodial setting does not violate the Eighth Amendment "as long as it is applied in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm." *Skrtich v. Thornton,* 280 F.3d 1295, 1300 (11th Cir.2002) (quotation and alteration omitted). To determine whether force was applied maliciously and sadistically to cause harm, we consider: (1) the need for the application of force, (2) the relationship between that need and the amount of force used, (3) the extent of the prisoner's injuries, (4) the threat reasonably perceived by the officials, and (5) efforts made to temper the severity of the force. *Cockrell v. Sparks,* 510 F.3d 1307, 1311 (11th Cir.2007). In considering these factors, we give "a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Id.* (quotations and alteration omitted).

[2] We affirm the district court's grant of summary judgment to Officer Jackson because Williams concedes, and the evidence demonstrates, that he was not on duty on the date of the incident, and, therefore, did not participate in the events giving rise to Williams's complaint. We also conclude that the district court did not err in granting the remaining defendants' motions for summary judgment because the undisputed evidence demonstrates that they did not act

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.)))**

maliciously or sadistically to harm Williams. Instead, the officers acted to restore order and preserve discipline at the scene of a disturbance.

**\*\*3** First, the admitted evidence established that Williams created a disturbance, and "[p]rison guards may use force when necessary to restore order and need not wait **\*851** until disturbances reach dangerous proportions before responding." *Cockrell,* 510 F.3d at 1311 (quotation omitted). Taking the evidence as elucidated in the defendants' statement of material facts, the altercation occurred because Williams rushed at Officer Slack and engaged in a physical altercation with him. The other inmates who were roaming the prison dormitory became agitated and raucous and began threatening the officers when Williams and Slack began to tussle. Thus, there was a need for force to restrain Williams and to remove Williams from the volatile situation in the dormitory. *See Cockrell,* 510 F.3d at 1311.

Second, the force that the officers employed was proportionate to the need for that force. *See id.* The officers restrained Williams and acted to expeditiously remove him from the dormitory. Accordingly, they handcuffed him, placed him in leg restraints, carried him down the stairs, and then pulled him outside of the dormitory. Officer Jones concedes that his knee might have contacted Williams while Jones was attempting to handcuff him. However, he states that he did not knee Williams in the side for the purpose of causing him harm, and this statement was deemed admitted pursuant to Local Rule 56.1. Thus, even if Officer Jones's knee hit Williams in the side three times during the altercation, such impacts alone do not prove that Officer Jones's actions were malicious or sadistic.

Furthermore, Williams's assertions that he was beaten in the back of the head by numerous officers, thrown down the stairs, and stomped on the knee by Officer McCard, are blatantly contradicted by the defendants' statements of material facts, and the district court, therefore,

properly disregarded them. *See Reese,* 527 F.3d at 1268. The properly considered evidence indicates, instead, that Williams was restrained and then accidentally dropped on the stairs because the altercation aggravated a preexisting injury in Officer Slack's hand and because Williams was "bucking."

On appeal, Williams contends that he never posed a threat to the officers' safety or to his own safety. However, Williams's assertion mischaracterizes the nature of the threat to the officers and to Williams. As Officer Carr stated in his declaration, it was necessary to remove Williams from the dormitory as quickly as possible because both the officers and Williams were vulnerable to attack from other inmates while Williams was restrained. This Court gives great deference to prison officials acting to preserve discipline and security, especially when they make decisions at the scene of a disturbance, and thus the amount of force used was proportionate to the need for force. *See Cockrell,* 510 F.3d at 1311.

Third, Williams suffered relatively minor injuries consisting of abrasions and swelling. The minimal nature of those injuries indicates that the officers did not use force maliciously and sadistically to harm Williams. *See Cockrell,* 510 F.3d at 1311. Although Williams alleged that his ribs were fractured, that contention is not supported by the evidence. Furthermore, contrary to Williams's assertions, there is no reason to believe that only an orthopedic specialist could identify a fracture from an x-ray that a radiologist could not.

**\*\*4** Fourth, given that were approximately 50 inmates freely roaming the dormitory at the time of the altercation, and those inmates began to yell and threaten the officers, the defendants reasonably perceived that the situation in the dormitory was becoming dangerous and volatile. Thus, the undisputed evidence indicates that the officers' use of force was in response to the dangerous and volatile situation**\*852** that they perceived. *See Cockrell,* 510 F.3d at 1311.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.)))**

Fifth, the undisputed evidence indicates that the officers acted to temper the use of their force. It is undisputed that the officers placed handcuffs and leg restraints on Williams rather than using more forceful methods of restraint. *See, e.g., Campbell v. Sikes,* 169 F.3d 1353, 1376–78 (11th Cir.1999) (upholding officials' use of an "L" shaped restraint for "hog-tying" in addition to a straightjacket). Additionally, the officers verbally instructed Williams to stop "bucking," but he did not comply. Further, as discussed above, the undisputed evidence contradicts Williams's allegations of being punched and kicked in the head and back by numerous officers and then thrown down nine steps. Accordingly, even if the officers could have used alternative methods to achieve their goal of restraining and transporting Williams quickly, the evidence fails to demonstrate that they chose their course of conduct to maliciously or sadistically inflict harm on Williams. *See Cockrell,* 510 F.3d at 1311.

Finally, based on our holding that the defendants were entitled to summary judgment, we need not consider their arguments that they were entitled to qualified immunity. Therefore, upon review of the record and consideration of the parties' briefs, we affirm the district court's grant of summary judgment to the defendants.

**AFFIRMED.**

C.A.11 (Ga.),2011.
Williams v. Slack
438 Fed.Appx. 848, 2011 WL 3684543 (C.A.11 (Ga.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.)))**

**H**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
Victor SCROGGINS, Plaintiff-Appellant,
v.
Matthew D. DAVIS, Kenneth W. Towler,
Oluwashola K. Lawal, Keith A. Harmon, Jeffrey A.
Brown, et al., Defendants-Appellees.

No. 07-15514.
Sept. 28, 2009.

**Background:** Inmate brought § 1983 action against jail officials alleging that officials' use of force to subdue him violated Eighth Amendment. The United States District Court for the Middle District of Florida, Marcia M. Howard, J., granted officials summary judgment. Inmate appealed.

**Holding:** The Court of Appeals held that officials did not use excessive force in violation of Eighth Amendment in subduing inmate.
Affirmed.

West Headnotes

**Prisons 310 ⟛124**

310 Prisons
    310II Prisoners and Inmates
        310II(B) Care, Custody, Confinement, and Control
            310k124 k. Use of force. Most Cited Cases

**Prisons 310 ⟛127**

310 Prisons
    310II Prisoners and Inmates
        310II(B) Care, Custody, Confinement, and Control
            310k127 k. Shackles or other restraints. Most Cited Cases

**Sentencing and Punishment 350H ⟛1548**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1548 k. Use of force. Most Cited Cases

**Sentencing and Punishment 350H ⟛1549**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1549 k. Physical restraints. Most Cited Cases

Jail officials did not use excessive force in violation of Eighth Amendment to subdue inmate by using one burst of oleoresin capsicum spray during altercation, or by later placing inmate in four-point restraints for three hours and fifteen minutes; officials reasonably regarded inmate as high-risk, dangerous inmate, inmate had history of prior escape, while being escorted from his cell to place where he could be searched for contraband, inmate disobeyed a direct order and got involved with a scuffle with guards, during which he made an aggressive move toward one of them, inmate's failure to seek any medical treatment afterwards was inconsistent with his assertion that he had broken ribs, and officials were never told that inmate was feeling any pain or discomfort from spray. U.S.C.A. Const.Amend. 8.

**\*504** Matthew Michael Killen, Kirkland & Ellis,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.)))

LLP, Chicago, IL, for Plaintiff-Appellant.

Jason Lee Scarberry, Purdy, Jolly, Giuffreda & Barranco, P.A., Ft. Lauderdale, FL, for Defendants-Appellees.

Appeal from the United States District Court for the Middle District of Florida. D.C. Docket No. 05-00610-CV-FTM-34-SPC.

*505 Before CARNES, FAY and ALARCON,FN* Circuit Judges.

FN* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:

**1 Victor Scroggins appeals from the district court's grant of summary judgment against all of the claims raised in his 42 U.S.C. § 1983 complaint.

Scroggins contends that the use of force to subdue him was constitutionally excessive in violation of his Eighth Amendment rights. The standard we apply to that claim is whether the force was applied "in a good faith effort to maintain or restore discipline" or instead "maliciously and sadistically for the very purpose of causing harm." *Johnson v. Breeden,* 280 F.3d 1308, 1321 (11th Cir.2002). The existence of "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" is not enough to support a claim of excessive force in an institutional setting. *Campbell v. Sikes,* 169 F.3d 1353, 1375 (11th Cir.1999) (citing *Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 1086, 89 L.Ed.2d 251 (1986)). And the Supreme Court has instructed us that "we must give a wide range of deference to prison officials acting to preserve discipline and security." *Whitley,* 475 U.S. at 321-22, 106 S.Ct. at 1085 (1986).

The undisputed evidence is that jail officials

reasonably regarded Scroggins as a high-risk, dangerous inmate, with a history of a prior escape. While being escorted from his cell to a place where he could be searched for contraband, Scroggins disobeyed a direct order and got involved in a scuffle with the guards, during which he made an aggressive move toward one of them. In those circumstances, the force used to subdue Scroggins was not excessive. No reasonable factfinder could find that Scroggins' ribs were broken, as he claims. There is no evidence to corroborate his own conclusory statement to that effect, and his failure to seek any medical treatment at all afterwards is inconsistent with his having broken ribs. *See Bennett v. Parker,* 898 F.2d 1530, 1534 (11th Cir.1990) (discounting plaintiff's claim of injury as "only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses").

The use of one burst of oleoresin capsicum (O.C.) spray against Scroggins during the altercation was not excessive force. *See Danley v. Allen,* 540 F.3d 1298, 1303 (11th Cir.2008) ("[P]epper spray is an accepted non-lethal means of controlling unruly inmates ...."); *id.* at 1307 ("If there were nothing before us but the initial use of pepper spray ... we would readily conclude that there was no Fourteenth Amendment violation."). Nor did placing Scroggins in four-point restraints for three hours and fifteen minutes amount to excessive force. *See Williams v. Burton,* 943 F.2d 1572, 1576 (11th Cir.1991) (rejecting claim that putting a dangerous inmate in four-point restraint for twenty-eight and one-half hours was excessive force, and explaining "the courts give great deference to the actions of prison officials in applying prophylactic or preventative measures intended to reduce the incidence of riots and other breaches of prison discipline").

**2 Scroggins argues that our *Danley* decision establishes that continuing the application of force after the inmate is subdued amounts to the application of excessive force. But *Danley* was not

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.)))

a restraint case and it did not involve a dangerous, *506 high risk inmate. It involved a DUI arrestee and the deliberate decision to allow the effects of pepper spray to continue to cause him pain and discomfort for the guards' sadistic pleasure. *See Danley,* 540 F.3d at 1305. The Constitution does not require prison officials to release from restraint a dangerous inmate who has lashed out at them simply because he has stopped lashing out for the time being. Indeed, given that four-point restraints make it difficult for an inmate to engage in any kind of physical misbehavior, Scroggins' position would mean that four-point restraints could never be continued for longer than a few minutes at a time. We know from the *Williams* decision that is not the law.

Scroggins' attempt to draw an analogy to *Danley* based on the fact that none of the defendants tried to wash the O.C. spray off of him fails. The only time Scroggins mentioned to anyone feeling any discomfort from the O.C. spray was when he told the nurse who checked him immediately after he was put in four-point restraints, which was soon after he had been sprayed. One would expect some discomfort from the spray soon after it had been administered. Scroggins was checked every fifteen minutes thereafter during the time he was restrained but never again did he mention the slightest discomfort from the O.C. spray. He argues that the reason he did not complain about the effects of the spray was that he feared retaliation. There is no evidence in the record that Scroggins had any reasonable basis for that fear, and even if he did it would not change the fact that the defendants did not know that Scroggins was suffering any continuing discomfort from the spray. An inmate cannot keep his suffering to himself and then complain about jailers not doing anything to alleviate it.

The fact that the defendants in this lawsuit were never told by the nurse, or anyone else, that Scroggins was feeling any pain or discomfort from the spray distinguishes it from *Danley.* In that case

the plaintiff screamed and cried out to the jailers, and the lingering effects of the pepper spray on him were so bad that other inmates complained to the jailers that it was causing them discomfort. *Danley,* 540 F.3d at 1304. Scroggins screamed while being carried to a holding cell after being sprayed, but there is no indication that the defendants interpreted them as screams of pain rather than defiant outbursts. The plaintiff in *Danley,* unlike Scroggins, repeatedly pleaded for medical treatment during a period of twelve to thirteen hours. *Id.* at 1304-05.

In *Danley* when the plaintiff "screamed and cried to the three jailers that he could not breathe, and begged to be let out .... the jailers laughed at [him] and made fun of him." *Id.* at 1304. Among other things, two of them "held their hands to their necks in a 'mock-choking' gesture." *Id.* at 1304, 1309. That response helped convince us that the jailers in *Danley* had acted, or failed to act, "maliciously and sadistically for the very purpose of causing harm." *Id.* at 1309. That did not happen in this case.

**3 Scroggins points to his evidence that when he asked what he had done to deserve being sprayed and put into four-point restraints, the sheriff replied "That's what you get for swinging on one of my deputies, asshole." That statement cannot reasonably be viewed as evidence of sadistic or malicious purpose but instead is an accurate description of fact. Scroggins wanted to know what he had done to justify what was being done to him, and the sheriff told him. Nor do we think a factfinder reasonably could infer a sadistic purpose from the fact that once the officers*507 finally got Scroggins subdued and restrained, they cheered and gave each other "high fives." The only reasonable inference from that conduct was that they were relieved to the point of jubilation at having gotten a tough and dangerous task done without any of them being hurt.

In *Danley,* we noted that "subjecting a prisoner to special confinement that causes him to suffer

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.)))**

increased effects of environmental conditions," such as pepper spray, "can constitute excessive force." *Id.* at 1308. The plaintiff in that case was confined in a small, poorly ventilated cell after being pepper sprayed. *Id.* at 1304. Unlike the plaintiff in *Danley,* Scroggins has produced no evidence that the holding cell in which he was restrained after being sprayed was small or poorly ventilated. And unlike the situation in *Danley,* Scroggins was not confined in the same room where the spraying occurred.

For all of these reasons, we conclude that the district court properly granted summary judgment to the defendants on Scroggins' excessive force claims. It necessarily follows that the grant of summary judgment on the remaining claims, including the failure to intervene claims and the official capacity claims challenging the constitutionality of policies and procedures at the Collier County Jail, was also proper. We also conclude that the district court did not abuse its discretion in failing to grant Scroggins' motions to amend his complaint.

AFFIRMED.

C.A.11 (Fla.),2009.
Scroggins v. Davis
346 Fed.Appx. 504, 2009 WL 3069645 (C.A.11 (Fla.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.)))**

▷
This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Eleventh Circuit Rules
36-2, 36-3. (Find CTA11 Rule 36-2 and Find
CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
Charles DOE, Plaintiff-Appellee,
v.
GEORGIA DEPARTMENT OF CORRECTIONS,
et al., Defendants,
Gene A. Scroggy, Individually and in his former
official capacity as Warden of Frank Scott State
Prison, Aubrey Jones, Individually and in his
official capacity of Deputy Warden of Security for
Frank Scott State Prison, Tom McElhenney,
Individually and in his official capacity as Deputy
Warden of Care and Treatment for Frank Scott
State Prison, Gloria Nicholson, Captain,
Individually and in her official capacity as an
employee of the Georgia Department of Corrections
serving as a supervisory officer of Frank Scott State
Prison, a.k.a. Gloria Chester, Carl Evans, Captain,
Individually and in his official capacity as an
employee of the Georgia Department of Corrections
serving as a supervisory officer of Frank Scott State
Prison, Dennis Holsey, Sergeant, Individually and
in his official capacity as an employee of the
Georgia Department of Corrections serving as a
supervisory officer of Frank Scott State Prison,
Dennis Knight, Sergeant, Individually and in his
official capacity as an employee of the Georgia
Department of Corrections serving as a supervisory
officer of Frank Scott State Prison, Defendants-
Appellants.

No. 06-15915
Non-Argument Calendar.

Aug. 17, 2007.

**Background:** Inmate brought a § 1983 suit against
correctional officers and others, claiming, inter alia,
that his Eighth and Fourteenth Amendment
constitutional rights were violated by their failure
to take reasonable safety measures to protect him
from sexual assault by a guard. The United States
District Court for the Middle District of Georgia,
2006 WL 3022278, denied the officers' summary
judgment motions on the failure to protect claim,
and they appealed.

**Holding:** The Court of Appeals held that an
investigation into the inmate's claim against the
guard was an objectively reasonable response.
   Reversed.

West Headnotes

**Prisons 310 ⮌126**

310 Prisons
   310II Prisoners and Inmates
      310II(B) Care, Custody, Confinement, and
Control
         310k126 k. Protection from Violence,
Assault, or Abuse. Most Cited Cases
   (Formerly 310k17(4))

**Sentencing and Punishment 350H ⮌1537**

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in
General
      350HVII(H) Conditions of Confinement
         350Hk1537 k. Protection from Violence.
Most Cited Cases
   Immediate commencement of an investigatory
process into unsubstantiated and contested
accusations by an inmate that he was sexually
assaulted by a guard was not an indifferent and
objectively unreasonable response to his claims,
and thus, there was no violation of the inmate's
Eighth Amendment rights. U.S.C.A. Const.Amend.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.)))

8.

*900 David Arthur Siegel, Deron R. Hicks, Page, Scrantom, Sprouse, Tucker & Ford, P.C., Columbus, GA, for Defendants-Appellants.

D. James Jordan, Adams, Jordan & Treadwell, P.C., Milledgeville, GA, Marc T. Treadwell, Adams, Jordan & Treadwell, P.C., Macon, GA, for Plaintiff-Appellee.

Appeal from the United States District Court for the Middle District of Georgia. D.C. Docket No. 04-00172-CV-DF-5.

Before EDMONDSON, Chief Judge, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

**1 Defendants-Appellants, seven Georgia Department of Corrections ("GDOC") correctional officers sued in their individual *901 capacities, FN1 bring this interlocutory appeal of the denial of their motion for summary judgment based on qualified immunity in Plaintiff-Appellee Charles Doe's section 1983 action for damages, 42 U.S.C. § 1983. We reverse the denial of summary judgment.

> FN1. Defendants also were sued in their official capacities. The district court granted Defendants summary judgment on Plaintiff's official-capacity claims. Also named in the complaint were two investigators employed by GDOC Internal Investigations Division. The district court determined that these two defendants were entitled to summary judgment on Plaintiff's failure-to-protect claim. The only order we review in this appeal is the denial of Defendants's qualified-immunity-based summary judgment motion.

This section 1983 civil rights action arises from a series of sexual assaults at Scott State Prison by prison guard Nicholas Tuft during the summer of

2002. On 10 July 2002, an altercation took place between Tuft and inmate John Doe. Tuft claimed that inmate John Doe pushed him; inmate John Doe denied the accusation and claimed Tuft demanded sexual favors. John Doe and Tuft were each interviewed; noting inconsistencies between the statements of inmate John Doe and Tuft, Deputy Warden Jones referred the matter to Warden Scroggy on 12 July 2002. That same day, Warden Scroggy referred the matter to Regional Director Jimmy Sikes, and on 17 July 2002, Sikes forwarded the allegations to the Director of Internal Investigations who, in turn, assigned it to an investigator. No affirmative action was taken by the investigator until 12 August 2002, when the investigator heard that Plaintiff also accused Tuft of sexual assault.

At some point before the end of July 2002, Tuft was transferred to another dormitory at Scott State Prison; Tuft continued to interact with inmates.

In late July and early August 2002, Plaintiff and James Doe, each inmates in the Scott State Prison dormitory to which Tuft had been transferred, claim to have been sexually assaulted by Tuft. In an incident on 29 July, Plaintiff claims that he was touched inappropriately by Tuft. Plaintiff sent a letter complaining about Tuft's misconduct to Captain Gloria Nicholson via the institutional mail system. Unknown to Plaintiff, the next day inmate James Doe also had an encounter with Tuft; James Doe sent a letter to Warden Scroggy via the institutional mail system asking for help. On 1 August, Tuft forced James Doe to perform oral sex on him by threatening to accuse James Doe of assaulting an officer; James Doe sent another letter of complaint to Warden Scroggy. James Doe retained his t-shirt which he believed contained seminal evidence of his encounter with Tuft. And on 2 August, Plaintiff wrote to Warden Scroggy and described two more assaults by Tuft. FN2 Plaintiff also believed that Tuft had ejaculated on his t-shirt and saved the evidence.

> FN2. The earliest alleged assault about

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4 of 6

245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.)))**

which Plaintiff or James Doe complained happened on 29 July 2002; the last alleged assault on 1 August 2002. The record fails to establish if and when the letters were received by the defendants to whom they were addressed. Notably, the attacks started and stopped within a four-day period. An element of Plaintiff's section 1983 claim is causation: some evidence must exist that defendants received the letters at a point at which the complained of harm could have been prevented. *See Troupe v. Sarasota County Fla.,* 419 F.3d 1160, 1165 (11th Cir.2005)("a section 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."). Even if we were to infer receipt and to infer further that the prison mail system operated with uncommon competence and swiftness, in the light of this tight time line, these letters alone establish no constitutional violation.

**\*902** Shortly after these incidents, Plaintiff and inmate James Doe spoke with each other about Tuft. And Plaintiff and James Doe each related his experience with Tuft to his respective step-father; on 12 August 2002 Plaintiff's stepfather met with the director of the GDOC's facilities division and informed the director of Plaintiff's allegations. About one week later, James Doe's stepfather also traveled to Atlanta and informed a representative of GDOC of James Doe's allegations. Each step-father delivered the t-shirt evidence collected by his stepson.

**\*\*2** On 12 August 2002, when the investigator assigned to the John Doe matter received word that Plaintiff also accused Tuft of sexual assault and had provided GDOC with clothing he believed to be semen-stained, he interviewed Plaintiff. And on 16 August 2002, the investigator interviewed James Doe. Tuft was also interviewed on 16 August; he denied all allegations made by John Doe, James

Doe and Plaintiff. Tuft opted to resign instead of submitting to a DNA test. On 19 August 2002, Warden Scroggy recommended that Tuft be ineligible for rehire because he had resigned during the course of an investigation.

Pursuant to a search warrant, a sample of Tuft's DNA was obtained. When analysis confirmed that Tuft's DNA matched the fluid found on Plaintiff's t-shirt (no fluid had been found on James Doe's t-shirt), Tuft was arrested on three charges of sexual assault against a person in custody, in violation of O.C.G.A. § 16-6-5.1. Tuft later pleaded guilty.

Plaintiff alleged his Eighth and Fourteenth Amendment constitutional rights were violated by Defendants's failure to take reasonable safety measures to protect Plaintiff from Tuft's sexual assault. According to Plaintiff, Tuft was a known risk to inmate safety-inmate John Doe's allegations predated Tuft's attack on Plaintiff-and Defendants's failure to protect Plaintiff from this known risk constituted deliberate indifference to Plaintiff's clearly established Eighth Amendment right to reasonable protection. Defendants moved for summary judgment based on qualified immunity. The district court determined that Plaintiff had established a constitutional deprivation and that qualified immunity was unavailable to Defendants. We disagree.

The Eighth Amendment prohibits cruel and unusual punishment; prison officials violate that amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1027 (11th Cir.2001). As we have explained, *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 1977, 1982-83, 128 L.Ed.2d 811 (1994), sets out objective and subjective elements that must be shown to establish an Eighth Amendment violation. About the objective elements, a prisoner must first show that an objectively substantial risk of serious harm existed; and once it is shown that an official is aware of this objectively substantial risk, the official must respond to this risk in an objectively

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.)))**

unreasonable manner. *See Marsh,* 268 F.3d at 1028-29. About the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 114 S.Ct. at 1979. As *Farmer* explains, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' " *Id.* Failure to protect from an objectively significant risk that should have been-but was not-perceived, is no infliction of punishment under the Eighth Amendment. *Id.* So, to show an Eighth Amendment constitutional violation,**\*903** the summary judgment evidence, viewed in the light most favorable to Plaintiff, must show (i) facts presenting an objectively substantial risk to inmates and awareness of these facts on the part of the officials charged with deliberate indifference; (ii) that the officials drew the subjective inference from known facts that a substantial risk of serious harm existed; and (iii) that the officials responded in an objectively unreasonable manner.

**\*\*3** We have some doubt that one uncorroborated and disputed allegation of sexual assault supports the conclusion that prisoners were exposed to an objectively substantial risk of serious harm. When Plaintiff was assaulted by Tuft, these officials knew only that Tuft had been accused of sexually assaulting inmate John Doe and that Tuft denied the allegations.[FN3] Tuft had never before been accused of such misconduct. As we have said, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference." *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.1990) (citations and internal quotations omitted).

> FN3. Defendants argue that the record shows that John Doe gave inconsistent accounts of his encounters with Tuft and some of these accounts indicated that John Doe acceded to Tuft's persistent requests

for sexual favors in exchange for cigars. At this stage in the proceedings, we accept all well-pleaded factual allegations (with reasonable inferences drawn therefrom) in Plaintiff's favor.

But even if we accept for summary judgment purposes that the record supported an objectively substantial risk of serious harm, and even assuming *arguendo* that the officials drew the requisite inferences-which they deny-from known facts, no Eighth Amendment constitutional violation is shown unless the official's response was objectively unreasonable. The district court concluded that the officials response-reporting John Doe's allegations to respective superiors and the commencement of an investigation by GDOC's Internal Investigation Division-was an objectively unreasonable response to the danger posed. But to reach this conclusion, one has to accept the district court's underlying premise: no response to John Doe's allegations would be reasonable unless it divested Tuft of his guard duties.[FN4] We cannot accept this premise; to do so would empower any prisoner at any time to dictate prison staffing. Penological interests must factor into the calculus of reasonable responses. *See Chandler v. Crosby,* 379 F.3d 1278, 1290 (11th Cir.2004) ("As judges, we lack carte blanche to impose our own theories of penology on the nation's prisons." (Internal citation and quotation omitted.)). It is true, in hindsight, that Tuft's removal at the first suggestion of misconduct likely would have prevented the assault Plaintiff alleges; but "[w]e will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment." *Purcell ex rel. Estate of Morgan v. Toombs County, GA,* 400 F.3d 1313, 1320 (11th Cir.2005).

> FN4. Plaintiff argues that GDOC policy and procedure required removal of a guard accused of sexual misconduct from contact with the inmate population. But even if Plaintiff cites correctly GDOC policy-a point disputed by Defendants-"failure to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.)))**

follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." *Taylor v. Adams,* 221 F.3d 1254, 1259 (11th Cir.2000).

The district court dismissed the adequacy of the investigatory process because, without additional affirmative measures to ensure safety, the possibility of another attack by a possibly predatory guard loomed pending the investigation. We think the district court misapprehended **\*904** the deliberate indifference standard; we cannot say that the immediate commencement of an investigatory process into unsubstantiated and contested accusations constituted an indifferent and objectively unreasonable response to John Doe's claims.

Because we conclude that Plaintiff failed to show a constitutional violation, we need not proceed further to consider the applicability of the defense of qualified immunity.

**\*\*4 REVERSED.**

C.A.11 (Ga.),2007.
Doe v. Georgia Dept. of Corrections
245 Fed.Appx. 899, 2007 WL 2344883 (C.A.11 (Ga.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

522 Fed.Appx. 710
**(Cite as: 522 Fed.Appx. 710)**

**C**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
Angel L. ROSA, Plaintiff–Appellant,
v.
FLORIDA DEPARTMENT OF CORRECTIONS,
Regional Director Marta Villa–Corta, Ofc. Moore,
State Classification Officer, Warden, Hardee
Correctional Institute, Asst. Warden, Hardee
Correctional Institution, c/o Ms. Anderson, et al.,
Defendants–Appellees.

No. 12–11134
Non–Argument Calendar.
June 26, 2013.

**Background:** State inmate, proceeding in forma pauperis, brought action against Florida Department of Corrections (DOC) and various DOC officials and correctional officers, alleging under § 1983 that defendants retaliated against him for filing grievances and searched him and seized his property, in violation of Fourth Amendment. After conducting preliminary screening, the United States District Court for the Southern District of Florida, No. 2:11–cv–14262–JEM, dismissed second amended complaint. Inmate appealed.

**Holdings:** The Court of Appeals held that:
(1) inmate adequately challenged sua sponte dismissal of second amended complaint;
(2) inmate preserved for appeal his challenge to magistrate judge's order that instructed him to file amended complaint;

(3) inmate failed to state claim against officials based on supervisory liability;
(4) inmate failed to state claim against officers; and
(5) inmate failed to state claim against DOC.

Affirmed.

West Headnotes

**[1] Federal Courts 170B ☞714**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(H) Briefs
            170Bk714 k. Specification of errors; points and arguments. Most Cited Cases
    State inmate, proceeding in forma pauperis in civil rights action, adequately challenged on appeal district court's sua sponte dismissal of his second amended complaint for failure to state claim, even though inmate appeared to discuss only adequacy of his original complaint, without specifically addressing allegations in second amended complaint, since inmate generally challenged dismissal of his case for failure to state claim, and second amended complaint was operative complaint before district court when it dismissed case. 28 U.S.C.A. § 1915(e)(2)(B)(ii).

**[2] United States Magistrates 394 ☞31**

394 United States Magistrates
    394k31 k. Further review; direct appeal. Most Cited Cases
    State inmate, proceeding in forma pauperis, preserved on his appeal from district court's sua sponte dismissal of his civil rights action for failure to state claim his challenge to magistrate judge's order that instructed him to file amended complaint; magistrate judge's order was not final judgment in case, and although inmate complied with that order he argued, in his objections to magistrate judge's report and recommendation, that magistrate judge misconstrued his original complaint and erred in requesting amended complaint. 28 U.S.C.A. §

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

522 Fed.Appx. 710
**(Cite as: 522 Fed.Appx. 710)**

1915(e)(2)(B)(ii).

**[3] Federal Civil Procedure 170A** 🔗2734

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security
            170Ak2734    k.    Forma    pauperis
proceedings. Most Cited Cases
    Allegations in second amended complaint of state inmate, who was proceeding in forma pauperis, that Florida Department of Corrections (DOC) officials were deliberately indifferent to either his grievances or to retaliatory actions of their subordinates failed to state § 1983 claim against officials, absent allegations that officials had any personal involvement in constitutional violation, as supported sua sponte dismissal of complaint. 42 U.S.C.A. § 1983; 28 U.S.C.A. § 1915(e)(2)(B)(ii).

**[4] Federal Civil Procedure 170A** 🔗2734

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security
            170Ak2734    k.    Forma    pauperis
proceedings. Most Cited Cases
    Conclusory allegations in second amended complaint of state inmate, who was proceeding in forma pauperis, that correctional officers were "known to retaliate" against inmates, established "conspiracy" to place inmate in unsafe environment, were deliberately indifferent to his care and safety, and threatened to "set him up" failed to state § 1983 claim against officers for alleged constitutional violations, absent further factual support, as supported sua sponte dismissal of complaint. 42 U.S.C.A. § 1983; 28 U.S.C.A. § 1915(e)(2)(B)(ii).

**[5] Federal Civil Procedure 170A** 🔗2734

170A Federal Civil Procedure
    170AXIX Fees and Costs
        170Ak2732 Deposit or Security

            170Ak2734    k.    Forma    pauperis
proceedings. Most Cited Cases
    Allegations in second amended complaint of state inmate, who was proceeding in forma pauperis, that Florida Department of Corrections (DOC) violated his Eighth Amendment rights by failing to provide adequate food and necessities failed to state § 1983 claim against DOC, absent allegations that DOC violated inmate's rights by executing governmental policy or custom, as supported sua sponte dismissal of complaint. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983; 28 U.S.C.A. § 1915(e)(2)(B)(ii).

*711 Angel L. Rosa, Indiantown, FL, pro se.

Martin CI Warden, Martin CI–Inmate Trust Fund, Indiantown, FL, for Plaintiff–Appellant.

Pam Bondi, Attorney General's Office, Tallahassee, FL, for Defendant–Appellee.

Appeal from the United States District Court for the Southern District of Florida. D.C. Docket No. 2:11–cv–14262–JEM.

Before CARNES, BARKETT and FAY, Circuit Judges.

*712 PER CURIAM:
    Angel L. Rosa proceeding *pro se,* appeals the district court's dismissal of his action, filed pursuant to 42 U.S.C. § 1983, against the Florida Department of Corrections ("DOC") and various DOC employees, for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). On appeal, Rosa asserts that his original complaint adequately stated a claim for relief and that the magistrate judge erred in requiring him to file an amended complaint. For the reasons set forth below, we affirm the dismissal of Rosa's complaint.

                      I.
    On July 22, 2011, Rosa, a Florida prisoner, filed a *pro se* § 1983 complaint against the DOC

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

522 Fed.Appx. 710
**(Cite as: 522 Fed.Appx. 710)**

and numerous DOC officials. In his complaint, Rosa alleged that several DOC officials conspired to retaliate against him for filing complaints against them. Further, he requested that the district court review all of his exhibits to "ascertain the seriousness" of his allegations. Rosa detailed the numerous grievances that he had filed against DOC officers at Hardee Correctional Institution ("Hardee CI"), where he had been incarcerated in 2009. On August 31, 2010, Rosa was transferred to Martin Correctional Institution ("Martin CI"). Rosa asserted that he was retaliated against through "bogus disciplinary reports," mental trauma, duress, inadequate food supply, and deliberate indifference to his safety. Further, he claimed that DOC officials "maliciously and sadistically" searched him and seized his property, in violation of the Fourth Amendment. Finally, Rosa alleged that he was transferred from Martin CI to Everglades Correctional Institution in retaliation. Rosa named 18 defendants, including several officials from Hardee CI and Martin CI.

On August 24, 2011, the magistrate judge ordered Rosa to file an amended complaint. The magistrate noted that Rosa was apparently claiming retaliation at various correctional institutions for being a "writ writer." However, Rosa named multiple defendants, and his allegations were confusing and unclear. Further, many of the allegations involved defendants who are employed at Hardee CI, which is located in the Middle District of Florida, and any allegations against those individuals must be filed in that district. However, Martin CI was located in the Southern District of Florida and, thus, the magistrate instructed Rosa to file a proposed amended complaint, naming the specific acts of retaliation that took place at Martin CI, and the specific defendants, employed by Martin CI, who were responsible for those acts.

On September 1, 2011, Rosa filed a motion to amend the complaint and included the first amended complaint. Subsequently, on September 22, 2011, Rosa filed a motion for an extension of time to file a second amended complaint. The magistrate granted Rosa's motion and cautioned him that, if he filed a second amended complaint, his first amended complaint would not be reviewed.

On October 14, 2011, Rosa filed a second amended complaint against Walter A. McNeil, Secretary of the DOC; Marta Villacorta, a regional director with the DOC; and numerous Martin CI officials, including: (1) Officer Moore; (2) Thomas Reid, the warden; (3) Mr. Inman, an assistant warden; (4) Officer Posten; (5) Lieutenant Bartfield; (6) Lieutenant Morales; (7) Sergeant Bator; (8) Officer Marrero; (9) Officer Lawrence; (10) Major Collins; (11) Inspector Buchanan; and (12) Officer Harris. In his complaint, Rosa reasserted that DOC officials had retaliated against him for exercising his constitutional rights, **\*713** and he specified his claims against each defendant. In support, Rosa filed over 100 pages of exhibits.

On November 22, 2011, the magistrate conducted a preliminary screening of the second amended complaint and issued a report and recommendation ("R & R") that it be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). The magistrate also recommended that Rosa's prior complaints be dismissed. As to the sufficiency of the second amended complaint, the magistrate found that Rosa's claims against Secretary McNeil, Director Villacorta, Warden Reed, and Assistant Warden Inman failed to state a claim under § 1983. Specifically, Rosa failed to state a claim under § 1983 because he did not allege that these defendants were directly involved in a constitutional violation and their liability was based solely on their supervisory positions. Moreover, Rosa failed to show a causal link between a government policy or custom and an alleged injury.

The magistrate further found that Rosa's allegations against Lieutenant Bartfield and Sergeant Bator were conclusory and failed to state a specific constitutional violation. Rosa alleged that

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

522 Fed.Appx. 710
**(Cite as: 522 Fed.Appx. 710)**

Officers Marrero and Lawrence would do "all possible when told to retaliate" and would usually retaliate against inmates by writing false reports. However, these claims were also "completely conclusory," and, further, they were unrelated to Rosa. Next, Rosa alleged that Major Collins was advised that his officers were harassing, intimidating, and threatening Rosa, which resulted in an unsafe environment. However, Rosa did not provide specific facts as to the acts of retaliation and resulting injuries and, as such, Major Collins must be dismissed as a defendant. Further, Rosa's claims—that Inspector Buchanan did nothing to cure the constitutional violations of her subordinates and that Officer Harris was involved in transferring Rosa on behalf of her subordinates—were also "completely conclusory" and failed to state a claim. Additionally, Rosa's claim that Officer Morales threatened him with "setting him up" lacked any supporting facts. Finally, as to Rosa's claim that the DOC had denied him adequate meals and sanitary items, the DOC is not a person within the statute governing § 1983 cases.

The magistrate noted that Rosa had submitted over 80 pages of grievances in support of his complaint. However, the magistrate explained that, to successfully state a claim under § 1983, Rosa was required to demonstrate, on the face of his complaint, that the named defendants violated his constitutional rights, and he failed to do so. Thus, Rosa's grievances could not be viewed separately to establish a claim for relief. In sum, the magistrate recommended that the complaint and first amended complaint be dismissed, and that the second amended complaint be dismissed for failure to state a claim.

Over Rosa's objections, the district court adopted the R & R, and dismissed the second amended complaint.

II.

We review de novo a district court's sua sponte dismissal for failure to state a claim under 28

U.S.C. § 1915(e)(2)(B)(ii), and view the allegations in the complaint as true. Hughes v. Lott, 350 F.3d 1157, 1159–60 (11th Cir.2003). Although pro se pleadings are afforded a liberal construction, "issues not briefed on appeal by a pro se litigant are deemed abandoned." Timson v. Sampson, 518 F.3d 870, 874 (11th Cir.2008).

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court shall dismiss a case proceeding in forma pauperis "at any time if the court **\*714** determines that ... the action ... fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Further, a dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Fed.R.Civ.P. 12(b)(6). Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir.2008). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although the complaint need not set forth detailed factual allegations, a plaintiff is required to provide more than mere "labels and conclusions" and the factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). Further, the factual allegations must be sufficient "to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. at 1974. Thus, mere conclusory statements in support of a threadbare recital of the elements of a cause of action will not suffice. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). Legal conclusions can provide a framework for the complaint, but they must be supported by factual allegations. Id. at 679, 129 S.Ct. at 1950.

Generally, "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir.2001). Under the Federal Rules of Civil Procedure, "an amended complaint supersedes the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

522 Fed.Appx. 710
**(Cite as: 522 Fed.Appx. 710)**

initial complaint and becomes the operative pleading in the case." *Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1202 (11th Cir.2011). Further, while *pro se* pleadings are liberally construed, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. Cnty. of Escambia,* 132 F.3d 1359, 1369 (11th Cir.1998) (citations omitted), *overruled on other grounds as recognized in Randall v. Scott,* 610 F.3d 701, 706 (11th Cir.2010) .

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa–Locka,* 261 F.3d 1295, 1303 (11th Cir.2001). "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West,* 320 F.3d 1235, 1248 (11th Cir.2003). An inmate raises a First Amendment claim of retaliation if he shows that the prison official disciplined him for filing a grievance concerning the conditions of his imprisonment. *Id.* Government officials, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* " in a § 1983 action. *Iqbal,* 556 U.S. at 676, 129 S.Ct. at 1948. Because vicarious liability is inapplicable to § 1983 actions, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Finally, "[a] state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983." *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1524 (11th Cir.1995). However, government entities may be held liable under § 1983 for the execution of a governmental policy or custom. *See Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

[1] As a preliminary matter, on appeal, Rosa

appears to discuss only the adequacy *715 of his original complaint, without specifically addressing the allegations in his second amended complaint. Thus, he may have abandoned any argument that his second amended complaint adequately stated a claim for relief. *See Timson,* 518 F.3d at 874. However, Rosa generally challenges the dismissal of his case for failure to state a claim, and his second amended complaint was the operative complaint before the district court when it dismissed his case. *See Krinsk,* 654 F.3d at 1202. Thus, construing Rosa's brief liberally, we conclude that he has sufficiently challenged the dismissal of his second amended complaint. *See Timson,* 518 F.3d at 874.

[2] Further, the appellees suggest that Rosa is barred from challenging the magistrate's order that instructed him to file an amended complaint. However, because the magistrate's order was not the final judgment in the case, it appears that we may review Rosa's arguments regarding the order. *See Barfield v. Brierton,* 883 F.2d 923, 930–31 (11th Cir.1989) (holding that, when reviewing a final judgment, we generally also have jurisdiction to review "all prior non-final orders and rulings which produced the judgment"). Additionally, although Rosa complied with the order, he argued, in his objections to the R & R, that the magistrate misconstrued his original complaint and erred in requesting an amended complaint. Thus, it appears that Rosa has preserved this argument for appeal.

Regardless, neither of Rosa's complaints provided sufficient factual allegations to comply with the pleading standards set forth in *Twombly* and *Iqbal.* Rosa's original complaint asserted that various DOC officials: (1) retaliated against him for filing grievances, (2) conspired to place him in an unsafe environment, (3) exhibited deliberate indifference to the actions of their subordinates; and (4) maliciously searched him and seized his property. However, his allegations were insufficient to state a claim for relief because he failed to provide sufficient factual support for these alleged

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

522 Fed.Appx. 710
**(Cite as: 522 Fed.Appx. 710)**

violations. *See Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65; *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949–50. Instead, Rosa provided only vague and conclusory allegations and requested that the district court review his exhibits to "ascertain the seriousness" of his claims. For example, Rosa alleged that "the three amigos" retaliated against him by filing false disciplinary reports, but he failed to identify these individuals or describe the false reports. Further, he alleged that officials engaged in a conspiracy to place him in an unsafe environment, but he provided no further factual support regarding the alleged conspiracy or the unsafe conditions. Although Rosa suggests that the district court should have reviewed his exhibits to ascertain the factual support for his claims, the district court was not authorized to "serve as *de facto* counsel" or to "rewrite an otherwise deficient pleading." *See GJR Invs., Inc.,* 132 F.3d at 1369. Further, Rosa named 18 defendants in his complaint, but failed to clearly indicate which constitutional violations were committed by each defendant. Although Rosa was not required to provide detailed factual allegations, his original complaint failed to provide enough facts, which, if accepted as true, would raise his right to relief above a speculative level or state a plausible claim for relief. *See Twombly,* 550 U.S. at 555, 570, 127 S.Ct. at 1964–65, 1974; *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949–50.

[3] Because Rosa's original complaint failed to adequately state a claim for relief, the magistrate properly provided him with an opportunity to file an amended complaint. *See Bryant,* 252 F.3d at 1163. In *716 his second amended complaint, Rosa complied with the magistrate's instructions to separate his claims and identify which defendant committed each alleged constitutional violation. However, Rosa's claims either lacked sufficient factual support or failed to state a viable claim under § 1983. Specifically, Rosa's claims against Secretary McNeil, Director Villacorta, Warden Reid, Assistant Warden Inman, Inspector Buchanan, and Officer Posten were all based on

vicarious liability. Rosa alleged that each of these DOC officials were deliberately indifferent either to his grievances or to the retaliatory actions of their subordinates. Additionally, he alleged that Inspector Buchanan failed to cure the constitutional violations of her subordinates. However, Rosa did not allege that these supervisory DOC officials had any personal involvement in a constitutional violation. Because vicarious liability is inapplicable to § 1983 actions, Rosa failed to state a plausible claim for relief against these defendants. *See Iqbal,* 556 U.S. at 676, 129 S.Ct. at 1948; *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974.

[4] Rosa's claims against the remaining defendants were too conclusory and vague to satisfy the pleading standards set forth in *Twombly* and *Iqbal.* Specifically, Rosa asserted that Lieutenant Bartfield was known to retaliate against inmates and that Officer Moore established a conspiracy to place Rosa in an unsafe environment. Further, Rosa alleged that Sergeant Bator influenced the retaliatory actions of others and that Officers Marrero and Lawrence would "do all possible when told to retaliate." Rosa also alleged that Major Collins was deliberately indifferent to his care and safety, and that Officer Harris was liable for her "no care policy," which led to the filing of false reports. As to each of these retaliation claims, Rosa failed to allege any specific acts of retaliation or to describe the contents of any false disciplinary reports. Additionally, Rosa alleged that Lieutenant Morales threatened to "set[ ] [him] up," but Rosa provided no other factual allegations regarding this incident. Rosa also failed to specify how he was threatened or how DOC officials conspired against him. Thus, Rosa's threadbare assertions of alleged constitutional violations, without further factual support, are insufficient to state a claim for relief. *See Iqbal,* 556 U.S. at 678–79, 129 S.Ct. at 1949–50.

[5] Finally, Rosa alleged that the DOC violated his Eighth Amendment rights by failing to provide adequate food and necessities. However, Rosa's

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

522 Fed.Appx. 710
**(Cite as: 522 Fed.Appx. 710)**

allegations did not provide enough detail to suggest that the DOC violated his rights by executing a governmental policy or custom. *See Monell,* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. Thus, the DOC, a government entity, was not subject to liability under § 1983. *See Edwards,* 49 F.3d at 1524.

In sum, applying the standards set forth in *Twombly* and *Iqbal,* Rosa failed to provide sufficient factual support to state a plausible claim for relief or to raise his right to relief above a speculative level.

For the foregoing reasons, we affirm the dismissal of Rosa's complaints.

**AFFIRMED.**

C.A.11 (Fla.),2013.
Rosa v. Florida Dept. of Corrections
522 Fed.Appx. 710

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.)))

**H**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
Donald W. WHITEHEAD, Plaintiff–Appellant,
v.
Edward H. BURNSIDE, Defendant–Appellee.

No. 10–11911
Non–Argument Calendar.
Nov. 17, 2010.

**Background:** Inmate brought § 1983 action against prison medical director, alleging deliberate indifference to his serious medical needs. The United States District Court for the Middle District of Georgia, C. Ashley Royal, J., 2010 WL 1258050, granted director's motion for summary judgment. Inmate appealed.

**Holding:** The Court of Appeals held that director was not deliberately indifferent towards prisoner's serious medical need.
    Affirmed.

West Headnotes

**Prisons 310 ⚖️192**

310 Prisons
    310II Prisoners and Inmates
        310II(D) Health and Medical Care
            310k191    Particular    Conditions    and Treatments
                310k192 k.  In general. Most Cited

**Sentencing and Punishment 350H ⚖️1546**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546    k.    Medical    care    and treatment. Most Cited Cases
        Prison medical director was not deliberately indifferent towards prisoner's serious medical need regarding his broken kneecap resulting from a prison altercation, as would violate the Eighth Amendment, despite prisoner's contention that director denied him needed surgery, where director was not at the prison at the time of the incident, treating doctors did not believe the injury needed immediate surgery, and director requested an urgent consultation by an orthopedist upon examining prisoner, which led to his eventual surgery. U.S.C.A. Const.Amend. 8.

*402 McNeill Stokes, Attorney at Law, Atlanta, GA, for Plaintiff–Appellant.

Tina M. Piper, Thurbert Baker, Office of Attorney General, Atlanta, GA, for Defendant–Appellee.

Appeal from the United States District Court for the Middle District of Georgia. D.C. Docket No. 5:08–cv–00193–CAR.

Before DUBINA, Chief Judge, HULL and ANDERSON, Circuit Judges.

PER CURIAM:
    **1 Appellant Donald W. Whitehead, an inmate at the Men's State Prison ("MSP") in Hardwick, Georgia, appeals the district court's entry of summary judgment as to Hale Edward Burnside, Medical Director for the prison, on his claim of deliberate indifference to a serious medical need in violation of the Constitution of the United States, brought pursuant to 42 U.S.C. § 1983, and a state

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.)))**

cause of action for medical malpractice.[FN1] On appeal, Whitehead argues that the district court erred by adopting the recommendation of the magistrate judge that summary judgment should be granted in favor of Burnside because Whitehead failed to create an issue of fact for trial. The magistrate judge reasoned that Whitehead failed to provide medical evidence to support his claim of deliberate indifference on the part of Burnside. Whitehead contends that his declaration and Dr. William S. Thompson's declaration support his theory that the two and one half week delay between his kneecap injury and surgery amounts to cruel and unusual punishment. After reviewing the record, we conclude that Whitehead has failed to present a genuine issue of material fact to be resolved by a fact-finder. Thus, we affirm the grant of summary judgment.

> FN1. Initially, Whitehead also appealed the magistrate judge's imposition of sanctions in the underlying matter. On August 20, 2010, a panel of this Court dismissed the appeal as to the sanctions order.

We review a district court order granting summary judgment *de novo,* viewing all of the facts in the record in the light most favorable to the non-moving party. *Brooks v. County Comm'n of Jefferson County, Ala.,* 446 F.3d 1160, 1161–62 (11th Cir.2006). Summary judgment is appropriate where the moving party demonstrates, through pleadings, interrogatories, and admissions on file, together with the affidavits, if any, "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party moving for summary judgment has the burden of showing that there is no genuine issue of fact." *Eberhardt v. Waters,* 901 F.2d 1578, 1580 (11th Cir.1990) (internal quotation marks omitted). "A party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific

facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). The court must view the evidence and make all reasonable factual inferences against the non-moving party. *Id.* Speculation or *403 conjecture from a party cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir.2005) . "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay, Fla.,* 358 F.3d 859, 860 (11th Cir.2004).

In order to state a cognizable claim for inadequate medical treatment under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). These acts or omissions must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir.1991) (quoting *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986)).

**\*\*2** Deliberate indifference requires a plaintiff to prove three elements: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004). The plaintiff shoulders a heavy burden; even conduct that could be characterized as medical malpractice does not necessarily constitute deliberate indifference. *See McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999). A difference in medical opinion does not constitute deliberate indifference so long as the treatment provided is minimally adequate. *Harris,* 941 F.2d at 1504–05. When a plaintiff alleges that delay in medical treatment shows deliberate indifference, he "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.)))**

1187–88 (11th Cir.1994), *overruled in part on other grounds by Hope v. Pelzer,* 536 U.S. 730, 739 n. 9, 122 S.Ct. 2508, 2515 n. 9, 153 L.Ed.2d 666 (2002). "[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay." *Id.* at 1189. Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See, e.g., Bennett v. Parker,* 898 F.2d 1530 (11th Cir.1990).

We conclude from the record that the district court correctly applied the summary judgment standard, finding that Whitehead failed to demonstrate that there was a genuine issue of material fact as to whether Burnside was deliberately indifferent to Whitehead's broken kneecap. Although Whitehead attempts to overcome summary judgment by offering his own sworn statement and that of Dr. Thompson to support his allegations, the contemporaneous medical records and opinions of the examining medical doctors show that this purported evidence is baseless.

Whitehead's broken kneecap resulted from a prison altercation on October 20, 2006. Whitehead claims in his statement that, after his arrival at the Oconee Regional Hospital, Dr. Salvatore Dellacona requested immediate surgery for his injured knee but was denied permission by Burnside to perform the operation. On the contrary, Dr. Dellacona provided an affidavit stating that immediate surgery was not required for Whitehead's broken kneecap, and he did not speak with Burnside as Whitehead contends. Prison records indicate that at the time of the incident, Burnside was not present at the prison.

Dr. Dellacona, pursuant to hospital protocol, requested a second opinion from Dr. Steven Niergarth. Niergarth concurred **\*404** with Dr. Dellacona that immediate surgery was not required. On November 1, 2006, Whitehead was examined by an orthopedic specialists, Dr. Clarence Fossier.

Fossier found that the injury did not require immediate surgery and scheduled the operation for a week later. In his sworn statement, Fossier testified that he would have operated immediately if it had been necessary and that any delay in surgery did not result in any long-term detriment to Whitehead.

**\*\*3** Whitehead attempts to counter these medical opinions from his treating physicians by producing an affidavit from Dr. Thompson, wherein he states that after reviewing the evidence, he found Burnside deliberately indifferent in delaying treatment for Whitehead. At best, however, Dr. Thompson's affidavit represents a difference of medical opinion between himself and the physicians who treated Whitehead. Furthermore, as Dr. Thompson acknowledges, his affidavit is based in part on Whitehead's statement that Dellacona would have performed surgery immediately had Burnside not intervened. Dellacona's contemporaneous medical records and his affidavit show this contention to be incorrect.

Whitehead's statement is erroneous in other ways as well. Whitehead claims that Burnside refused to look at his knee and told him it would take two to three months to schedule an MRI. Burnside's records, recorded at the time he first saw Whitehead, show otherwise. Burnside clearly notes that Whitehead had fractured his patella, could not extend his leg, and had swelling in his left knee. Burnside requested an urgent consultation by an orthopedist to evaluate the injury, and Whitehead was scheduled for the consultation with Dr. Fossier that lead to his eventual surgery.

The evidence from the record is clear. Whitehead has established, at best, a difference of medical opinion as to the appropriate treatment for his injured knee. His personal belief regarding the severity of his injury is not sufficient to overcome the medical opinions of Drs. Fossier and Dellacona, and he has failed to produce evidence to refute the contemporaneous medical records supporting Burnside's actions. Therefore, we conclude that the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.)))**

district court properly adopted the magistrate's recommendation and we affirm the district court's grant of summary judgment in favor of Burnside.

**AFFIRMED.**

C.A.11 (Ga.),2010.
Whitehead v. Burnside
403 Fed.Appx. 401, 2010 WL 4629001 (C.A.11 (Ga.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

360 Fed.Appx. 31, 2010 WL 26222 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 360 Fed.Appx. 31, 2010 WL 26222 (C.A.11 (Fla.)))**

**H**
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
John W. MANN, Plaintiff–Appellant,
v.
Walter A. MCNEIL, secretary, Secretary, FL Dept.
of Corrections, Jimmie O. Atmore, Greg Williams,
Fnu Marsh, Sargeant, Fnu Mallory, Sargeant, et al.,
Defendants–Appellees.

No. 09–10995
Non–Argument Calendar.
Jan. 6, 2010.

**Background:** Inmate filed pro se § 1983 suit against prison officials, alleging cruel and unusual punishment in violation of the Eighth Amendment. The United States District Court for the Middle District of Florida granted officials' motion to dismiss. Inmate appealed.

**Holding:** The Court of Appeals held that inmate's injuries were de minimis.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ☞1463**

78 Civil Rights
   78III Federal Remedies in General
      78k1458 Monetary Relief in General
         78k1463 k. Mental suffering, emotional distress, humiliation, or embarrassment. Most Cited Cases

Inmate's allegations of vague injuries to his back, scrapes and marks on his knees and legs, lack of personal items, lapse of time in reordering medication, window-cleaning assignment, and discontinuance of his pass for showers twice a day were insufficient to show that prisoner suffered "physical injury" from mistreatment in violation of Eighth Amendment prohibition against cruel and unusual punishment, as required by Prison Litigation Reform Act to recover damages for mental anguish and suffering, in his § 1983 action brought against prison officials; injuries were merely de minimis. U.S.C.A. Const.Amend. 8; Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(e); 42 U.S.C.A. § 1983.

**[2] Federal Courts 170B ☞614**

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(D) Presentation and Reservation in Lower Court of Grounds of Review
      170BVIII(D)1 Issues and Questions in Lower Court
         170Bk614 k. Nature and theory of cause. Most Cited Cases

Inmate's claims of cruel and unusual punishment stemming from his eye infection and tooth extraction were waived on appeal, since claims were not included in his § 1983 complaint against prison officials. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**\*31** John W. Mann, pro se.

Appeal from the United States District Court for the Middle District of Florida. D.C. Docket No. 08–00473–CV–OC–10–GRJ.

Before MARCUS, WILSON and ANDERSON, Circuit Judges.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

360 Fed.Appx. 31, 2010 WL 26222 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 360 Fed.Appx. 31, 2010 WL 26222 (C.A.11 (Fla.)))**

PER CURIAM:

**\*\*1** John W. Mann, a *pro se* prisoner, appeals the *sua sponte* dismissal of his 42 U.S.C. § 1983 civil rights complaint alleging an Eighth Amendment violation for cruel and unusual punishment, pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii). On appeal, Mann contends that: (1) the district court erred in dismissing his complaint for failure to state a claim after it determined **\*32** that Mann was not entitled to damages for mental anguish and suffering because he failed to allege sufficient physical injury; and (2) he is entitled to declaratory relief in the form of a prison transfer. After thorough review, we affirm.

We review *de novo* an appeal from a 28 U.S.C. § 1915(e)(2)(B)(ii) *sua sponte* dismissal for failure to state a claim upon which relief may be granted, taking all factual allegations as true. *Douglas v. Yates,* 535 F.3d 1316, 1319–20 (11th Cir.2008). The same standards of Federal Rule of Civil Procedure 12(b)(6) also govern § 1915(e)(2)(B)(ii) dismissals. *Id.* at 1320. " *Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris,* 437 F.3d 1107, 1110 (11th Cir.2006).

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis.*" *Mitchell v. Brown & Williamson Tobacco Corp.,* 294 F.3d 1309, 1312–13 (11th Cir.2002). We have previously held that a forced "dry shave" only amounted to a *de minimis* injury. *Harris v. Garner,* 190 F.3d 1279, 1286–87 (11th Cir.1999), *vacated,* 197 F.3d 1059, *reinstated in relevant part,* 216 F.3d 970, 972 (11th Cir.2000) *(en banc); see also Nolin v. Isbell,* 207 F.3d 1253, 1258 n. 4 (11th Cir.2000) (bruises received during an arrest were non-actionable *de minimis* injury). Even though § 1997e(e) bars damages for mental or emotional injury, it does not affect the availability of declaratory or injunctive relief. *See Harris,* 190 F.3d at 1288.

[1][2] Here, under our case law, the injuries that Mann complains of—including the vague injuries to his back, the scrapes and marks on his knees and legs, the lack of personal items, the lapse of time in reordering medication, the window-cleaning assignment, and the discontinuance of his pass for showers twice a day—amount to *de minimis* physical injuries. *See Nolin,* 207 F.3d at 1258 n. 4.[FN1] Section 1997e(e), therefore, bars Mann's claim for damages as a result of mental anguish and suffering. *See Mitchell,* 294 F.3d at 1312–13.

> FN1. Mann's alleged eye infection and his injuries stemming from his tooth extraction were not alleged in his complaint and therefore have been abandoned. *See Skinner v. City of Miami,* 62 F.3d 344, 348 (11th Cir.1995) ("[A]s a general rule, an appellate court will not consider a legal issue or theory raised for the first time on appeal.").

Moreover, Mann contends that all of the alleged abuse by prison officials stemmed from one initial complaint at his former prison, for which he already received a prison transfer. Thus, Mann's current request for declaratory relief in the form of a prison transfer is moot. *See Smith v. Allen,* 502 F.3d 1255, 1267 (11th Cir.2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."). Accordingly, we affirm the district court's dismissal of Mann's complaint.[FN2]

> FN2. In addition, Mann's motion to submit supplemental records is DENIED as moot.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

360 Fed.Appx. 31, 2010 WL 26222 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 360 Fed.Appx. 31, 2010 WL 26222 (C.A.11 (Fla.)))**

   **\*\*2 AFFIRMED.**

C.A.11 (Fla.),2010.
Mann v. McNeil
360 Fed.Appx. 31, 2010 WL 26222 (C.A.11 (Fla.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2013 WL 4735173 (N.D.Fla.)
**(Cite as: 2013 WL 4735173 (N.D.Fla.))**

**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. Florida,
Pensacola Division.
Lorenzo K. PARKER, Jr., Plaintiff,
v.
B.E. DUBOSE, et al., Defendants.

No. 3:12cv204/MCR/CJK.
Sept. 3, 2013.

Lorenzo K Parker, Jr., Punta Gorda, FL, pro se.

David William Grimes, Marcus Owen Graper,
Office of the Attorney General, Tallahassee, FL, for
Defendants.

### ORDER

M. CASEY RODGERS, Chief Judge.

*1 Upon consideration of the Report and
Recommendation of the Magistrate Judge filed on
August 12, 2013 (doc. 62), pursuant to 28 U.S.C. §
636(b)(1)(B), and after reviewing objections to the
Recommendation, the Recommendation is adopted
as the opinion of the Court.

Accordingly, it is now ORDERED as follows:

1. The Magistrate Judge's Report and
Recommendation is adopted and incorporated by
reference in this order.

2. Defendants' motion to dismiss (doc. 52) is
GRANTED.

3. This case is DISMISSED WITHOUT
PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii),
for plaintiff's failure to state a claim upon which
relief may be granted.

4. The Clerk is directed to close the file.

**DONE AND ORDERED.**

### REPORT AND RECOMMENDATION

CHARLES J. KAHN, JR., United States Magistrate
Judge.

This prisoner civil rights case is before the
Court upon defendants' motion to dismiss. (Doc.
52). Plaintiff has responded in opposition to the
motion. (Doc. 54). The matter is referred to the
undersigned magistrate judge for report and
recommendation pursuant to 28 U.S.C. § 636 and
N.D. Fla. Loc. R. 72.2(C). After careful
consideration, the Court concludes that defendants'
motion should be granted and this case dismissed
without prejudice under 42 U.S.C. § 1997e(e).

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal
system currently confined at Charlotte Correctional
Institution. (Docs.57, 60). Plaintiff was confined at
Santa Rosa Correctional Institution ("Santa Rosa
CI") at the time of the events giving rise to this
lawsuit. Plaintiff commenced this action on April
25, 2012, by filing a civil rights complaint under 42
U.S.C. § 1983. (Doc. 1). Now pending is plaintiff's
second amended complaint. (Doc. 18). Plaintiff's
second amended complaint names as defendants
four prison officials at Santa Rosa CI: Correctional
Officer B.E. Dubose, Correctional Officer W.
White, Correctional Officer Moore, and Sergeant
Diamond. Plaintiff claims the defendants violated
his rights under the Eighth Amendment on
February 17, 2012, when they used excessive force
on plaintiff during an escort from one dormitory to
another. Plaintiff alleges that during the escort,
defendants Dubose and White shoved plaintiff face
first onto a cement floor while plaintiff was
handcuffed and shackled, and then rammed their
knees into plaintiff's lower back, twisted plaintiff's
arms and fingers, and taunted plaintiff. Plaintiff
states that the assault lasted approximately five
minutes, and that defendants Moore and Diamond
stood idle and watched. Plaintiff asserts that prior
to the escort and assault, he told defendant
Diamond he wanted to be moved to a different

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Slip Copy, 2013 WL 4735173 (N.D.Fla.)
**(Cite as: 2013 WL 4735173 (N.D.Fla.))**

dormitory due to Dubose's, White's and Moore's "excessive harassment", and that Diamond exposed plaintiff to a substantial risk of serious harm by assigning the three officers to the escort. As a result of the alleged five-minute assault, plaintiff states he suffered a black eye, a bloody lip, scrapes, an abrasion to his face, and "chronic backpains". (Doc. 18, p. 6 and continuation page). As relief, plaintiff seeks "compensatory damages to make up for the physical harm I was caused 'chronic back pains' and punitive damages to punish guards who hurt me on purpose." (*Id.*, p. 7).

**\*2** Defendants move to dismiss this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the bases that: (1) plaintiff's claims are barred because he "fail[s] to allege the requisite physical injury under either 42 U.S.C. § 1997e(e) or the Eighth Amendment", (2) plaintiff failed to exhaust his administrative remedies with respect to his claims against defendants Moore and Diamond and (3) plaintiff fails to state a claim for deliberate indifference against defendants Moore and Diamond. (Doc. 52). Plaintiff has responded in opposition to dismissal. (Doc. 54). Because defendants' first asserted basis for dismissal is dispositive, the undersigned will address only that issue.

### DISCUSSION

Defendants assert that plaintiff's claims are barred, because the physical injuries he alleges—a black eye, bloody lip, scrapes, an abrasion to his face and "chronic backpains"—even if true, "constitute *de minimis* injuries insufficient to meet the standard imposed by 42 U.S.C.1997e(e) and the Eighth Amendment." (Doc. 52, pp. 4–10). Plaintiff responds that the degree of injury is just one of the factors considered in determining whether defendants' use of force was excessive, and that his allegations sufficiently allege an Eighth Amendment violation. Plaintiff does not address whether his alleged injuries satisfy § 1997e(e)'s physical injury requirement. (Doc. 54, pp. 2–3).

A. Rule 12(b)(6) Standard

In considering a motion to dismiss filed under Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994). The Court must read plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the negatively-glossed "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim). A complaint is also subject to dismissal for failure to state a claim when its allegations, on their face, show that an affirmative defense bars recovery on the claim. *Marsh v. Butler Cnty., Ala.,* 268 F.3d 1014, 1022 (11th Cir.2001); *see also Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 920–21, 166 L.Ed.2d 798 (2007) (reiterating that principle).

B. Section 1997e(e)'s Physical Injury Requirement

As plaintiff was advised in this Court's previous amend order (doc. 16), the Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). "[T]he phrase 'Federal civil action' means all federal claims, including constitutional claims." *Napier v. Preslicka,* 314 F.3d 528, 532 (11th Cir.2002). This action, brought by plaintiff under 42 U.S.C. § 1983 is a "Federal civil action" under this definition. It is evident from the face of plaintiff's pleadings that plaintiff was a prisoner at the time he filed this action, and that the alleged harm occurred while

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4735173 (N.D.Fla.)
**(Cite as: 2013 WL 4735173 (N.D.Fla.))**

plaintiff was in custody. Plaintiff's damages claims, which cannot be liberally construed as requesting nominal damages because plaintiff specifically requests compensatory and punitive damages, are based on the mental and emotional injury plaintiff suffered as a result of defendants' alleged use of excessive force, and/or the fact of the alleged unconstitutional conduct itself (divorced from any mental or emotional injury plaintiff suffered). Plaintiff's alleged black eye, bloody lip, scrapes, abrasion and "backpains" [FN1] do not amount to more than *de minimis* physical injury and are not sufficient to meet the physical injury requirement of § 1997e(e). *See Harris v. Garner,* 190 F.3d 1279, 1286 (11th Cir.1999) ( *"Harris I"* ) (concluding that in order to satisfy § 1997e(e) "the physical injury must be more than *de minimis,* but need not be significant."), *reh'g en banc granted and opinion vacated,* 197 F.3d 1059 (11th Cir.1999), *opinion reinstated in relevant part,* 216 F.3d 970 (11th Cir.2000) ( *"Harris II"* ); *see also, e.g., Mann v. McNeil,* 360 F. App'x 31, 32 (11th Cir.2010) (holding that § 1997e(e) barred inmate's claims for monetary damages; inmate's complaints of vague injuries to his back and scrapes and marks on his knees and legs did not amount to more than *de minimis* physical injury); *Quinlan v. Personal Transp. Servs. Co.,* 329 F. App'x 246, 249 (11th Cir.2009) (holding that § 1997e(e) barred pre-trial detainee's claims for compensatory and punitive damages; pre-trial detainee's complaints of temporary chest pain, headache and difficulty breathing while in transport van, as well as subsequent "continuous back pain in [his] lower back that periodically cause [d][him] to walk hunched over," did not constitute more than *de minimis* physical injury required under § 1997e(e), since none of the conditions required immediate medical attention or evidenced physical injury besides discomfort); *Luong v. Hatt,* 979 F.Supp. 481, 485 (N.D.Tex.1997) (prisoner's damages claims barred by § 1997e(e); prisoner's alleged injuries—a bleeding tongue and injured shoulder lasting a couple of days, abrasions on forearm and chest, contusion with slight swelling of left jaw,

swollen wrists lasting two days, cut on face, bloody nose, cuts in mouth, and scratches to face—were *de minimis* ). As defendants note, the *de minimis* nature of plaintiff's injury is further demonstrated by the fact that plaintiff himself has made the determination to forgo treatment (ibuprofen) for his alleged back pain because the $5.00 medical co-pay exceeds what he is willing to "pay" (i.e., have charged to his inmate account). (*See* Doc. 18, p. 10). As plaintiff fails to allege more than a *de minimis* physical injury, his damages claims are barred under § 1997e(e), and this suit must be dismissed. *Harris I,* 190 F.3d at 1287–88 (affirming district court's dismissal of claims for compensatory and punitive damages as barred by § 1997e(e)), *reinstated on reh'g, Harris II,* 216 F.3d at 972; *see also Al– Amin v. Smith,* 637 F.3d 1192 (11th Cir.2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury).

> FN1. Plaintiff did not disclose the alleged back pain in his initial complaint (doc. 1) or first amended complaint (doc. 7), but waited several months until the filing of his second amended complaint after the Court warned him of § 1997e(e)'s requirement.

CONCLUSION

**\*3** Taking the allegations of plaintiff's second amended complaint as true and construing them in the light most favorable to plaintiff, plaintiff fails to state a plausible claim for the relief he seeks (compensatory and punitive damages). Plaintiff's failure to state a plausible claim even after being given an opportunity to amend justifies dismissal of this case.

Accordingly,  it  is  respectfully RECOMMENDED:

1. That defendants' motion to dismiss (doc. 52)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4735173 (N.D.Fla.)
**(Cite as: 2013 WL 4735173 (N.D.Fla.))**

be GRANTED.

    2. That this case be DISMISSED WITHOUT PREJUDICE under 28 U.S.C. § 1915(e)(2)(B)(ii), for plaintiff's failure to state a claim upon which relief may be granted.

    3. That the Clerk be directed to close the file.

N.D.Fla.,2013.
Parker v. Dubose
Slip Copy, 2013 WL 4735173 (N.D.Fla.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.