IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WARREN SMITH,

    Plaintiff,

    v.                                     Case No.: 3:12cv172-RV/CJK

R. TIFFT, et al.,

    Defendants.
_____/

**ORDER**

This cause comes for consideration upon the Magistrate Judge's Report and Recommendation dated November 7, 2014 (doc. 155) ("Report"). The plaintiff has been furnished with a copy of the Report and has been afforded an opportunity to file (and has filed) objections under Title 28, United States Code, Section 636(b)(1) (doc. 158), which I have reviewed de novo. After close review, I have determined that the Report should be adopted, in part, as follows.

The Report carefully sets out the facts and procedural history in detail, and that background is incorporated into this order. I will only briefly recount some of the most relevant facts. These facts are assumed true and viewed in a light most favorable to the plaintiff where supported by evidence in the record.

At the time relevant here, the plaintiff, Warren Smith, was a black inmate at the Santa Rosa Correctional Institution ("SRCI"). He was a known "grievance filer" who frequently lodged complaints and filed grievances against staff and one staff member in particular: Lieutenant Walter Gielow. There is evidence that for several months the staff threatened to punish and "torture" the plaintiff with pepper spray because of his grievances. He reported this conduct to prison officials and said he would kill himself if the threats continued. They did not stop.

On August 16, 2011, Sergeant Daniel Larson pepper sprayed the plaintiff in his cell. The defendants claim that he did so because plaintiff was being disruptive and uncooperative at that time (even though video evidence in the record does not support the claim) and because he was attempting to hang himself (which plaintiff does not dispute, but claims he did as a consequence of the months-long campaign of threats and harassment that he had experienced). After he was pepper sprayed, plaintiff was taken to the showers to wash off. While in the shower, he yelled and accused the officers of being racist (e.g., "KKK and skinhead motherf**ckers . . . that's all ya'll do, gas black people"), and he said they were retaliating against him because he had exercised his constitutional right to file grievances (e.g., "I got the First Amendment right to file grievances if I want to; ya'll [can't] come and gas me 'cause I file a grievance. . . ."). After refusing orders to stop yelling (in response to which he said "[h]ow do you expect me to act when I get gassed for nothing"), Lt. Gielow pepper sprayed him a second time.

Nothing appears to have happened for several months. Then, on February 4, 2012, Officer James Barnes claimed that he approached plaintiff's cell and noticed that there was personal and state-issued property all over his floor. When Barnes ordered him to clean it up, plaintiff allegedly refused and Barnes filed a disciplinary report ("DR"). This led to him being placed on "strip cell" --- which means that he was kept in a cold and empty cell with no bedding, sheets, or blankets, and only boxer shorts and shower slides for clothing --- for a period of several days. It later turned out, however, that Barnes had fabricated the basis for the charge, and the DR was dismissed after video showed that the officer did not approach the cell as he had claimed.

After the DR was dismissed, an officer allegedly told plaintiff "[d]on't think you got away, Smith. We have a surprise for you." Later that same day, plaintiff was charged with another DR, and, a couple of weeks later, he was put back on

*Case No.: 3:12cv172-RV/CJK*

strip cell after purportedly being told "you must be aware of the consequences for filing grievances".

On February 29, 2012, the plaintiff was again pepper sprayed for allegedly yelling obscenities and creating a disturbance in his cell (even though, like before, video evidence in the record does not substantiate the claim) and because he was trying to hang himself (once again, he claims he did so because of the campaign of torture and abuse to which he was being subjected). After he was pepper sprayed, plaintiff claims that several of the defendant officers entered the cell and beat him, twisted his legs, and squeezed his testicles. Although most of what occurred inside the cell is not clear from the video, as the Report notes, the video does reflect that at one point the plaintiff received a blow to his head as he cried out in pain.

The plaintiff subsequently filed this litigation against the defendants, alleging retaliation under the First Amendment and cruel and unusual punishment under the Eighth Amendment. Several of the defendants moved for summary judgment, and the Report recommends that the motion be granted on seven claims, but denied on three claims. The plaintiff, as noted, has objected to the Report and asks that the defendants' motion for summary judgment be denied except for two defendants on the retaliation claim.[1]

After reviewing the Report and the record, I find that plaintiff's objections to the Report are well taken. To highlight just a couple of examples of genuine issues of fact remaining, the Report concludes that Lt. Gielow was authorized to pepper spray the plaintiff in the showers on August 16, 2011 (while he was washing off the pepper spray from Sgt. Larson) because the evidence shows that plaintiff was yelling obscenities and being disruptive at <u>that</u> particular point in time. The plaintiff

---

[1] The Report recommends that summary judgment be granted in favor of two defendants, Officers Pugh and Wallace, on the First Amendment claim. The plaintiff does not object to that portion of the Report, and I agree with the Magistrate Judge that summary judgment is proper on that claim for those two defendants.

*Case No.: 3:12cv172-RV/CJK*

persuasively points out, however, that viewing all of the evidence in a light most favorable to him, "a reasonable jury could find the second gassing . .. was not to prevent disruption (which would have been more effectively prevented had Lt. Gielow not staged his charade to punish Mr. Smith for writing his grievances) but to stifle Smith's complaints." The plaintiff further maintains, and I agree, that the jury could reasonably find that it is "too much to expect no expression of anguish" from him after he had been threatened for months and unjustifiably pepper sprayed the first time --- assuming, of course, that his version of the events is true, which I have to do for purposes of defendants' motion for summary judgment.

The Report further finds and concludes that pepper spray was appropriate and necessary while, and to the extent, that the plaintiff was attempting to hang himself in his cell. However, the plaintiff persuasively maintains that although the Report "characterizes the use of gas in this instance as a life-saving effort," a jury "could find it was planned and carried out as the means of instigating a suicide attempt by Mr. Smith", and that, viewed this way, "application of chemical agents to Smith cannot be transformed from a goad and torment to a life-saving mission of mercy to prevent Smith's suicide." Reasonable jurors could question whether the use of pepper spray is an effective way to save inmates from strangulation.

In sum, the plaintiff claims that the defendants pepper sprayed him and put him on strip cell in retaliation for filing grievances, and they tried to cover up their actions by alleging --- and staging video suggesting --- that he had been unruly and disruptive or otherwise refused to follow orders.[2] And there is evidence to support his claims, including, inter alia, the clearly false DR that was filed against him. This is a troubling case, and summary judgment is not appropriate, except to the extent discussed in supra note 1.

---

[2] These allegations bear striking resemblance to claims in other cases before me that have been brought against officers at SRCI [Thompson v. R. Quinn, 3:11-cv-533/RV] and Lt. Gielow in particular [Stephenson vs. McNeil, 3:11-cv-455/RV].

*Case No.: 3:12cv172-RV/CJK*

Accordingly, it is now **ORDERED** as follows:

1. The Report is adopted, in part, and incorporated by reference into this order, and modified as set forth above.

2. The defendants' motion for summary judgment is DENIED, except to the extent that plaintiff has claimed First Amendment retaliation against Officers Pugh and Wallace. With respect to those claims, defendants' motion is GRANTED and summary judgment shall be entered. This case is hereby referred back to the Magistrate Judge for further proceedings.

DONE and ORDERED this 3rd day of March 2015.

/s/ Roger Vinson
ROGER VINSON
Senior United States District Judge